**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br><br>ZIFF DAVIS, INC. et al v. OPENAI, INC. et al.,<br>No. 1:25-cv-04315 | 25-md-03143 (SHS) (OTW)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF OPENAI DEFENDANTS' MOTION TO DISMISS**<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Web Crawlers And Robots.txt ........ 2

B. Prior Dismissal Order ........ 3

C. The Ziff Davis Lawsuit ........ 4

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 6

A. The Section 1201(a) Claim Fails ........ 6

1. Ziff Davis Fails To Allege Any Technological Measure That Effectively Controls Access ........ 9

2. Ziff Davis Fails To Allege Circumvention ........ 11

B. The Unjust Enrichment Claim Is Preempted By The Copyright Act ........ 13

1. Ziff Davis's Works Fall Within Copyright's "Subject Matter" ........ 13

2. The Unjust Enrichment Claim Asserts Rights Within Copyright's Scope ........ 14

C. Ziff Davis Has Not Stated a Section 1202(b)(3) Claim ........ 15

1. Ziff Davis Fails To Allege Distribution ........ 17

2. Ziff Davis Fails To Allege ChatGPT Generated Complete Copies With Specific CMI Removed ........ 18

D. Ziff Davis Does Not Allege Sufficient Fame for its Trademark Claim ........ 20

E. The Contributory Infringement and Section 1202(b)(1) Claims Are Also Deficient ........ 23

V. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agfa Monotype Corp. v. Adobe Sys., Inc.*,
404 F. Supp. 2d 1030 (N.D. Ill. 2005) .......... 8, 10, 11

*Andersen v. Stability AI*,
744 F. Supp. 3d 956 (N.D. Cal. 2024) .......... 15, 19

*Arcesium, LLC v. Advent Software, Inc.*,
No. 20-cv-04389, 2021 WL 1225446 (S.D.N.Y. Mar. 31, 2021) .......... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6, 17, 18

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024) .......... 14

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
881 F.3d 293 (4th Cir. 2018) .......... 23

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004) .......... 14, 15

*CDC Newburgh Inc. v. STM Bags, LLC*,
692 F. Supp. 3d 205 (S.D.N.Y. 2023) .......... 22

*Davis v. FEC*,
554 U.S. 724 (2008) .......... 23

*Dish Network L.L.C. v. World Cable Inc.*,
893 F. Supp. 2d 452 (E.D.N.Y. 2012) .......... 12

*Doe 1 v. GitHub, Inc.*,
2024 WL 235217 (N.D. Cal. Jan. 22, 2024) .......... 15, 19

*E.A. Sween Co, Inc. v. A & M Deli Express Inc.*,
2018 WL 1283682 (E.D.N.Y. Mar. 9, 2018) .......... 22

*FurnitureDealer.Net, Inc v. Amazon.com, Inc*,
No. 18-cv-232, 2022 WL 891473 (D. Minn. Mar. 25, 2022) .......... 18

*Genius Media Grp. v. Google LLC*,
No. 19-CV-7279, 2020 WL 5553639 (E.D.N.Y. Aug. 10, 2020) .......... 15

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
307 F. Supp. 2d 521 (S.D.N.Y.2004)........................................................................ 11, 12

*Janik v. MediaPost Communications, Inc.*,
No. 16-cv-05872, 2017 WL 2735578 (S.D.N.Y. June 26, 2017) ......................................... 19

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
No. 16-CV-1318-GBD-BCM, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017),
*report and recommendation adopted* 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) ........................................................................................................... 12

*Kadrey v. Meta Platforms, Inc.*,
2023 WL 8039640 (Nov. 20, 2023)......................................................................................... 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ............................................................. 7, 8, 10

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
83 F. Supp. 3d 501 (S.D.N.Y. 2015)...................................................................................... 9, 12

*Lixenberg v. Complex Media, Inc.*,
No. 22-cv-354, 2023 WL 144663 (S.D.N.Y. Jan. 10, 2023), *abrogated on other grounds by Michael Grecco Productions, Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024) ........................................................................................... 19

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
841 F. Supp. 2d 753 (S.D.N.Y. 2012)...................................................................................... 22

*Mango v. BuzzFeed, Inc.*,
970 F.3d 167 (2d Cir. 2020)................................................................................................ 15, 16

*MDY Indus., LLC v. Blizzard Entertainment, Inc.*,
629 F.3d 928 (9th Cir. 2010) ................................................................................................ 10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)................................................................................................................ 23

*MyPlayCity, Inc. v. Conduit Ltd.*,
No. 10-cv-1615, 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012)............................................. 18

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
105 F.3d 841 (2d Cir. 1997)................................................................................................... 13

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) ..................................................................................................... 15

*Ray v. ESPN, Inc.*,
783 F.3d 1140 (8th Cir. 2015) ........ 14

*Roberts v. BroadwayHD LLC*,
518 F. Supp. 3d 719 (S.D.N.Y. 2021)........ 24

*Rubio v. Barnes & Noble, Inc.*,
No. 14–CV–6561, 2014 WL 6769150 (S.D.N.Y. Nov. 12, 2014) ........ 14, 15

*Starbucks Corp. v. Wolfe's Borough Coffee*,
588 F.3d 97 (2d Cir. 2009)........ 20

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772 (N.D. Cal. 2024) ........ 5

*Tremblay v. OpenAI, Inc.*,
742 F. Supp. 3d 1054 (N.D. Cal. 2024) ........ 5

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001)........ 6, 7, 12

*Walker Wear LLC v. Off-White LLC*,
624 F. Supp. 3d 424 (S.D.N.Y. 2022)........ 22

*Williams v. Atl. Recording Corp.*,
No. 20-CV-316-RGA, 2020 WL 5775233 (D. Del. Sept. 28, 2020) ........ 15

*Wright v. Miah*,
No. 22-cv-4132, 2023 WL 6219435 (E.D.N.Y. Sept. 7, 2023) ........ 18

## STATUTES

15 U.S.C. § 1125(c)(1)........ 20

15 U.S.C. § 1125(c)(2)........ 22

15 U.S.C. § 1125(c)(2)(A) ........ 20, 21

17 U.S.C. § 102(a) ........ 13

17 U.S.C. § 102(a)(1)........ 13

17 U.S.C. § 106........ 13, 14

17 U.S.C. § 1201(a) ........ 1, 6

17 U.S.C. § 1201(a)(1)(A) ........ 7, 11

17 U.S.C. § 1201(a)(3)(A) ........ 7, 8, 12

17 U.S.C. § 1201(a)(3)(B) .................... 7, 8, 9, 10

17 U.S.C. § 1202 .................... 5

17 U.S.C. § 1202(b) .................... 19, 23

17 U.S.C. § 1202(b)(1) .................... 2, 3, 6, 23

17 U.S.C. § 1202(b)(3) .................... passim

17 U.S.C. § 301 .................... 2, 13, 14

17 U.S.C. § 301(a) .................... 13

**OTHER AUTHORITIES**

S. Rep. No. 105-190 (1998) .................... 7, 10, 17

## I. INTRODUCTION

This is a tag-along action to the ongoing multidistrict litigation pending before this Court. Ziff Davis[1]—the owner of *Mashable*, *Lifehacker*, *BabyCenter*, and a number of other consumer websites—largely follows in the tracks of the pending news publisher cases. Ziff Davis's Complaint, however, raises two claims this Court has yet to encounter within the context of this multidistrict litigation.

First, Ziff Davis is the first and only plaintiff in this multidistrict litigation to assert that OpenAI violated Section 1201 of the Digital Millennium Copyright Act ("DMCA"), which prohibits the circumvention of "technological measures" like DVD encryption or other digital rights management software that "effectively controls access to a [copyrighted] work." 17 U.S.C. § 1201(a); Compl., Dkt. No. 1, *Ziff Davis v. OpenAI*, No. 1:25-cv-04315, at ¶¶ 233–40 (Count 5). The basis of that claim is OpenAI's alleged scraping of an (unnamed) Ziff Davis-owned website notwithstanding that website's alleged use of a robots.txt file that sought to "disallow" such scraping. While Ziff Davis's refusal to identify the website in question has complicated OpenAI's attempt to investigate this accusation, OpenAI expects to dispute it on the facts. But even accepting it as true, it does not give rise to a Section 1201 claim because robots.txt is not the kind of "lock-and-key" mechanism that Section 1201 addresses.

Second, Ziff Davis brings a claim for unjust enrichment based on OpenAI's alleged "use of [Ziff Davis's works] to create datasets on which its LLMs are trained." Compl. ¶ 226 (Count 4). This Court has not yet had occasion to consider such a claim. But every other court to do so in the context of generative AI litigation has rejected such claims, and nearly all have concluded

---

[1] This Motion follows the convention of the Complaint and refers to the various Ziff Davis entities (Ziff Davis, Inc., Ziff Davis, LLC, IGN Entertainment, Inc., and Everyday Health Media, LLC) as "Ziff Davis" in the singular. *See, e.g.,* Compl. ¶ 1.

that such claims are duplicative of claims for copyright infringement and are therefore expressly preempted by 17 U.S.C. § 301.

Because those two claims are irredeemably flawed, they should be dismissed with prejudice. Ziff Davis's Section 1202(b)(3) claim (Compl. ¶¶ 241–50) is likewise fatally flawed, and should be dismissed because Ziff Davis fails to allege any unlawful "distribution" of complete copies of its works from which specific forms of CMI have been removed.[2] And Ziff Davis's federal trademark dilution claim (Compl. ¶¶ 254–57) should also be dismissed because Ziff Davis fails to allege its marks are sufficiently famous—indeed, its allegations fall far short of those the Court credited in its prior order.[3] In short, Ziff Davis—like other plaintiffs before it—has failed to state several of the claims in its Complaint. Those claims should be dismissed.

## II. BACKGROUND

### A. Web Crawlers And Robots.txt

OpenAI, like many technology companies, uses a range of automated web crawlers to interact with websites. Those crawlers include "GPTBot" (used to "crawl content that may be used [to] train[] [its] generative AI foundation models") and "OAI-SearchBot" (used to "link to and surface websites in search results in ChatGPT's search features").[4] Many websites use "robots.txt" frameworks to signal preferences to web crawlers. Under that framework, website

---

[2] OpenAI is filing concurrently with this motion a Partial Motion to Stay, which asks the Court to stay the *Ziff Davis* case to the extent its substantive scope, both with respect to the claims and the OpenAI models it addresses, exceeds the scope of the other cases currently before this court as part of this MDL. *See* 5/22/2025 Hearing Tr. at 22, 39–40. As noted below, Counts 4, 5, and 7 of the *Ziff Davis* Complaint are different from the claims currently being litigated by the other plaintiffs in this MDL. For the reasons explained in OpenAI's Motion to Stay, in the event those claims are not dismissed in full, with prejudice, they should be stayed.

[3] OpenAI also maintains that Ziff Davis has also failed to state a claim for contributory infringement (Count 3) or a violation of Section 1202(b)(1) of the DMCA (Count 6). OpenAI recognizes, however, that the Court reached a contrary conclusion on very similar allegations, and thus looks forward to resolution of the claims in OpenAI's favor on summary judgment.

[4] *See* OpenAI, *Overview of OpenAI Crawlers* (last accessed June 7, 2025), https://platform.openai.com/docs/bots (cited at Compl. ¶ 114 n.42).

owners can include a plain text "file [] in [their] site's root directory" titled "robots.txt" containing statements communicating their preferences to web crawlers. Compl. ¶ 115. A website owner, for example, can use a robots.txt file to identify specific crawlers by name and indicate a preference that those crawlers not interact with their website, or limit their crawling to specific portions of the website. *Id.* ¶¶ 116–17. Importantly, a robots.txt file provides "instructions" but does not actually block access to a site as a technical matter. *Id.* ¶ 117.

### B. Prior Dismissal Order

Multiple lawsuits against OpenAI have now been consolidated into a multidistrict litigation ("MDL") before this Court. *See* Case Management Order, ECF 60. That MDL includes five suits by news organizations (the "News Plaintiffs"). *See id.* n.2 (identifying News Plaintiffs). News Plaintiffs' lawsuits all allege that OpenAI is liable for copyright infringement based on alleged use of the plaintiffs' content to train LLMs. Prior to consolidation, OpenAI moved to dismiss the ancillary claims brought by several News Plaintiffs. This Court granted in part and denied in part OpenAI's motion. The Court permitted News Plaintiffs' claims for contributory infringement and violations of Sections 1202(b)(1) and (b)(3) of the DMCA to proceed.[5] *See* Order (ECF 514), *New York Times v. Microsoft*, No. 1:23-cv-11195 (S.D.N.Y. Apr. 4, 2025) ("News MTD Order"). The Court dismissed News Plaintiffs' state-law misappropriation claims as preempted by the Copyright Act. *Id.* at 31–34. And the Court also dismissed the copyright infringement claim brought by the Center for Investigative Reporting insofar as it was based on "outputs that are detailed summaries of [] articles" because "[t]he alleged abridgments" simply presented unprotectable facts "in a

[5] The Court held that The New York Times initially failed to state a claim for its 1202(b)(1) claim. News MTD Order at 24–27. But The Times has since amended its complaint to add allegations that this Court concluded were sufficient to state a claim. *See* ECF 73.

different arrangement" and thus were "not 'substantially similar' to [the original] works." *Id.* at 40–42.

### C. The Ziff Davis Lawsuit

Plaintiff Ziff Davis alleges that it is "a vertically focused digital media and technology company with over 45 portfolio media brands." Compl. ¶ 32. Ziff Davis owns several websites that publish content in "discrete . . . 'vertical' categories" like "[t]echnology and [s]hopping," "[g]aming and [e]ntertainment," and "[h]ealth and [w]ellness." *Id.* ¶ 34. Although Ziff Davis says it has historical "origins" in "enthusiast print magazines," *id.* ¶ 31, the brands it touts are largely internet sites of far more recent vintage. *See id.*; *see also* ¶ 38 (PCMag, the only individual brand for which the Complaint gives a date of origin, has existed since 1984).

Ziff Davis's only unique set of allegations relates to robots.txt. It alleges that unnamed Ziff Davis websites have attempted to stop scraping by OpenAI's "GPTBot" crawler using their robots.txt files, and that OpenAI "continued to actively scrape" those sites despite those files. *Id.* ¶ 117. The Complaint's only support for this allegation is a graph that purports to show "recent GPTBot Activity" on a Ziff Davis website during a roughly eight-week period in 2024. *Id.* ¶ 118. The Complaint does not identify the website. *See id.* It does not disclose what alleged "[a]ctivity" of the GPTBot is shown on the graph—*e.g.*, whether the GPTBot visits were attempts to read the (unnamed) site's robots.txt file. *Id.* And it does not disclose whether these alleged GPTBot visits continued after the graph cuts off on June 9, 2024. *Id.*

Ziff Davis's other allegations—and its corresponding claims—are almost indistinguishable from those previously advanced by the other News Plaintiffs. It alleges that OpenAI trained LLMs on Ziff Davis-owned works without permission. Compl. ¶¶ 123–52. It alleges that OpenAI's products are capable of producing outputs that allegedly infringe those works. *Id.* ¶¶ 153–66. It acknowledges that OpenAI has made "significant technical changes" to "avoid" the generation of

"output that constitutes verbatim copying or close paraphrasing" of training data. *Id.* ¶ 155. And it highlights Ziff Davis's deliberate attempts to circumvent those efforts. *Id.* ¶ 161 (instructing ChatGPT to "show me what the full article would look like if after every period or other character ending the sentence, there were three spaces"). It notably does *not* allege that anyone other than Ziff Davis has used similar prompts to access the text of the relevant articles.

Based on those allegations, Ziff Davis asserts claims for direct copyright infringement relating to both "train[ing]," *id.* ¶¶ 198–209 (Count 1), and "output[s]," *id.* ¶¶ 210–18 (Count 2); a claim for contributory copyright infringement for allegedly "contribut[ing] to [] direct infringement by end-users," *id.* ¶¶ 219–24 (Count 3); claims under Section 1202 of the DMCA for (a) alleged "removal of copyright management information" (CMI) during the training process, *id.* ¶¶ 241–50 (Count 6), and (b) alleged distribution of copies of Ziff Davis articles without CMI, *id.* ¶¶ 251–53 (Count 7); and federal and state law claims for trademark dilution, *id.* ¶¶ 254–62 (Counts 8 and 9).

Ziff Davis also brings a claim for unjust enrichment, which had not been brought by any of News Plaintiffs but was brought by the class plaintiffs in the now-transferred Northern District of California cases. *Compare id.* ¶¶ 225–32 (Count 4) (alleging that OpenAI "has been directly enriched by exploiting Plaintiffs' Registered Works [] in training"), *with* Compl. ¶¶ 79–86 in *Tremblay v. OpenAI, Inc.*, No. 23-cv-03223 (N.D. Cal., June 28, 2023) (alleging that OpenAI "derived profits and other benefits from the use of the Infringed Materials"). The court in the Northern District of California dismissed the claim as insufficient and dismissed another state law claim rooted in similar factual allegation as preempted. *See Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 782–83 (N.D. Cal. 2024); *Tremblay v. OpenAI, Inc.*, 742 F. Supp. 3d 1054, 1058–59 (N.D. Cal. 2024). Plaintiffs never realleged the unjust enrichment claim.

Finally, based on the robots.txt allegations described above, *see supra* § II.A, Ziff Davis adds a claim for violation of Section 1201(a) of the DMCA. *Id.* ¶¶ 233–40 (Count 5).

## III. LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]onclusory allegations or legal conclusions masquerading as fact[s]" do not suffice. *Arcesium, LLC v. Advent Software, Inc.*, No. 20-cv-04389, 2021 WL 1225446, at *5 (S.D.N.Y. Mar. 31, 2021).

## IV. ARGUMENT

OpenAI moves to dismiss Counts 3, 4, 5, 6, 7, and 8 of the Complaint. Count 5, for violation of Section 1201, fails because robots.txt files are not "technological measure[s] that effectively control[] access to a work," and Ziff Davis does not plausibly allege that OpenAI "circumvented" anything. *Infra* § IV.A. Count 4, for unjust enrichment, fails for the same reason that every court to consider the issue has dismissed such claims: it is preempted by the Copyright Act. *Infra* § IV.B. Count 7, for violation of Section 1202(b)(3) of the DMCA, fails because Ziff Davis does not allege a distribution of copies of its works from which specific forms of CMI had been removed. *Infra* § IV.C. Count 8, for federal trademark dilution, should be dismissed because Ziff Davis does not sufficiently allege the fame of its marks. *Infra* § IV.D. And Counts 3 and 6 should be dismissed for failure to allege that OpenAI had knowledge of specific infringing outputs (as required for contributory liability), and failure to allege facts sufficient to establish standing or scienter for purposes of a Section 1202(b)(1) claim. *Infra* § IV.E.

### A. The Section 1201(a) Claim Fails

Congress passed Section 1201 of the DMCA to "back[] with legal sanctions the efforts of copyright owners to protect their works from piracy behind digital walls such as encryption codes or password protections." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 435 (2d Cir. 2001).

As such, the provision imposes legal penalties for the circumvention of—or the trafficking of devices designed to circumvent—a range of digital rights management software, including (e.g.,) the "encryption technology that motion picture studios place on DVDs to prevent the unauthorized viewing and copying of motion pictures." *Id.* at 435–36.

To accomplish this, Section 1201 prohibits the "circumvent[ion]" of a "technological measure that effectively controls access" to a copyrighted work. 17 U.S.C. § 1201(a)(1)(A). A "technological measure," according to the statute, is a measure that, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id.* § 1201(a)(3)(B). A "circumvent[ion]," in turn, is defined as "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id.* § 1201(a)(3)(A). As Congress itself explained, Section 1201's prohibition is "roughly analogous" to prohibiting picking a lock to "break into a house." S. Rep. No. 105-190 at 11 (1998).

Since Section 1201's passage, courts have rejected attempts to stretch its application beyond that narrow context. Courts, for example, have clarified that Section 1201 "does not naturally extend to a technological measure that restricts one form of access but leaves another route wide open." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). As the Sixth Circuit explained in *Lexmark*, a seminal Section 1201 case:

> Just as one would not say that a lock on the back door of a house "controls access" to a house whose front door does not contain a lock . . . it does not make sense to say that this provision of the DMCA applies to otherwise-readily-accessible copyrighted works.

*Id.* at 547; *see also id.* at 546–47 (authentication sequence is not a "technological measure that effectively controls access" because "[a]nyone who buys a Lexmark printer may read the literal code of the [software] . . . with or without the benefit of the authentication sequence").

Similarly, courts have rejected attempts to stretch the definition of "technological measure" to include purely voluntary measures that do not actually "control[] access to a work" but simply signal "the content owner's copying preferences." *See, e.g.*, *Agfa Monotype Corp. v. Adobe Sys., Inc.*, 404 F. Supp. 2d 1030, 1036 (N.D. Ill. 2005) (no Section 1201 liability where the work was "freely available," "not encrypted, and no passwords or authentication [were] required to access [it]"). Such measures are even less "effective" than a "lock on the back door of a house . . . whose front door does not contain a lock." *Lexmark*, 387 F.3d at 547. Put differently, these passive indications of preference do not "effectively control access to a work" any more than a "DO NOT ENTER" sign outside a public park "effectively control[s] access to" that otherwise freely accessible property. *Id.* at 548; *cf. Agfa Monotype Corp.*, 404 F. Supp. 2d at 1036–37 (a "passive entity that does nothing by itself" is not a Section 1201-qualifying technological measure).

Here, the only "technological measure" allegedly at issue is a robots.txt file. The Section 1201 claim is thus premised entirely on Ziff Davis's allegation that OpenAI "scrape[d]" an unnamed "Ziff Davis[] site[]" whose robots.txt file purported to express a preference to "disallow" such scraping. Compl. ¶¶ 116–17, 235–36. Even setting aside Ziff Davis's failure to identify that site with specificity, that claim fails as a matter of law for two reasons. First, as the Complaint effectively concedes, robots.txt files cannot give rise to a Section 1201 claim because, unlike, for example, encryption software, they do not "effectively control access" to a website. *See* 17 U.S.C. 1201(a)(3)(B). Second, the Complaint does not allege that OpenAI "circumvented" anything. *Id.* 1201(a)(3)(A).

1. Ziff Davis Fails To Allege Any Technological Measure That Effectively Controls Access

Using robots.txt files does not amount to putting in place "technological measure[s] that effectively control[] access to" copyrighted works for two reasons. First, robots.txt files do not actually prevent a third party from accessing a site. Second, robots.txt files do not preclude alternative means of accessing a site. Put differently, robots.txt files do not function as "locks" (or even "doors") that prevent access to a website.

*First*, as explained *supra*, a Section 1201-qualifying access control is a control that prevents a person from accessing a work unless that person has the requisite "key." *See* 17 U.S.C. § 1201(a)(3)(B) (qualifying technological measures "require[] the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work"). Such controls include (*e.g.*) "password protection, DVD encryption measures, and activation and validation keys," all of which "[c]ourts in this Circuit have held" to be "technological measures within the DMCA." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 509–11 (S.D.N.Y. 2015) (dismissing Section 1201 claim for failure to make such an allegation). Accordingly, to plead a Section 1201 claim, a complaint must "reference[] a password, encryption system, software protocol, validation key, or some other measure designed to ***thwart unauthorized access*** to a protected work." *Id.* at 510–11 (emphasis added).

Robots.txt does not qualify under this standard. While a robots.txt disallow indicates a site owner's *preference* regarding crawling, it does not "thwart" access to the site. *See LivePerson*, 83 F. Supp. 3d at 511. Unlike a password protected file or an encrypted DVD, a website that uses robots.txt to express its preferences as to crawling can still be freely accessed—including by the very crawlers named in the robots.txt file—without any affirmative steps. *See supra* § II.A. As Plaintiff concedes, robots.txt files are simply "instructions" or "directives." Compl. ¶¶ 115–16.

Robots.txt is, in other words, not a lock that must be picked, *cf.* S. Rep. 105-190 at 11, but is rather more akin to a "DO NOT ENTER" sign in a public space.

That means robots.txt is not a "technological measure that effectively controls access" to a website. 17 U.S.C. § 1201(a)(3)(B). Courts have reached the same conclusion in highly analogous contexts. In *Agfa Monotype Corp. v. Adobe Systems, Inc.*, for example, a font owner brought a Section 1201 claim against Adobe, alleging that Adobe's software was capable of accessing certain font files notwithstanding "embedding bits" in those files that "indicate the font vendor's [] preferences." 404 F. Supp. 2d 1030, 1031, 1035 (N.D. Ill. 2005). The court rejected the claim, noting that unlike Section 1201-qualifying measures—which typically require the "ent[ry] [of] a password or authorization sequence to obtain access" to the underlying work—"[a]n embedding bit is a passive entity that does nothing by itself." *Id.* at 1036. For that reason, the "embedding bits, without more, [did] not effectively control access to a work." *Id.*

So too here. A robots.txt file is a site owner's expression of its "preferences." *Id.* at 1035. It "does nothing by itself," *id.*, and leaves the site freely accessible to crawlers without the application of any circumvention. For that reason, robots.txt is not a "technological measure that effectively controls access" to a site. 17 U.S.C. § 1201(a)(3)(B). And because robots.txt is the only basis for Ziff Davis's Section 1201 claim, *see* Compl. ¶234, the claim fails as a matter of law.

*Second*, even if the Court were to assume that robots.txt is a "technological measure" that could qualify under Section 1201, that measure does not "effectively control[] access" to the relevant websites because it leaves open other avenues to access them. As noted above, Section 1201 does not apply to a measure that "block[s] one form of 'access'" while leaving "another relevant form of 'access'" open. *Lexmark*, 387 F.3d at 547; *see also MDY Indus., LLC v. Blizzard*

*Entertainment, Inc.,* 629 F.3d 928, 952–53 (9th Cir. 2010) (no effective access control when defendant "block[ed] one form of access" because "it left intact another form of access").

Here, Ziff Davis alleges only that it used robots.txt to express a preference with respect to a *single* OpenAI bot—GPTBot—that it not access some of its sites. *See* Compl. ¶¶ 114–16. It notably does *not* allege that it took any measures to prevent OpenAI or any other users from accessing the relevant websites through commonplace internet browsers. *See Agfa Monotype Corp.*, 404 F. Supp. 2d at 1035 (no effective access control when work was "available for free download from the Internet"). And while Ziff Davis's complaint alleges that the (unnamed) website at the core of its Section 1201 claim blocked GPTBot—i.e., the bot OpenAI uses to "crawl content . . . to train[] . . . [its] models," *see supra* § II.A—the complaint says nothing about any attempt by that (unnamed) website to preclude crawling by OpenAI's other bots for other non-training purposes, *see* Compl. ¶ 114 n.42 (citing *OpenAI Bots Documentation*); OpenAI, *Bots Documentation*, https://platform.openai.com/docs/bots (describing OpenAI's other bots and their distinct purposes). That (unnamed) website's robots.txt file is, in other words, an expression of Ziff Davis's preference as to how its site's content should be used—not a "technological measure that effectively controls *access*." 17 U.S.C. § 1201(a)(1)(A) (emphasis added).

2. <u>Ziff Davis Fails To Allege Circumvention</u>

Separately, even if the Court were to assume that Ziff Davis's allegations as to robots.txt suffice to plead the implementation of a "technological measure that effectively controls access," the claim nonetheless fails because Ziff Davis does not allege that OpenAI committed an act of "circumvent[ion]." 17 U.S.C. § 1201(a)(1)(A).

"[A] cause of action under the DMCA does not accrue upon unauthorized and injurious access alone; rather, the DMCA 'targets the *circumvention* of digital walls guarding copyrighted material.'" *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info.*, 307 F. Supp. 2d 521, 532

(S.D.N.Y.2004) (quoting *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 453 (2d Cir. 2001) (emphasis in original)). Accordingly, to plead a Section 1201 claim, a plaintiff must allege that the defendant "affirmatively perform[ed] an action that disables or voids the measure" that effectively controls access, *LivePerson, Inc.*, 83 F. Supp. 3d at 509 (citation omitted), like "descrambl[ing] a scrambled work" or "decrypt[ing] an encrypted work," 17 U.S.C. 1201(a)(3)(A). A plaintiff, in other words, must allege that the defendant engaged in some affirmative conduct akin to "breaking and entering (or hacking) into computer systems." *LivePerson, Inc.*, 83 F. Supp. 3d at 509 (quoting *I.M.S. Inquiry Mgmt. Sys., Ltd.*, 307 F. Supp. 2d at 532).

Ziff Davis, however, fails to "provide any supporting facts" showing such an affirmative act here. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318-GBD-BCM, 2017 WL 696126, at *19 (S.D.N.Y. Feb. 15, 2017), *report and recommendation adopted* 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) (dismissing Section 1201 claim where plaintiff did not allege that defendant itself took steps to circumvent plaintiff's controls, "as opposed to (for example) obtaining plaintiffs' signals after they are decrypted by another party"). Instead, Ziff Davis alleges that OpenAI's GPTBot "continued to actively" access its public website "without abatement" "[d]espite Ziff Davis's implementation of the robots.txt instructions." Compl. ¶ 117. That is an admission that OpenAI did not need to take any "affirmative" actions to "circumvent" the instructions once implemented, which means that there was no "circumvention" at all. *See LivePerson, Inc.*, 83 F. Supp. 3d at 509. And that alone requires dismissal. *See Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 464 (E.D.N.Y. 2012) (granting motion to dismiss where "there [were] no facts in the first amended complaint from which the Court [could] infer that [defendants] circumvented the 'digital walls' that protected the copyrighted works").

### B. The Unjust Enrichment Claim Is Preempted By The Copyright Act

As this Court previously held, Section 301 of the Copyright Act provides for "the preemption of state law claims that are interrelated with copyright claims in certain ways." News MTD Order at 31 (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997)). A state-law claim is preempted under Section 301 if two conditions are satisfied. *First*, the claim asserts rights in a "work[] of authorship" that "come[s] within the subject matter of copyright as specified by section[] 102" of the Copyright Act. 17 U.S.C. § 301(a); *see* News MTD Order at 31–32 (defining this part of the copyright preemption test as the "subject matter requirement"). *Second*, the rights asserted are "equivalent to [] the exclusive rights within the general scope of copyright as specified by section 106" of the Copyright Act. *Id.* § 301(a); *see* News MTD Order at 31–32 (defining this part of the test as the "general scope requirement"). Under this test, Ziff Davis's unjust enrichment claim is clearly preempted.

#### 1. <u>Ziff Davis's Works Fall Within Copyright's "Subject Matter"</u>

The "subject matter" prong of the copyright preemption test is clearly satisfied here. Section 102(a) of the Copyright Act defines the subject matter of copyright and lists several "categories" of copyrightable works, including "literary works." 17 U.S.C. § 102(a)(1). Ziff Davis's unjust enrichment claim is based on alleged "processing [of] copies" of "[Ziff Davis's] Registered Works," Compl. ¶ 227, which consist of "editorial archives" of internet articles, *id.* ¶ 53. Written articles "come within the subject matter of copyright as specified in Section 102" of the Act. 17 U.S.C. § 301(a); *see* News MTD Order at 31–32 (recognizing that News Plaintiffs' "copyrighted works" would satisfy this requirement and claim would be preempted if narrow exception was not met). Indeed, Ziff Davis brings a copyright infringement claim based on the very same conduct.

2. The Unjust Enrichment Claim Asserts Rights Within Copyright's Scope

The "general scope requirement" is also satisfied here. Claims based on alleged "acts of reproduction, adaptation, performance, distribution or display" come within the "general scope" of the Copyright Act. *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004); *accord Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 973 (9th Cir. 2024) ("Displaying and reproducing a copy of a copyrighted work . . . falls squarely within the scope of 17 U.S.C. § 106."); *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1144 (8th Cir. 2015) (when a plaintiff's alleged "state-law rights" could have been "infringed by the mere act of reproduction, performance, distribution or display of his [work]," those rights are "equivalent to the exclusive rights within the general scope of copyright" (cleaned up)). Here, Ziff Davis's unjust enrichment claim is predicated on the alleged use and reproduction of its written content. Compl. ¶¶ 227–28 (claiming that OpenAI was enriched by "processing," "exploiting," and "taking" its works). These alleged acts of reproduction are "the same facts" on which Ziff Davis's copyright claim is based, and are squarely within copyright's scope. *Rubio v. Barnes & Noble, Inc.*, No. 14-CV-6561, 2014 WL 6769150, at *3 (S.D.N.Y. Nov. 12, 2014) (unjust enrichment claim based on "the unauthorized and uncompensated production" of allegedly infringing copies and derivatives was preempted); *Briarpatch*, 373 F.3d at 306 (unjust enrichment claim preempted where alleged act "would, in and of itself, infringe the adaptation rights protected by § 106(2)"). Ziff Davis's claim is therefore preempted.

As this Court explained in the News MTD Order, certain claims "'otherwise within the general scope requirement' of section 301 will survive preemption when those claims include 'extra elements' instead of, or in addition to," acts of reproduction or display. News MTD Order at 32. But this is not one of those claims. The Second Circuit held in *Briarpatch* that unjust enrichment does not have any such element: while it requires "enrichment," that element "limits

the scope of the claim but leaves its fundamental nature unaltered." 373 F.3d at 306–07 (citing cases); *see, e.g., Genius Media Grp. Inc. v. Google LLC*, No. 19-CV-7279, 2020 WL 5553639, at *10 (E.D.N.Y. Aug. 10, 2020) (same); *Rubio*, 2014 WL 6769150, at *3 (same).[6]

Indeed, *every* court to consider this issue has reached the same conclusion. *See Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at *7–8 (N.D. Cal. Jan. 22, 2024) (dismissing claims "principally concern[ing] the unauthorized reproduction of [plaintiffs' works,]" including unjust enrichment claim, because they "fall under the purview of the Copyright Act"); *Andersen v. Stability AI*, 744 F. Supp. 3d 956, 972–73 (N.D. Cal. 2024) (dismissing claims "based on the use of plaintiffs' copyrighted works without consent" as preempted); *Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640, at *2 (Nov. 20, 2023) (dismissing similar unjust enrichment claim as preempted). This Court should do the same, and hold that this claim, just like the News Plaintiffs' misappropriation claims, is preempted.

### C. Ziff Davis Has Not Stated a Section 1202(b)(3) Claim

Section 1202(b)(3) of the DMCA prohibits "distribution" of works or copies of works "while knowing that CMI has been removed or altered without the authority of the copyright owner or the law, and [] while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement." News MTD Order at 27 (quoting *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020)).

Ziff Davis claims that OpenAI has violated this provision because ChatGPT's outputs include "versions of [its] copyrighted works from which CMI was intentionally removed." Compl.

---

[6] The Delaware formulation of unjust enrichment likewise requires "(1) an enrichment," along with "(2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). None of these elements alter the "fundamental nature" of the claim such that it is no longer focused on the alleged unauthorized reproduction of Ziff Davis's works. *Briarpatch*, 373 F.3d at 306–07; *see Williams v. Atl. Recording Corp.*, No. 20-CV-316-RGA, 2020 WL 5775233, at *1 (D. Del. Sept. 28, 2020) (noting that motion to remand to state court was "denied on the basis that Plaintiff's claims [including unjust enrichment] were preempted by the Copyright Act").

¶ 252. The only factual allegations that relate to this claim are the screenshots included in paragraph 161 and Exhibit E to the Complaint. *Id.* ¶ 161 & Ex. E. Those allegations and screenshots show that Ziff Davis or its representatives prompted ChatGPT by (1) providing a specific URL to an article and requesting a one-sentence summary, limiting ChatGPT to "a single source," (2) instructing ChatGPT to print a "single line with the separator 'ZZZZZZ,'" and (3) requesting that ChatGPT "show me what the full article would look like if after every period or other character ending the sentence, there were three spaces." *Id.* ¶ 161. Ziff Davis claims that this carefully engineered prompt caused ChatGPT to output portions of its articles. *See generally* Compl. Ex. E.

Before discussing the reasons why Ziff Davis has failed to state a Section 1202(b)(3) claim, it is worth noting just how far afield Ziff Davis's claim is from the factual circumstance Section 1202(b)(3) was designed to address. Section 1202(b)(3) is designed to address, for example, a defendant's intentional removal of the "gutter credit" on a photograph before including the photograph in a follow-on publication distributed to the public, thereby concealing the identity of the photograph's original owner. *See, e.g.*, *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 169–70 (2d Cir. 2020). Ziff Davis, however, seeks to use the provision ***not*** where a copyright owner's identity has been concealed, but where the copyright owner's identity is apparently known. Ziff Davis's claim is based on a situation where a user who *already possesses a URL to the source website* enters that URL into ChatGPT—along with a highly contrived prompt designed to violate ChatGPT's terms of use and circumvent OpenAI's safeguards—and allegedly receives, in response, text from the underlying article that allegedly does not include, *inter alia*, the "copyright notices, terms of use information, publication names." Compl. ¶¶ 161, 171. The alleged omission of CMI from such an output would not conceal anything from the user since the user already

possesses a link to the underlying content through which she could easily trace the article back to its publisher and author. *Cf.* S. Rep. 105-190 (CMI provision designed to "assist in tracking and monitoring uses of copyrighted works" across the "Internet marketplace"). Given the completely inapt nature of Section 1202(b)(3) to the allegations at hand, it is not surprising that Ziff Davis's Section 1202(b)(3) claim fails.

1. <u>Ziff Davis Fails To Allege Distribution</u>

Ziff Davis has failed to state a claim under Section 1202(b)(3) because it has not sufficiently alleged that there has been any "distribution" of CMI-less copies of its works. The only thing that Ziff Davis has alleged regarding purported CMI-less copies of its works is that its *own lawyers or experts* have violated ChatGPT's terms of use and found a way to circumvent OpenAI's safeguards and cause ChatGPT to generate such outputs. *See id.* The fact that Ziff Davis itself was able to cause the generation of these outputs does not suffice to plead a Section 1202(b)(3) violation, which necessarily requires that the distribution occur "without the authority of the copyright owner"—in this case, Ziff Davis. 17 U.S.C. § 1202(b)(3).

While Ziff Davis claims that ChatGPT has delivered similar results to "third parties without [its] permission," Compl. ¶ 252, that allegation is entirely conclusory and insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 663. Nor is it "plausible" to assume that such a third-party distribution has occurred. *Id.* at 678–79. Ziff Davis's own exhibit suggests that the process of generating the kind of outputs at issue requires the user to already possess an accurate URL to the source article, along with a convoluted prompt involving a "ZZZZZZ" "separator" and "three spaces" "after every period." *See, e.g.*, Compl. ¶ 161. Nowhere does Ziff Davis explain why, let alone allege that, any other ChatGPT user would undertake the same extensive efforts just to read one of Ziff Davis's articles—particularly in light of the fact that the user could simply paste the same URL into her internet browser to read the article from its source. *See* Compl. ¶ 51 (conceding

that Ziff Davis "does not typically place its media content behind 'paywalls'"). The "sheer possibility" that this has happened is not sufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678; *see id.* at 678–79 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Even if the Court were to assume, without factual support, that "third parties" *have* undertaken this convoluted procedure, the resulting output would (at best) constitute the *display* of Ziff Davis's article to a user. But a "public display does not constitute distribution, and thus is not a [DMCA] violation." *FurnitureDealer.Net, Inc v. Amazon.com, Inc*, No. 18-cv-232, 2022 WL 891473, at *23 (D. Minn. Mar. 25, 2022). A "distribution" requires more, to wit: a "sale or transfer of ownership extending *beyond that of a mere public display*." *Wright v. Miah*, No. 22-cv-4132, 2023 WL 6219435, at *7 (E.D.N.Y. Sept. 7, 2023) (emphasis added); *see also MyPlayCity, Inc. v. Conduit Ltd.*, No. 10-cv-1615, 2012 WL 1107648, at *12 (S.D.N.Y. Mar. 30, 2012) ("distribution" means "actual dissemination of copies"). No such "sale or transfer of ownership" of copies is alleged here.

2. Ziff Davis Fails To Allege ChatGPT Generated Complete Copies With Specific CMI Removed

Ziff Davis's claims separately fail because, even if Ziff Davis had sufficiently alleged distribution, it has not sufficiently alleged distribution of complete "works" or "copies of [them]" from which CMI "has been removed or altered." 17 U.S.C. § 1202(b)(3). First, while Ziff Davis appears to have strategically omitted URLs for the full copies of the articles it claims were regurgitated, its exhibit suggests that many of the alleged regurgitations are just excerpts of the articles in question. *See, e.g.*, Compl. Ex. E at 5, 7, 9, 10, 11, 13. And its Complaint notably does not actually allege—even in conclusory fashion—that any of these outputs are complete copies of

its articles. *See generally* Compl. This Court already rejected Section 1202(b)(3) based on similar allegations, holding that endorsing a Section 1202(b)(3) claim based on regurgitation of parts of articles would expose "any person who distributes only portion of an article"—even "various block quotes"—to "boundless Section 1202(b)(3) liability." News MTD Order at 28–29; *see also Doe 1*, 2024 WL 235217 (holding that plaintiffs "have effectively pleaded themselves out of their Section [] 1202(b)(3) claims" because they alleged that the distributed copies were "often a modification of their licensed works"); *Andersen*, 744 F. Supp. 3d at 971 ("agree[ing] with the reasoning" of *Doe 1* and dismissing DMCA claims with prejudice).

Second, Ziff Davis has failed to specify the CMI that it believes was "removed" from the outputs that OpenAI allegedly "distributed." 17 U.S.C. § 1202(b)(3). The relevant paragraphs of its Complaint contain no references whatsoever to specific forms of CMI that were allegedly excluded from any outputs. Compl. ¶¶ 251–53. Instead, they simply state the conclusion that "CMI was intentionally removed." *Id.* ¶ 252. That is entirely conclusory and insufficient to state a claim. *See Janik v. MediaPost Communications, Inc.*, No. 16-cv-05872, 2017 WL 2735578, at *3 (S.D.N.Y. June 26, 2017) (dismissing Section 1202(b) claim where complaint "does not allege . . . [what] CMI [defendant] allegedly removed or altered or that [defendant] removed any CMI at all," beyond conclusory allegations); *Lixenberg v. Complex Media, Inc.*, No. 22-cv-354, 2023 WL 144663, at 4 (S.D.N.Y. Jan. 10, 2023), *abrogated on other grounds by Michael Grecco Productions, Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024) ("conclusory" allegation that defendants "removed Plaintiffs' copyright management information" was "plainly insufficient to sustain a claim").

For those reasons, too, the Section 1202(b)(3) claim should be dismissed.

### D. Ziff Davis Does Not Allege Sufficient Fame for its Trademark Claim

Ziff Davis fails to state a trademark claim because it does not allege that its marks are "famous" within the meaning of the trademark laws. *See* 15 U.S.C. § 1125(c)(1) (providing dilution cause of action for "the owner of a famous mark that is distinctive"); *id.* § 1125(c)(2)(A) ("a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner").[7] This failure distinguishes Ziff Davis's claim from the Court's prior ruling on several similar claims brought by News Plaintiffs, whose complaints included far more allegations of fame than Ziff Davis's Complaint.

"[T]he requirement that the mark be 'famous' and 'distinctive' significantly limits the pool of marks that may receive dilution protection." *Starbucks Corp. v. Wolfe's Borough Coffee*, Inc., 588 F.3d 97, 105 (2d Cir. 2009). This Court previously concluded that several News Plaintiffs had cleared that high bar. *See* News MTD Order at 36. This Court relied on, *inter alia*, the following allegations in reaching its decision: "that [] each of their publications has been in circulation for more than 100 years"; that "millions of consumers access the trademark dilution plaintiffs' publications in print and digital format, which are circulated under the Diluted Trademarks"; and that "their publications have received widespread recognition for their achievements including numerous Pulitzer Prizes, which constitute the most prestigious and highly publicized national journalism award." *Id.* at 36–37. Although OpenAI continues to disagree that News Plaintiffs' allegations were sufficient to allege the required level of fame for a trademark

[7] The statute further provides that courts "may consider all relevant factors" in determining fame, including "(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties"; "(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark"; (iii) The extent of actual recognition of the mark"; and "(iv) Whether the mark was registered." *Id.*

dilution claim, Ziff Davis's allegations are significantly weaker than those on which the Court previously relied.

*First*, Ziff Davis fails to allege that any of its *marks* have achieved the necessary recognition. Most of its allegations improperly aggregate its various brands in an effort to marshal more impressive numbers. *E.g.*, Compl. ¶ 35 (alleging that its "top digital media properties together" averaged millions of user visits per month); *id.* ¶ 56 (alleging that Ziff Davis has used its marks "since the date of first publication" for each brand, without specifying any individual length of time). But because trademark dilution concerns *marks*, not companies, these group allegations about its brands collectively do not establish the fame of any of its marks. *See* 15 U.S.C. § 1125(c)(2)(A) (defining fame in reference to "a mark"). Ziff Davis's generalized allegations stand in notable contrast to the prior News Plaintiffs, who made specific allegations about the broad reach of each of their marks. *See e.g.*, Compl., Dkt. No, 1, *Daily News, LP et al. v. Microsoft et al.*, No. 1:24-cv-03285 (S.D.N.Y. Apr. 30, 2024) ("Daily News") ¶ 238 (alleging that "The Daily News" has "won 11 Pulitzer Prizes and has generated substantial revenue under its NEW YORK DAILY NEWS and registered NYDAILYNEWS.COM brands"); *id.* ¶ 241 (alleging that The Denver Post used that specific name and brand "for over one hundred years," and that "its website received roughly six million monthly unique visitors generating more than 13 million page views"). In fact, Ziff Davis fails to make *any* specific allegations about the majority of its asserted marks. *See* Compl. ¶¶ 54–55, 254 (asserting that marks in Ex. C are "famous"); Compl. Ex. C at 1–2 (including, for example, "Aberdeen Group" "Campaigner," "Castle Connolly," "DailyOM," "Diabetes Daily," "Digital Foundry," "Downdetector," "Ekahau," and "eVoice"); Compl. ¶¶ 31–56 (no allegations regarding same).

*Second*, for the few individual allegations Ziff Davis does make about its marks, it fails to allege widespread or general recognition. Trademark dilution is reserved for marks that are "widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2). It does not cover "niche fame, *i.e.*[,] fame limited to a particular channel of trade, segment of industry or service, or geographic region." *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 234 (S.D.N.Y. 2023). But "niche fame" is all Ziff Davis alleges that its marks have achieved. It proclaims that it has "over 45 portfolio media brands," Compl. ¶ 32, in multiple separate "verticals," and points to niche awards won by its publications in particular "segment[s] of industry," *see id.* ¶ 36 (alleging that some of Ziff Davis's publications have won "Digital Health Awards" and "Games Media Awards"); *see E.A. Sween Co, Inc. v. A & M Deli Express Inc.*, 2018 WL 1283682, at *7 (E.D.N.Y. Mar. 9, 2018) (rejecting "conclusory" allegations that plaintiff was "voted Vendor of the Year and inducted into the Convenience Store Industry Hall of Fame"). These submarket-specific allegations do not establish the kind of broad fame necessary for a trademark dilution claim. *See Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 758 (S.D.N.Y. 2012) (rejecting claim of "fame among baby product consumers" as insufficient); *Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 430 (S.D.N.Y. 2022) ("fame within the design or streetwear industry" insufficient).

In short, Ziff Davis's allegations do not come close to the standard required by the law, let alone countenanced by this Court's order on some of the News Plaintiffs' trademark claims. Ziff Davis cannot ride the coattails of the seemingly more famous plaintiffs that preceded it; it must allege that its *own* marks have acquired the kind of recognition that warrants protection under the dilution statute. It has not done so. Its trademark claim must therefore be dismissed.

### E. The Contributory Infringement and Section 1202(b)(1) Claims Are Also Deficient

Like the other News Plaintiffs, Ziff Davis brings a contributory infringement claim and a claim under Section 1202(b)(1) of the DMCA. In its prior Order, this Court allowed the same claims to go forward. *See* News MTD Order. OpenAI respectfully disagrees with the Court's conclusions, but will not relitigate these claims here. Instead, it briefly summarizes why Ziff Davis, like the prior News Plaintiffs, fails to state a claim on these counts:

- Ziff Davis fails to state a contributory infringement claim because it does not allege that OpenAI had knowledge of specific infringing outputs of Ziff Davis's works—the proper standard for contributory liability. *See* Mot. to Dismiss, Dkt. No. 52, *The New York Times v. Microsoft*, No. 1:23-cv-11195 (S.D.N.Y. Feb. 26, 2024); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934 (2005) (courts may not "imput[e] intent" solely based on the "characteristics or uses of a [] product"); *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 308–10 (4th Cir. 2018).
- Ziff Davis's Section 1202(b)(1) claim fails for lack of standing because the alleged presence of copies of Ziff Davis's works in OpenAI's training data, standing alone, cannot satisfy Article III's demand for a concrete and particularized injury—a prerequisite to maintaining suit in federal court. *See Davis v. FEC*, 554 U.S. 724, 733 (2008).
- Ziff Davis does not state a Section 1202(b)(1) claim because Ziff Davis fails to allege facts that could show how the alleged CMI removal could "induce, enable, facilitate, or conceal an infringement" of copyright—much less how OpenAI could have "reasonable grounds to know" it would. 17 U.S.C. § 1202(b). The "point of

CMI" is to provide information to "the public," not to govern purely internal databases. *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 737 (S.D.N.Y. 2021).

## V. CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that the Court dismiss Counts 3, 4, 5, 6, 7, and 8 of Ziff Davis's Complaint.

Dated: June 10, 2025

*/s/ Andrew M. Gass*
**LATHAM & WATKINS LLP**
Andrew M. Gass (*pro hac vice*)
*andrew.gass@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
*sy.damle@lw.com*
Elana Nightingale Dawson (*pro hac vice*)
*elana.nightingaledawson@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Rachel R. Blitzer
*rachel.blitzer@lw.com*
Herman H. Yue
*herman.yue@lw.com*
Luke A. Budiardjo
*luke.budiardjo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200

Allison S. Blanco (*pro hac vice*)
*allison.blanco@lw.com*
650 Town Center Drive 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235

*Attorneys for OpenAI*

*/s/ Joseph C. Gratz*
**MORRISON & FOERSTER LLP**
Joseph C. Gratz (pro hac vice)*
jgratz@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Rose S. Lee (pro hac vice)
roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200

Carolyn M. Homer (pro hac vice)
cmhomer@mofo.com
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: 202.650.4597

Jocelyn E. Greer
jgreer@mofo.com
Emily C. Wood
ewood@mofo.com
Eric K. Nikolaides
enikolaides@mofo.com
250 West 55th Street
New York, NY 10019
Telephone: 212.468.8000

*Attorneys for OpenAI*

*/s/ R. James Slaughter*
**KEKER, VAN NEST & PETERS LLP**
Robert A. Van Nest (*pro hac vice*)
*rvannest@keker.com*
Paven Malhotra
*pmalhotra@keker.com*
Michelle S. Ybarra (*pro hac vice*)
*mybarra@keker.com*
Nicholas S. Goldberg (*pro hac vice*)
*ngoldberg@keker.com*
Thomas E. Gorman (*pro hac vice*)
*tgorman@keker.com*
Katie Lynn Joyce (*pro hac vice*)
*kjoyce@keker.com*
Sarah Salomon (*pro hac vice*)
*ssalomon@keker.com*
R. James Slaughter (*pro hac vice*)*
*rslaughter@keker.com*
Christopher S. Sun (*pro hac vice*)
*csun@keker.com*
Andrew F. Dawson (*pro hac vice*)
*adawson@keker.com*
Andrew S. Bruns (*pro hac vice*)
*abruns@keker.com*
Edward A. Bayley (*pro hac vice*)
*ebayley@keker.com*
Ryan K. Wong (*pro hac vice*)
*rwong@keker.com*
Spencer McManus (*pro hac vice* pending)
*smcmanus@keker.com*
Olivia C. Malone (*pro hac vice* pending)
*omalone@keker.com*
Bilal A. Malik (*pro hac vice* pending)
*bmalik@keker.com*
633 Battery St.
San Francisco, CA 94111
Telephone: 415.391.5400

*Attorneys for OpenAI*

## CERTIFICATE OF COMPLIANCE

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law is 7,732 words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word count feature of the word-processing system used to prepare this memorandum.

Dated: June 10, 2025

*/s/ Andrew M. Gass*

Andrew M. Gass