**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br><br>This Document Relates To:<br><br>ZIFF DAVIS, INC. et al v. OPENAI, INC. et al.,<br>No. 1:25-cv-04315 | 1:25-md-03143 (SHS) (OTW)<br><br>**MEMORANDUM OF LAW IN<br>SUPPORT OF DEFENDANTS'<br>MOTION TO DISMISS**<br><br>ORAL ARGUMENT REQUESTED |

**<u>TABLE OF CONTENTS</u>**

**Page**

I.      INTRODUCTION ................................................................................1

II.     BACKGROUND ................................................................................2

        A.      Web Crawlers and Robots.txt ................................................2

        B.      Other Lawsuits Against OpenAI And The Court's Prior Dismissal Order ............3

        C.      The Ziff Davis Lawsuit ................................................4

III.    LEGAL STANDARD ................................................................................6

IV.     ARGUMENT ................................................................................6

        A.      The Section 1201(a) Claim Still Fails ................................................7

                1.      Ziff Davis Still Fails To Allege A Technological Measure That Effectively Controls Access ................................................7

                2.      Ziff Davis Still Fails To Allege Circumvention ................................................13

        B.      The Unjust Enrichment Claim Is Preempted By The Copyright Act ................14

                1.      Ziff Davis's Works Fall Within Copyright's "Subject Matter" ................15

                2.      The Unjust Enrichment Claim Asserts Rights Within Copyright's Scope ................................................15

        C.      Ziff Davis Has Not Stated a Section 1202(b)(3) Claim ................................................17

                1.      Ziff Davis Fails To Allege Distribution ................................................18

                2.      Ziff Davis Fails To Allege ChatGPT Generated Complete Copies With Specific CMI Removed ................................................20

        D.      Ziff Davis Does Not Allege Sufficient Fame for its Trademark Claim ................21

        E.      The Contributory Infringement and Section 1202(b)(1) Claims Are Deficient ................................................24

V.      CONCLUSION ................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### CASES

**Page(s)**

*Agfa Monotype Corp. v. Adobe Systems, Inc.*,
    404 F. Supp. 2d 1030 (N.D. Ill. 2005) ................................................................. 9, 10, 11, 12

*Andersen v. Stability AI*,
    744 F. Supp. 3d 956 (N.D. Cal. 2024) ........................................................................... 16, 21

*Arcesium, LLC v. Advent Software, Inc.*,
    No. 20-cv-04389, 2021 WL 1225446 (S.D.N.Y. Mar. 31, 2021) ............................................ 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 6, 19

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    881 F.3d 293 (4th Cir. 2018) ............................................................................................. 25

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004) ......................................................................................... 15, 16

*CDC Newburgh Inc. v. STM Bags, LLC*,
    692 F. Supp. 3d 205 (S.D.N.Y. 2023) ................................................................................ 24

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
    No. 24-171, 2025 WL 1787701 (U.S. June 30, 2025) ......................................................... 25

*Davis v. FEC*,
    554 U.S. 724 (2008) ......................................................................................................... 25

*Dish Network L.L.C. v. World Cable Inc.*,
    893 F. Supp. 2d 452 (E.D.N.Y. 2012) ................................................................................ 14

*Doe 1 v. GitHub, Inc.*,
    No. 22-cv-06823, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ...................................... 16, 21

*E.A. Sween Co., Inc. v. A & M Deli Express Inc.*,
    787 F. App'x 780 (2d Cir. 2019) ........................................................................................ 23

*FurnitureDealer.Net, Inc v. Amazon.com, Inc*,
    No. 18-cv-232, 2022 WL 891473 (D. Minn. Mar. 25, 2022) ................................................ 19

*Genius Media Grp. Inc. v. Google LLC*,
    No. 19-cv-7279, 2020 WL 5553639 (E.D.N.Y. Aug. 10, 2020) ........................................... 16

**Page(s)**

*Green v. United States Dep't of Just.*,
    111 F.4th 81 (D.C. Cir. 2024) .................................................................................... 7

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info.*,
    307 F. Supp. 2d 521 (S.D.N.Y. 2004) ........................................................................ 13

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
    No. 16-cv-1318, 2017 WL 696126 (S.D.N.Y. Feb. 15, 2017), *report and
    recommendation adopted*, 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) ................... 13

*Kadrey v. Meta Platforms, Inc.*,
    No. 23-cv-03417, 2023 WL 8039640 (Nov. 20, 2023) ............................................. 16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v.
    MercExchange, L.L.C.*, 547 U.S. 388 (2006) ....................................................... 8, 9, 12

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
    83 F. Supp. 3d 501 (S.D.N.Y. 2015) ................................................................. 7, 8, 9, 14

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
    841 F. Supp. 2d 753 (S.D.N.Y. 2012) ................................................................. 22, 24

*Mango v. BuzzFeed, Inc.*,
    970 F.3d 167 (2d Cir. 2020) ....................................................................................... 18

*MDY Indus., LLC v. Blizzard Entertainment, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ..................................................................................... 12

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) .................................................................................................. 25

*ML Genius Holdings LLC v. Google LLC*,
    No. 20-3113, 2022 WL 710744 (2d Cir. Mar. 10, 2022) .......................................... 17

*MyPlayCity, Inc. v. Conduit Ltd.*,
    No. 10-cv-1615, 2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012) ................................ 20

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
    105 F.3d 841 (2d Cir. 1997) ..................................................................................... 14

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ....................................................................................... 16

*Poindexter v. EMI Rec. Grp. Inc.*,
    No. 11-cv-559-LTS-JLC, 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) .................. 10

Page(s)

*Ray v. ESPN, Inc.*,
783 F.3d 1140 (8th Cir. 2015) ............................................................ 15

*Roberts v. BroadwayHD LLC*,
518 F. Supp. 3d 719 (S.D.N.Y. 2021)................................................... 25

*Rubio v. Barnes & Noble, Inc.*,
No. 14-CV-6561, 2014 WL 6769150 (S.D.N.Y. Nov. 12, 2014)........................................... 16

*Smith v. Local 819 I.B.T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002)................................................................. 11

*Stadt v. Fox News Network LLC*,
719 F. Supp. 2d 312 (S.D.N.Y. 2010)................................................... 15

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
588 F.3d 97 (2d Cir. 2009)................................................................... 21

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772 (N.D. Cal. 2024) ................................................... 6

*Tremblay v. OpenAI, Inc.*,
742 F. Supp. 3d 1054 (N.D. Cal. 2024) ................................................. 6

*Universal City Studios, Inc. v. Corley*,
273 F.3d 429 (2d Cir. 2001)................................................................. 13

*Walker Wear LLC v. Off-White LLC*,
624 F. Supp. 3d 424 (S.D.N.Y. 2022)............................................. 23, 24

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015)............................................... 3, 11

*Williams v. Atl. Recording Corp.*,
No. 20-cv-316, 2020 WL 5775233 (D. Del. Sept. 28, 2020)................................................. 16

*Wright v. Miah*,
No. 22-cv-4132, 2023 WL 6219435 (E.D.N.Y. Sept. 7, 2023) ........................................... 20

**STATUTES**

15 U.S.C. § 1125(c)(1)....................................................................... 21

15 U.S.C. § 1125(c)(2)....................................................................... 23

15 U.S.C. § 1125(c)(2)(A) ............................................................. 21, 22

17 U.S.C. § 102(a)(1) ........................................................................................... 15

17 U.S.C. § 1201(a) ........................................................................... 1, 7, 8, 11, 14

17 U.S.C. § 1201(a)(1) ............................................................................. 5, 10, 11

17 U.S.C. § 1201(a)(1)(A) ................................................................................... 13

17 U.S.C. § 1201(a)(3)(A) ............................................................................... 8, 14

17 U.S.C. § 1201(a)(3)(B) ..................................................................... 7, 9, 10, 12

17 U.S.C. § 1202(b) ............................................................................................ 25

17 U.S.C. § 1202(b)(3) ........................................................... 2, 5, 6, 17, 18, 19, 21

17 U.S.C. § 301(a) ........................................................................................... 2, 14

## OTHER AUTHORITIES

Joe Hindy, *Bluesky Proposes New Privacy Settings For Its Users*, Mashable (Mar.
16, 2025), https://mashable.com/article/bluesky-proposes-new-privacy-
settings-for-users#:~:text=The%20new%20options%20would%20allow,
for%20generative%20AI%20and%20advertising.&text=Bluesky%20is%20
working%20on%20giving,of%20making%20to%20that%20end ..................................... 3, 11

S. Rep. No. 105-190 (1998) ................................................................................. 8, 9, 18

## I. INTRODUCTION

This is a tag-along action to the ongoing multidistrict litigation pending before this Court. Plaintiffs, led by Ziff Davis, the owner of several consumer websites including *Lifehacker* and *BabyCenter*, largely follow in the tracks of the existing news publisher plaintiffs. *See In Re: OpenAI, Inc. Copyright Infringement Litig.*, No. 1:25-md-03143.[1]  Of the nine claims Ziff Davis is pursuing, only two are claims this Court has yet to encounter within this multidistrict litigation—a claim under Section 1201 of the Digital Millennium Copyright Act ("DMCA") (Count 5), and a claim for unjust enrichment (Count 4).  OpenAI previously moved to dismiss those claims, among others, as both legally and factually infirm.  See ECF 52.  Rather than oppose the motion, Ziff Davis amended its complaint.  *See* First Amended Complaint ("FAC"), ECF 105.  Notwithstanding Ziff Davis's amendments, those claims and the alleged facts underlying them remain the same.

Ziff Davis's claim under Section 1201 of the DMCA fails because it is based on conduct the DMCA does not prohibit.  Ziff Davis alleges that OpenAI violated Section 1201 by disregarding statements in robots.txt files asking bots not to scrape Ziff Davis-owned websites.[2] Even accepting the premise as true, the claim fails because Section 1201 applies only to "technological measures that effectively control[] access to a [copyrighted] work." 17 U.S.C. § 1201(a); FAC ¶¶ 239–46 (Count 5).  It does not apply to robots.txt files, which do not "control access" but rather—as Ziff Davis's complaint makes clear—simply allow website operators to communicate their preferences as to web crawling.

Ziff Davis's unjust enrichment claim fails because it is preempted by the Copyright Act. Ziff Davis's unjust enrichment claim is based on OpenAI's alleged use of Ziff Davis's copyrighted

---

[1] This Motion hereafter follows the convention of the Amended Complaint, referring to Plaintiffs collectively as "Ziff Davis" in the singular.  *See, e.g.*, FAC ¶ 1.
[2] OpenAI disputes this allegation.

works in a way that is "equivalent to [] the exclusive rights within the general scope of copyright as specified by section 106" of the Copyright Act, 17 U.S.C. § 301(a).  See FAC ¶¶ 205–16. Because Ziff Davis's unjust enrichment claim "fall[s] squarely within the subject matter and general scope of the Copyright Act," it is preempted.  *See* Order, Dkt. 514 at 34, *The New York Times v. Microsoft*, No. 1:23-cv-11195 (S.D.N.Y. Apr. 4, 2025) ("News MTD Order").

Four of Ziff Davis's other claims are likewise infirm and should be dismissed.  Ziff Davis's DMCA Section 1202(b)(3) claim (Count 7) fails because Ziff Davis does not—and cannot—allege that OpenAI unlawfully "distributed" complete copies of Ziff Davis's works from which specific forms of CMI were removed.  *See* FAC ¶¶ 247–56.  The federal trademark dilution claim (Count 8) fails because Ziff Davis does not—and cannot—allege that its marks are sufficiently famous— indeed, even its amended allegations fall far short of what this Court has found sufficient to state such a claim. *Compare* FAC, ¶¶ 55–57, 260–63, *with* News MTD Order at 35–37.  And finally, although OpenAI recognizes that the Court viewed things differently with respect to existing news publisher plaintiffs, OpenAI maintains that Ziff Davis fails to state a claim for contributory infringement (Count 3) and for a violation of Section 1202(b)(1) of the DMCA (Count 6).  In short, Ziff Davis—like other plaintiffs before it—has failed to state several of the claims in its Amended Complaint.   Those claims should be dismissed.

## II.     BACKGROUND

### A.     Web Crawlers and Robots.txt

OpenAI, like many technology companies, uses a range of automated web crawlers to interact with websites.  Those crawlers include "GPTBot" (used to "crawl content that may be used [to] train[] [its] generative AI foundation models") and "OAI-SearchBot" (used to "link to

and surface websites in search results in ChatGPT's search features").[3]  "OpenAI pioneered the use of web crawler permissions for AI" via robots.txt files, "enabling web publishers to express their preferences about the use of their content in AI."[4]

Website owners, in turn, communicate their preferences regarding crawling of their websites in "text files hosted on the website's server," which are referred to as robots.txt.  FAC ¶ 117.  For example, a website owner can include in a robots.txt file "instructions" that identify specific crawlers by name and "direct[]" those crawlers either not to crawl the website or limit crawling to specific portions of the website.  *Id.* ¶¶ 117–18.  The "instructions" in a robots.txt file simply state the website owner's preferences.  *Id.* ¶ 120.  Plaintiff Mashable, Inc. has described robots.txt files as a "suggestion rather than a hard rule."[5]

## B.    Other Lawsuits Against OpenAI And The Court's Prior Dismissal Order

Multiple lawsuits against OpenAI have now been consolidated into a multidistrict litigation ("MDL") before this Court.  *See* Case Management Order, Dkt. 60, No. 1:25-md-03143.  That MDL includes five suits by news organizations (the "News Plaintiffs").  *See id.* n.1 (identifying News Plaintiffs).  News Plaintiffs' lawsuits all allege that OpenAI is liable for copyright infringement based on alleged use of the plaintiffs' content to train LLMs.  Several News Plaintiffs' lawsuits also allege additional, ancillary claims, including trademark dilution and removal of copyright management information.  Prior to consolidation, OpenAI moved to dismiss several ancillary claims.  This Court granted in part and denied in part OpenAI's motion.  The

---

[3] OpenAI, *Overview of OpenAI Crawlers*, https://platform.openai.com/docs/bots (cited at FAC ¶ 116 n.52).

[4] OpenAI, *Our Approach to Data and AI*, https://openai.com/index/approach-to-data-and-ai (cited at FAC ¶ 125 n.55).
[5] Joe Hindy, *Bluesky Proposes New Privacy Settings For Its Users*, Mashable (Mar. 16, 2025), https://mashable.com /article/bluesky-proposes-new-privacy-settings-for-users#:~:text=The%20new%20options%20would%20allow,for%20generative%20AI%20and%20advertising.&text=Bluesky%20is%20working%20on%20giving, of%20making%20 to%20that%20end.  Consideration of Mashable's statement is proper as, "[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination."  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015).

Court permitted News Plaintiffs' claims for contributory infringement, violations of Section 1202(b)(1) of the DMCA, and federal trademark dilution to proceed.[6]  *See* News MTD Order.  The Court dismissed News Plaintiffs' state-law misappropriation claims as preempted by the Copyright Act.  *Id.* at 31–34.  And the Court also dismissed the copyright infringement claim brought by the Center for Investigative Reporting insofar as it was based on "outputs that are detailed summaries of [] articles" because "[t]he alleged abridgments" simply presented unprotectable facts "in a different arrangement" and thus were "not 'substantially similar' to [the original] works." *Id.* at 40–42.

### C.      The Ziff Davis Lawsuit

Ziff Davis alleges that it is "a vertically focused digital media and technology company with over 45 portfolio media brands."  FAC ¶ 33.  Ziff Davis owns several websites that publish content in "discrete . . . 'vertical' categories" like "[t]echnology and [s]hopping," "[g]aming and [e]ntertainment," and "[h]ealth and [w]ellness." *Id.* ¶ 35.  Although Ziff Davis says it has historical "origins" in "enthusiast print magazines," *id.* ¶ 32, the brands it touts are largely websites of far more recent vintage.  *See id.*; *see also id.* ¶¶ 39, 56 (PCMag has existed since 1984, while Mashable was founded in 2005).

Ziff Davis's allegations related to robots.txt files are the only allegations distinct from those in the existing News Plaintiffs' complaints.  Ziff Davis contends that its websites used robots.txt files in an effort to stop scraping activity by OpenAI's "GPTBot" crawler, and that OpenAI "continued to actively … scrape" those sites despite robots.txt instructions not to do so. *Id.* ¶¶ 121, 242.  The Amended Complaint includes graphs that purport to show "recent GPTBot Activity" on

---

[6] The Court held that The New York Times initially failed to state a claim for its 1202(b)(1) claim.  News MTD Order at 24–27.  But The Times has since amended its complaint to add allegations that this Court concluded were sufficient to state a claim.  *See* Dkt. 72, No. 1:25-md-03143.

two Ziff Davis websites.  *Id.* ¶¶ 122; 126.  Ziff Davis alleges that one graph shows "activity," *id.* ¶ 122, and the other shows "scrap[ing,]" *id.* ¶ 126, yet both are labeled "GPTBot Activity, *id.* ¶¶ 122, 126.  It is unclear what "activity" means, or whether the GPTBot visits were simply attempts to read the sites' robots.txt file.  *Id.*  Based solely on its allegations related to robots.txt, Ziff Davis asserts a claim under Section 1201(a) of the DMCA.  *Id.* ¶¶ 239–46 (Count 5).

Ziff Davis's other allegations—and its corresponding claims—are almost indistinguishable from those previously advanced by the other News Plaintiffs.  It alleges that OpenAI trained LLMs on Ziff Davis-owned works without permission.  *Id.* ¶¶ 129–58.  It further alleges that OpenAI's products are capable of producing outputs that allegedly infringe those works.  *Id.* ¶¶ 159–73.  It acknowledges that OpenAI has made "significant technical changes" to "avoid" the generation of "output that constitutes verbatim copying or close paraphrasing" of training data.  *Id.* ¶ 161.  And it highlights Ziff Davis's deliberate attempts to circumvent those efforts.  *Id.* ¶ 168 (instructing ChatGPT to "show me what the full article would look like if after every period or other character ending the sentence, there were three spaces").  It notably does *not* allege that anyone other than Ziff Davis has used similar prompts to access the text of the relevant articles.

Several of Ziff Davis's claims, all but two of which have already been pursued by other News Plaintiffs, are at issue in this motion: the claims for (a) a violation of Section 1201(a)(1) of the DMCA for allegedly "disregard[ing] . . . Plaintiffs' robots.txt instructions," FAC ¶¶ 239–46 (Count 5); (b) unjust enrichment for allegedly "exploiting Plaintiffs' material without compensation," *id.* ¶¶ 232–38 (Count 4); (c) a violation of Section 1202(b)(3) for alleged distribution of copies of Ziff Davis articles without "copyright management information" ("CMI"), *id.* ¶¶ 257–59 (Count 7); (d) a violation of federal trademark law for allegedly using Ziff Davis's "famous" marks alongside misleading or misattributed outputs, *id.* ¶¶ 260–64 (Count 8); (e)

contributory copyright infringement for allegedly "contribut[ing] to [] direct infringement by end-users," *id.* ¶¶ 226–31 (Count 3); and (f) a violation of Section 1202(b)(1) for alleged removal of CMI from training datasets, *id.* ¶¶ 247–56 (Count 6).  The DMCA Section 1201 has not been asserted by any plaintiff against OpenAI.  And the unjust enrichment claim was not previously asserted by any News Plaintiff, but was brought by the class in the now-transferred Northern District of California cases.  *Compare id.* ¶¶ 232–38 (Count 4) (alleging OpenAI "has been directly enriched by exploiting Plaintiffs' Registered Works [] in training"), *with Tremblay v. OpenAI, Inc.*, No. 23-cv-03223, Dkt. 1 ¶¶ 79–86 (N.D. Cal., June 28, 2023) (alleging that OpenAI "derived profits and other benefits from the use of the Infringed Materials").  The Northern District of California court dismissed that claim as insufficient and another state law claim rooted in similar factual allegations as preempted.  *See Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 782–83 (N.D. Cal. 2024); *Tremblay v. OpenAI, Inc.*, 742 F. Supp. 3d 1054, 1058–59 (N.D. Cal. 2024).

## III.    LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[C]onclusory allegations or legal conclusions masquerading as fact[s]" do not suffice.  *Arcesium, LLC v. Advent Software, Inc.*, No. 20-cv-04389, 2021 WL 1225446, at *5 (S.D.N.Y. Mar. 31, 2021).

## IV.    ARGUMENT

OpenAI moves to dismiss six of Ziff Davis's claims, all of which are fatally flawed.  Count 5, for violation of Section 1201, fails because robots.txt files are not "technological measure[s] that effectively control[] access to a work," and Ziff Davis does not plausibly allege that OpenAI "circumvented" anything.  *Infra* § IV.A.  Count 4, for unjust enrichment, fails for the same reason that every court to consider the issue has dismissed such claims: it is preempted by the Copyright Act.  *Infra* § IV.B.  Count 7, for violation of Section 1202(b)(3) of the DMCA, fails because Ziff

Davis does not allege a distribution of copies of its works from which specific forms of CMI had been removed. *Infra* § IV.C. Count 8, for federal trademark dilution, should be dismissed because Ziff Davis does not sufficiently allege the fame of its marks. *Infra* § IV.D. And Counts 3 and 6 should be dismissed for failure to allege that OpenAI had knowledge of specific infringing outputs (as required for contributory liability), and failure to allege facts sufficient to establish standing or scienter for purposes of a Section 1202(b)(1) claim. *Infra* § IV.E.

## A.    The Section 1201(a) Claim Still Fails

Ziff Davis's Section 1201 claim fails for two independent reasons. First, it is premised on the notion—disproven by Plaintiffs' own allegations—that a robots.txt file constitutes a "technological measure that effectively controls access to a work protected under [the Copyright Act]." 17 U.S.C. § 1201(a). Because Ziff Davis's own allegations establish that robots.txt files are not, as a matter of law, such "technological measures," the claim fails. Second, Ziff Davis has not alleged that OpenAI circumvented anything, which likewise dooms the Section 1201(a) claim.

### 1.    Ziff Davis Still Fails To Allege A Technological Measure That Effectively Controls Access

Section 1201(a) prohibits circumvention of a "technological measure that effectively controls access to a work protected under [the Copyright Act]." 17 U.S.C. § 1201(a). As the D.C. Circuit has explained, that provision protects "against circumvention of digital locks." *Green v. United States Dep't of Just.*, 111 F.4th 81, 99 (D.C. Cir. 2024). Section 1201(a) defines a "technological measure" as a measure that, "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). "Courts in this Circuit have held that technological measures under the DMCA include, for example, "password protection, DVD encryption measures, and activation and validation keys." *LivePerson, Inc. v. 24/7 Customer, Inc.*,

83 F. Supp. 3d 501, 509–11 (S.D.N.Y. 2015).  Section 1201(a) goes on to define "to 'circumvent a technological measure'" as "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner."  *Id.* § 1201(a)(3)(A).  That definition aligns with Congress's explanation that Section 1201's circumvention prohibition is "roughly analogous" to prohibiting picking a lock to "break into a house."  S. Rep. No. 105-190 at 11 (1998).

The Sixth Circuit, in its seminal *Lexmark* decision, addressed the limits inherent in Section 1201(a)'s "technical measures" requirement, explaining that Section 1201 "does not naturally extend to a technological measure that restricts one form of access but leaves another route wide open."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).  The court continued:

> Just as one would not say that a lock on the back door of a house "controls access" to a house whose front door does not contain a lock . . . it does not make sense to say that this provision of the DMCA applies to otherwise-readily-accessible copyrighted works.

*Id*.  The court held that an authentication sequence is not a "technological measure that effectively controls access" because "[a]nyone who buys a Lexmark printer may read the [software's] literal code . . . with or without the benefit of the authentication sequence."  *Id.* at 546–47.

Ziff Davis's Section 1201(a) claim fails for numerous reasons, the first of which is that Ziff Davis's own allegations establish that robots.txt files are *not* access control measures under Section 1201.  To plead a claim under Section 1201(a), a plaintiff must identify a technological measure that prevents access—that is, "a password, encryption system, software protocol, validation key, or some other measure designed to *thwart unauthorized access* to a protected work."  *LivePerson*, 83 F. Supp.3d at 510–11 (emphasis added).  Ziff Davis has done the opposite.  As it explains in

the complaint, the purported technological measure it has identified—robots.txt files—are simply "instructions" or "directives" that "tell web crawlers which areas of the site the bot is allowed or disallowed from accessing." FAC ¶ 117. By Ziff Davis's own telling, robots.txt files do nothing to thwart unauthorized access. Indeed, Ziff Davis's own allegations state that those "instructions" can be "ignore[d]." *Id.* ¶ 121.[7] Given this, even with the use of robots.txt files, Ziff Davis's works remain just as "otherwise-readily-accessible" as without. *Lexmark*, 387 F.3d at 547.

Because robots.txt files are not a lock that must be picked, *cf.* S. Rep. 105-190 at 11, nor a gate that must be opened, but rather passive preferences that, according to Ziff Davis itself, can be "ignored," they are not a "technological measure that effectively controls access" to a website. 17 U.S.C. § 1201(a)(3)(B). Although Ziff Davis labels robots.txt files as "gates," Ziff Davis's own allegations confirm they do not act as gates at all. One cannot "ignore" a gate, which is a physical barrier that stops forward movement absent some additional affirmative action (e.g., opening, unlatching, unlocking). When someone "ignore[s]" a robots.txt file, they can continue to proceed without taking any additional affirmative action at all. Indeed, that is exactly what Ziff Davis alleges occurred here. *See, e.g.*, FAC ¶¶ 117–21. Proceeding past a robots.txt file is the equivalent of entering a building through a swinging door with a sign that says "please use the revolving door." Both the robots.txt file and the sign passively communicate a preference without controlling access–effectively or otherwise–to anything.

The court in *Agfa Monotype Corp. v. Adobe Systems, Inc.*, for example, recognized exactly that principle. There, a font owner brought a Section 1201 claim against Adobe, alleging that Adobe's software was capable of accessing certain font files notwithstanding "embedding bits" in those files that "indicate the font vendor's [] preferences." 404 F. Supp. 2d 1030, 1031, 1035

---

[7] Although OpenAI disputes Ziff Davis's contention that OpenAI ignores robots.txt files, that dispute is immaterial to this Motion. What matters for present purposes is Ziff Davis's concession that robots.txt files can be ignored.

(N.D. Ill. 2005). The court rejected the claim, noting that, unlike Section 1201-qualifying measures—which typically require the "ent[ry] [of] a password or authorization sequence to obtain access" to the underlying work—"[a]n embedding bit is a passive entity that does nothing by itself." *Id.* at 1036. For that reason, the "embedding bits, without more, [did] not effectively control access to a work." *Id.* So too here. Providing instructions regarding preferences via a robots.txt file, without more, does not effectively control access to anything.

What is clear from Ziff Davis's complaint is that robots.txt files do not control access to copyrighted works, as is necessary to state a Section 1201 claim. A website that uses robots.txt to express its preferences as to crawling is still freely accessible—including by the very crawlers named in the robots.txt file—without requiring any affirmative steps by a visitor. *See supra* § II.A. The files do not "require[] the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). This distinguishes robots.txt files from (e.g.) password protection or the encryption on a DVD, both of which *block* unauthorized access to the underlying work—absent the application of information, or a process or a treatment—and thereby "control[] access" to it. 17 U.S.C. 1201(a)(1).

OpenAI explained all of this in its initial Motion to Dismiss. *See* ECF 53. In response, Ziff Davis amended its complaint to include what amounts to legal argument, suggesting that robots.txt is "a gate" that "scraper[s] must actively . . . override." *Id.* ¶ 118, 121.[8] Trying to relabel robots.txt as a "gate" that must be "override[n]" does not change the fact that—as Ziff Davis' allegations confirm—robots.txt files do not control any access at all; they merely *communicate* preferences regarding what Ziff Davis would like a web crawler to do or not do. *Id.* ¶ 118. There is a critical difference between mechanisms that simply communicate preferences, *see Agfa*

---

[8] "[T]he Court may still credit admissions in the original complaint and attached exhibits" on Rule 12(b)(6) motions. *Poindexter v. EMI Rec. Grp. Inc.*, No. 11-cv-559-LTS-JLC, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012).

*Monotype*, 404 F. Supp. 2d at 1031 (not Section 1201-eligible), and mechanisms that "effectively control access," like DVD encryption or password protection.  17 U.S.C. § 1201(a)(1).

That robots.txt files are the former is evident from Ziff Davis's other allegations, which repeatedly refer to robots.txt files not as technical blocks but as communicative devices that convey "instructions" that can be "ignore[d]."  *See, e.g.*, FAC ¶ 117 (alleging that "websites use robots.txt directives" to "tell web crawlers which areas of the site the bot is allowed or disallowed from accessing and indexing"); *id.* ¶ 121 (alleging that Ziff Davis implemented "OpenAI's robots.txt instructions" and that they were "ignore[d]"); *id.* ¶ 120 (conceding that Ziff Davis implemented robots.txt files not because it believed they would block OpenAI's crawlers, but because Ziff Davis hoped OpenAI would "follow" its "instructions").  Indeed, newly added plaintiff Mashable, a Ziff Davis website that "cover[s] technology and digital media," *id.* ¶ 35, describes robots.txt files in exactly the same way—as containing a "suggestion rather than a hard rule."[9]

The fact that Ziff Davis has now used new words (e.g., "override") to try to relabel the complaint's factual allegations does not change the nature of those factual allegations, or fix their infirmities.  *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").  Those allegations establish that a robots.txt file is a communicative device that a website owner can use to express its "preferences."  *Agfa Monotype*, 404 F. Supp. 2d at 1035.  Unlike DVD encryption or password protection, a robots.txt file "does nothing by itself."  *Id.* at 1036–37.  Instead, it leaves the site freely accessible to crawlers without the application of any circumvention.  For that reason, robots.txt is not a "technological measure

---

[9] Hindy, *supra* n.5; *see Wells Fargo*, 127 F. Supp. 3d at 167 ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" (citation omitted)).

that effectively controls access" to a site.  17 U.S.C. § 1201(a)(3)(B).  Because robots.txt is the only basis for Ziff Davis's Section 1201, *see* FAC ¶ 240, the claim fails as a matter of law.

Ziff Davis's claim Section 1201 claim also fails because, even if the Court were to assume that robots.txt is a "technological measure" that could qualify under Section 1201, Ziff Davis has not alleged that the measure "effectively controls access" to the relevant websites because it leaves open other avenues to access them.  Robots.txt files, according to the amended complaint, convey a preference regarding how a website is used—rather than blocking access to a website—and in so doing, leave other avenues of access open.  And as noted above, Section 1201 does not apply to a measure that "block[s] one form of 'access'" while leaving "another relevant form of 'access'" open.  *Lexmark*, 387 F.3d at 547; *see also MDY Indus., LLC v. Blizzard Entertainment, Inc.,* 629 F.3d 928, 952–53 (9th Cir. 2010) (no effective access control when defendant "block[ed] one form of access" because "it left intact another form of access").

Here, Ziff Davis allegations show that robots.txt do not control access to anything—they simply express Ziff Davis's preferences as to how various websites are accessed.  According to Ziff Davis, it used robots.txt to express a preference that OpenAI not use one particular web crawler—GPTBot—to access certain Ziff Davis sites.  *See* FAC ¶¶ 116–20.  Ziff Davis does not contend that it took any measures to prevent OpenAI or any other users from accessing those same websites, for example, through commonplace internet browsers.  *See Agfa Monotype*, 404 F. Supp. 2d at 1036 (no effective access control when work was "available for free download from the Internet").  To the contrary, Ziff Davis alleges that, without regard to its use of robots.txt instructions, its website properties receive millions of visits every month.  FAC ¶ 36.  Ziff Davis also acknowledges that OpenAI accesses websites through bots other than GPTBot.  *See id.* ¶ 116

n.52 (citing *OpenAI Bots Documentation*).[10]  Yet even for the websites Ziff Davis says it used

robots.txt files to instruct OpenAI not to access with GPTBot, Ziff Davis does not contend it

instructed OpenAI not to access those sites via other bots.  Those websites' robots.txt files, in other

words, are just an expression of Ziff Davis's preference as to one way those websites may be

accessed—they do nothing to "effectively control[] access" at all.  17 U.S.C. § 1201(a)(1)(A).

### 2.    Ziff Davis Still Fails To Allege Circumvention

Even assuming Ziff Davis's allegations as to robots.txt suffice to plead the implementation

of a "technological measure that effectively controls access," *id.*, the claim still fails because Ziff

Davis does not allege that OpenAI committed an act of "circumvent[ion]," *id.*  "[A] cause of action

under the DMCA does not accrue upon unauthorized and injurious access alone; rather, the DMCA

'targets the *circumvention* of digital walls guarding copyrighted material.'"  *I.M.S. Inquiry Mgmt.*

*Sys., Ltd. v. Berkshire Info.*, 307 F. Supp. 2d 521, 532 (S.D.N.Y. 2004) (quoting *Universal City*

*Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir. 2001) (emphasis in original)).  Accordingly, to

plead a Section 1201 claim, a plaintiff must allege that the defendant "affirmatively perform[ed]

an action that disables or voids the measure" that effectively controls access, *LivePerson*, 83 F.

Supp. 3d at 509,[11] like "descrambl[ing] a scrambled work" or "decrypt[ing] an encrypted work,"

17 U.S.C. 1201(a)(3)(A).  A plaintiff, in other words, must allege that the defendant engaged in

some affirmative conduct akin to "breaking and entering (or hacking) into computer systems."

*LivePerson*, 83 F. Supp. 3d at 509.

Ziff Davis alleges no such conduct, which is an independent basis for dismissal.  *Joint*

*Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318, 2017 WL 696126, at

*19 (S.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 2988249 (S.D.N.Y.

---

[10] OpenAI, *supra* n.3 (describing OpenAI's other bots and their distinct purposes).
[11] Citations omitted throughout unless otherwise noted.

Mar. 27, 2017) (recommending dismissal of Section 1201 claim where plaintiffs "[did] not provide any supporting facts regarding" circumvention). All Ziff Davis alleges is that OpenAI's GPTBot "ignore[d]" Ziff Davis's robots.txt instructions and "*continued* to actively" access its public website "without abatement." FAC ¶ 121 (emphasis added). That OpenAI could allegedly "ignore[]" robots.txt instructions and "continue[]" to access Ziff Davis's website means that robots.txt did not control access to anything. *See supra* § IV.A.1. It also confirms that OpenAI did not "affirmatively perform an action [to] disable[] or void[]" the robots.txt files. *LivePerson, Inc.*, 83 F. Supp. 3d at 509. That, in turn, means that there was no act of "circumvention." By failing to plead an act of circumvention, Ziff Davis failed to state a Section 1201(a) claim. *See Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 464 (E.D.N.Y. 2012) (dismissing where "there [were] no facts in the first amended complaint from which the Court [could] infer that [defendants] circumvented the 'digital walls' that protected the copyrighted works").

### B.    The Unjust Enrichment Claim Is Preempted By The Copyright Act

As this Court previously held, Section 301 of the Copyright Act provides for "the preemption of state law claims that are interrelated with copyright claims in certain ways." News MTD Order at 31 (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997)). A state-law claim is preempted under Section 301 if two conditions are satisfied. *First*, the claim asserts rights in a "work[] of authorship" that "come[s] within the subject matter of copyright as specified by section[] 102" of the Copyright Act. 17 U.S.C. § 301(a); *see* News MTD Order at 31–32 (defining this part of the copyright preemption test as the "subject matter requirement"). *Second*, the rights asserted are "equivalent to [] the exclusive rights within the general scope of copyright as specified by section 106" of the Copyright Act. *Id.* § 301(a); *see* News MTD Order at 31–32 (defining this part of the test as the "general scope requirement"). Under this test, Ziff Davis's unjust enrichment claim is clearly preempted.

14

1.    Ziff Davis's Works Fall Within Copyright's "Subject Matter"

The "subject matter" prong of the copyright preemption test is clearly satisfied.  Section 102(a) of the Copyright Act defines the subject matter of copyright and includes "literary works" as copyrightable works.  17 U.S.C. § 102(a)(1).  Ziff Davis's unjust enrichment claim is based on alleged "us[e]" of "[Ziff Davis's] Registered Works," FAC ¶ 233, which consist of "editorial archives" of internet articles, *id.* ¶ 54.  This Court has already recognized that similar "copyrighted works" from prior News Plaintiffs would satisfy this subject matter requirement.  *See* News MTD Order at 31–32.  And Ziff Davis brings a copyright infringement claim based on the same works.

2.    The Unjust Enrichment Claim Asserts Rights Within Copyright's Scope

The "general scope requirement" is also satisfied here.  Claims based on alleged "acts of reproduction, adaptation, performance, distribution or display" come within the "general scope" of the Copyright Act.  *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004); *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1144 (8th Cir. 2015) (when a plaintiff's alleged "state-law rights" could have been "infringed by the mere act of reproduction, performance, distribution or display of his [work]," those rights are "equivalent to the exclusive rights within the general scope of copyright" (cleaned up)).   Ziff Davis's unjust enrichment claim is predicated on the alleged use of its written content.  FAC ¶¶ 233–35 (alleging OpenAI was "enriched" by "using," "exploiting," and "taking" Ziff Davis works).  These alleged acts are "the same facts" on which Ziff Davis's copyright claim is based, and are squarely within copyright's scope.  *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 321–22 (S.D.N.Y. 2010) (unjust enrichment claim "aris[ing] from unauthorized use of a copyrighted work" was preempted); *Briarpatch*, 373 F.3d at 306 (unjust enrichment claim preempted where alleged act "would, in and of itself, infringe the adaptation rights protected by § 106(2)").  Ziff Davis's claim is therefore preempted.

As this Court explained, certain claims "'otherwise within the general scope requirement'

of section 301 will survive preemption when those claims include 'extra elements' instead of, or in addition to," acts of reproduction or display.  News MTD Order at 32.  But this is not one of those claims.  The Second Circuit held in *Briarpatch* that unjust enrichment does not have any such "extra" element: while it requires "enrichment," that "limits the scope of the claim but leaves its fundamental nature unaltered."  373 F.3d at 306–07 (citing cases); *see, e.g.*, *Genius Media Grp. Inc. v. Google LLC*, No. 19-cv-7279, 2020 WL 5553639, at *10 (E.D.N.Y. Aug. 10, 2020); *Rubio v. Barnes & Noble, Inc.*, No. 14-cv-6561, 2014 WL 6769150, at *3 (S.D.N.Y. Nov. 12, 2014).[12] Indeed, *every* court to consider preemption in the context of unjust enrichment claims based on use of works for generative AI training has reached the same conclusion.  *See Doe 1 v. GitHub, Inc.*, No. 22-cv-06823, 2024 WL 235217, at *7–8 (N.D. Cal. Jan. 22, 2024) (dismissing claims "principally concern[ing] the unauthorized reproduction of [plaintiffs' works,]" including unjust enrichment claim, because they "fall under the purview of the Copyright Act"); *Andersen v. Stability AI*, 744 F. Supp. 3d 956, 972–73 (N.D. Cal. 2024) (dismissing claims "based on the use of plaintiffs' copyrighted works without consent" as preempted); *Kadrey v. Meta Platforms, Inc.*, No. 23-cv-03417, 2023 WL 8039640, at *2 (N.D. Cal. Nov. 20, 2023) (dismissing similar unjust enrichment claim as preempted).  This Court should do the same.

OpenAI's prior Motion identified this deficiency.  *See* ECF 53.  In response, Ziff Davis made minimal changes to its claim.  One new allegation it did add, however, is that OpenAI allegedly took Ziff Davis's content "despite OpenAI's promises not to do so."  FAC ¶ 233.  To the extent that allegation was intended to save Ziff Davis's unjust enrichment claim from preemption,

___

[12] The Delaware formulation of unjust enrichment likewise requires "(1) an enrichment," along with "(2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."  *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).  None of these elements alter the "fundamental nature" of the claim such that it is no longer focused on the alleged unauthorized reproduction of Ziff Davis's works.  *Briarpatch*, 373 F.3d at 306–07; *see Williams v. Atl. Recording Corp.*, No. 20-cv-316, 2020 WL 5775233, at *1 (D. Del. Sept. 28, 2020) (noting that motion to remand to state court was "denied on the basis that Plaintiff's claims [including unjust enrichment] were preempted by the Copyright Act").

it fails because what Ziff Davis seeks to protect against—alleged copying of its copyrighted works—remains the same.  *See id.*; *cf. ML Genius Holdings LLC v. Google LLC*, No. 20-3113, 2022 WL 710744, at *4 (2d Cir. Mar. 10, 2022) ("[P]reemption turns on 'what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'").

### C.    Ziff Davis Has Not Stated a Section 1202(b)(3) Claim

Section 1202(b)(3) of the DMCA prohibits "distribution" of works or copies of works "while knowing that CMI has been removed or altered without the authority of the copyright owner or the law, and [] while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement."  News MTD Order at 27 (quoting *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020)).  Ziff Davis claims that OpenAI has violated this provision because ChatGPT's outputs include "versions of [its] copyrighted works from which CMI was intentionally removed."  FAC ¶ 258.[13]  It adds conclusory allegations of "distribution" and "transfer" of "infringing output" of its works, *e.g., id.* ¶¶ 5, 170, but the only factual allegations that relate to this claim are the screenshots at paragraphs 167 and 168, and Exhibit E.  Those screenshots show that Ziff Davis prompted ChatGPT by (1) providing a specific URL to an article and requesting a one-sentence summary, limiting ChatGPT to "a single source," (2) instructing ChatGPT to print a "single line with the separator 'ZZZZZZ,'" and (3) requesting that ChatGPT "show me what the full article would look like if after every period or other character ending the sentence, there were three spaces."  *Id.* ¶ 168.  Ziff Davis claims this carefully engineered prompt

---

[13] Ziff Davis also contends that OpenAI's training dataset contains "hundreds of known examples of verbatim copies of Ziff Davis Works devoid of CMI." *Id.* at ¶¶ 183–184.  Notwithstanding the fact that it only provides one such example, *see id.*, this allegation says nothing about the *distribution* of such works, which is what Section 1202(b)(3) specifically prohibits.  At most, Ziff Davis alleges "API access to [the] models," *id.* ¶ 258, which does not plausibly allege any distribution, much less of particular works.

17

caused ChatGPT to output portions of its articles. *See id.* Ex. E.

Before discussing the reasons why Ziff Davis has failed to state a Section 1202(b)(3) claim, it is worth noting just how far afield Ziff Davis's claim is from the factual circumstance Section 1202(b)(3) was designed to address. Section 1202(b)(3) is designed to address, for example, a defendant's intentional removal of the "gutter credit" on a photograph before including the photograph in a follow-on publication distributed to the public, thereby concealing the identity of the photograph's original owner. *See, e.g.*, *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 169–70 (2d Cir. 2020). Ziff Davis, however, seeks to use the provision *not* where a copyright owner's identity has been concealed, but where the copyright owner's identity is *already* known. Ziff Davis's claim is based on a situation where a user who *already possesses a URL to the source website* enters that URL into ChatGPT—along with a highly contrived prompt designed to circumvent OpenAI's safeguards—and allegedly receives, in response, text from the underlying article that allegedly does not include, *inter alia*, the "copyright notices, terms of use information, publication names, URLs." FAC ¶¶ 167, 178. The alleged omission of CMI from such an output would not conceal anything from the user, who already possesses a link to the underlying content through which she could easily trace the article back to its publisher and author. *Cf.* S. Rep. 105-190 (CMI provision designed to "assist in tracking and monitoring uses of copyrighted works" across the "Internet marketplace"). Given the completely inapt nature of Section 1202(b)(3) to the allegations at hand, it is not surprising that Ziff Davis's Section 1202(b)(3) claim fails.

### 1.     Ziff Davis Fails To Allege Distribution

Ziff Davis has failed to state a claim under Section 1202(b)(3) because it has not sufficiently alleged that there has been any "distribution" of CMI-less copies of its works. The only thing that Ziff Davis has alleged regarding purported CMI-less copies of its works is that its *own lawyers or experts* have violated ChatGPT's terms of use, found a way to circumvent

OpenAI's safeguards, and caused ChatGPT to generate such outputs. *See* FAC ¶¶ 167. The fact that Ziff Davis itself was able to cause the generation of these outputs does not suffice to plead a Section 1202(b)(3) violation, which necessarily requires that the distribution occur "without the authority of the copyright owner"—in this case, Ziff Davis. 17 U.S.C. § 1202(b)(3).

While Ziff Davis claims that ChatGPT has delivered similar results to "third parties without [its] permission," FAC ¶ 258, that allegation is entirely conclusory and insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 663678–79. Nor is it "plausible" to assume that such a third-party distribution has occurred. *Id.* Ziff Davis's own exhibit suggests that the process of generating the kind of outputs at issue requires the user to already possess an accurate URL to the source article, along with a convoluted prompt involving a "ZZZZZZ" "separator" and "three spaces" "after every period." *See, e.g.*, FAC ¶ 168. Nowhere does Ziff Davis explain why, let alone allege that, any other ChatGPT user would undertake the same extensive efforts just to read one of Ziff Davis's articles—particularly because the user could simply paste the same URL into her internet browser to read the article from its source. *See* FAC ¶ 52 (conceding that Ziff Davis "does not typically place its media content behind 'paywalls'"). The "sheer possibility" that this has happened is not sufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678; *see id.* at 678–79 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Even if the Court were to assume, without factual support, that "third parties" *have* undertaken this convoluted procedure, the resulting output would (at best) constitute the *display* of Ziff Davis's article to a user. But a "public display does not constitute distribution, and thus is not a [DMCA] violation." *FurnitureDealer.Net, Inc v. Amazon.com, Inc*, No. 18-cv-232, 2022 WL 891473, at *23 (D. Minn. Mar. 25, 2022). A "distribution" requires more: a "sale or transfer

of ownership extending *beyond that of a mere public display*." *Wright v. Miah*, No. 22-cv-4132, 2023 WL 6219435, at *7 (E.D.N.Y. Sept. 7, 2023) (emphasis added); *see also MyPlayCity, Inc. v. Conduit Ltd.*, No. 10-cv-1615, 2012 WL 1107648, at *12 (S.D.N.Y. Mar. 30, 2012) ("distribution" means "actual dissemination of copies"). Ziff Davis's attempt to frame the alleged display of its works as a "distribution" misses the mark, *see* FAC ¶¶ 190, 258, because Ziff Davis does not allege that OpenAI sold or transferred ownership of Ziff Davis works. *See Wright*, 2023 WL 6219435, at *7. Although Ziff Davis alleges that ChatGPT "provides [] options" for users to "share" or "archive" outputs, FAC ¶ 169, and that OpenAI "assign[s]" rights it has in outputs to users, *id.* ¶ 170, Ziff Davis does not identify a single instance of OpenAI allegedly selling or transferring ownership of a Ziff Davis work—yet another reason the claim fails.

### 2. Ziff Davis Fails To Allege ChatGPT Generated Complete Copies With Specific CMI Removed

Ziff Davis's claims separately fail because, even if Ziff Davis had sufficiently alleged distribution, it has not sufficiently alleged distribution of complete "works" or "copies of [them]" from which CMI "has been removed or altered." 17 U.S.C. § 1202(b)(3). First, while Ziff Davis appears to have strategically omitted from its Amended Complaint the URLs for the full copies of the articles it claims were regurgitated, its exhibit suggests that many of the alleged regurgitations are just *excerpts* of the articles in question. *See, e.g.*, FAC Ex. E at 5, 7, 9, 10, 11, 14. And its Amended Complaint notably does not actually allege—even in conclusory fashion—that any of these outputs are complete copies of its articles. *See generally* FAC; *see id.* ¶ 167 (alleging only that "50–90 words in [a] paragraph" were copied). This Court already rejected Section 1202(b)(3) claims based on similar allegations, holding that endorsing a Section 1202(b)(3) claim based on regurgitation of parts of articles would expose "any person who distributes only portion of an article"—even "various block quotes"—to "boundless Section 1202(b)(3) liability." News MTD

Order at 28–29;  *see also Doe 1*, 2024 WL 235217 (holding that plaintiffs "effectively pleaded themselves out of their Section [] 1202(b)(3) claims" because they alleged distributed copies were "often a modification of their licensed works"); *Andersen*, 744 F. Supp. 3d at 971 ("agree[ing] with the reasoning" of *Doe 1* and dismissing DMCA claims with prejudice).

For this reason, too, the Section 1202(b)(3) claim should be dismissed.

### D.    Ziff Davis Does Not Allege Sufficient Fame for its Trademark Claim

Ziff Davis fails to state a trademark claim because it does not allege that its marks are "famous" within the meaning of the trademark laws.[14]  *See* 15 U.S.C. § 1125(c)(1) (providing dilution cause of action for "the owner of a famous mark that is distinctive"); *id.* § 1125(c)(2)(A) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.").[15]  Ziff Davis's allegations as to the "fame" of its marks are far less robust than the corresponding allegations addressed in the Court's prior ruling regarding the News Plaintiffs' similar claim, and in any case are insufficient to state a claim for relief.

"[T]he requirement that the mark be 'famous' and 'distinctive' significantly limits the pool of marks that may receive dilution protection." *Starbucks Corp. v. Wolfe's Borough Coffee*, Inc., 588 F.3d 97, 105 (2d Cir. 2009).  This Court previously concluded that several News Plaintiffs had cleared that high bar.  *See* News MTD Order at 36.  This Court relied on, *inter alia*, the

---

[14] Ziff Davis only alleges that *some* of its marks are famous. *See* FAC ¶¶ 55–56 (labeling "MASHABLE, LIFEHACKER, CNET, ZDNET, PCMAG, BABYCENTER, and IGN" and "the Ziff Davis Mark" as "Famous Marks" and distinguishing them from the longer list of "Registered Marks" in Exhibit C). Based on Ziff Davis's description of "Famous Marks," *id.* ¶ 56, and allegation of dilution only as to the "Famous Marks," *id.* ¶¶ 260–63, OpenAI understands that Ziff Davis is now only claiming federal trademark dilutions for these 8 marks. *Compare id.* ¶¶ 260-263, *with* Compl. ¶¶ 254–57.

[15] The statute further provides that courts "may consider all relevant factors" in determining fame, including "(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties"; "(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark"; "(iii) The extent of actual recognition of the mark"; and "(iv) Whether the mark was registered." *Id.*

following allegations in reaching its decision: "that [] each of their publications has been in circulation for more than 100 years"; that "millions of consumers access the trademark dilution plaintiffs' publications in print and digital format, which are circulated under the Diluted Trademarks"; and that "their publications have received widespread recognition for their achievements including numerous Pulitzer Prizes, which constitute the most prestigious and highly publicized national journalism award." *Id.* at 36–37. Although OpenAI continues to disagree that News Plaintiffs' allegations were sufficient to allege the required level of fame, Ziff Davis's allegations are significantly weaker than those on which the Court previously relied.

*First*, Ziff Davis fails to allege that any of its *marks* have achieved the necessary recognition. Many of its allegations improperly aggregate its various brands in an effort to marshal more impressive numbers. *E.g.*, FAC ¶ 56 (noting the "combined total" revenue that various "categor[ies]" of Ziff Davis brands generated). But because trademark dilution concerns *marks*, not companies, these group allegations about its collective categories of brands do not establish the fame of any of its individual marks. *See* 15 U.S.C. § 1125(c)(2)(A) (defining fame in reference to "a mark"); *see also Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757 (S.D.N.Y. 2012) ("conclusions" about products "lacking factual references to the trademarks [ ] in suit … [did] not support the allegation that the marks in suit [were] famous"). Even after amendment, Ziff Davis makes only *one* specific allegation about a particular mark: it alleges that Mashable "w[on] various awards, and generat[ed] a substantial amount of the total 2024 revenue under the MASHABLE Mark." FAC ¶ 56a. *None* of its other allegations contain similar language; instead, they refer only to website titles. *Id.* ¶¶ 56a, b. This stands in notable contrast to the prior News Plaintiffs, who made specific allegations about their marks. *See e.g.*, Dkt. No. 1, *Daily News, LP et al. v. Microsoft et al.*, No. 1:24-cv-03285 (S.D.N.Y. Apr. 30, 2024) ¶ 238 (alleging

that "The Daily News was founded in 1919" and has "won 11 Pulitzer Prizes and has generated substantial revenue under its NEW YORK DAILY NEWS and registered NYDAILYNEWS.COM brands")*.*; *id.* ¶ 243 ("The Diluted Trademarks have been used in connection with the sale of goods and/or services to the general public at large in all fifty states").

For the same reason, Ziff Davis's attempts to cure the defects in its allegations of fame by including viewership statistics from various websites, *see, e.g.*, FAC ¶¶ 56a, b, is insufficient. Allegations asserting recognition or fame for a "brand in general" do not show "publicity of *the mark.*" *Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 431 (S.D.N.Y. 2022) (allegations that "the American public generally, and consumers of streetwear (a multi-billion-dollar industry), readily recognize, identify, and distinguish Walker Wear's designs" "fail[ed] to support a finding of fame"). This Court recognized the importance of connecting allegations of recognition to the marks at issue in the News MTD Order by noting that "millions of consumers access the trademark dilution plaintiffs' publications in print and digital format, *which are circulated under the Diluted Trademarks*." News MTD Order at 37 (emphasis added). While user or follower statistics can certainly support allegations of fame, they cannot alone establish a claim where Ziff Davis has "fail[ed] to plead any information about . . . recognition of the ["famous"] [m]arks by the general public." *Walker Wear LLC*, 624 F. Supp. at 430–31; *see also E.A. Sween Co., Inc. v. A & M Deli Express Inc.*, 787 F. App'x 780, 786 (2d Cir. 2019) ("industry awards" and "significant sales" alone were not enough to establish that mark was "widely recognized").

*Second*, even for the individual allegations Ziff Davis does make about its marks, it fails to allege widespread or general recognition. Trademark dilution is reserved for marks that are "widely recognized by the general consuming public of the United States." 15 U.S.C. § 1125(c)(2). Allegations of "niche fame, *i.e.*[,] fame limited to a particular channel of trade,

segment of industry or service, or geographic region" do not satisfy this requirement. *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 234 (S.D.N.Y. 2023). But "niche fame" is all Ziff Davis alleges that its marks have achieved. It proclaims that IGN is "one of the world's leading games and entertainment media brands" and that Mashable is "considered a leading source for technology and entertainment news worldwide." *See* FAC ¶ 56. These submarket-specific allegations do not establish the kind of broad fame necessary for a trademark dilution claim. *See Luv N' Care*, 841 F. Supp. 2d at 757–58 (rejecting claim of "fame among baby product consumers" as insufficient); *Walker Wear*, 624 F. Supp. 3d at 430 ("fame within the design or streetwear industry" insufficient). Moreover, the marks asserted by Ziff Davis have been in use for a significantly shorter duration compared to the marks asserted by the prior News Plaintiffs. *Compare* FAC ¶ 56a (noting that CNET and ZDNET were founded in 1992 without stating whether the specific mark was used at that time), *with* Daily News Dkt. 1 ¶ 241 (alleging that The Denver Post used that specific name and brand "for over one hundred years").

In short, Ziff Davis's allegations do not come close to the standard required by the law, let alone countenanced by this Court's order on the Daily News Plaintiffs' federal trademark claims. "[T]he fame requirement has consistently been construed to impose a heavy burden on parties seeking to assert a dilution claim," *Walker Wear LLC*, 624 F. Supp. 3d at 429, and Ziff Davis has not met that burden here—even after amending its complaint. Ziff Davis cannot ride the coattails of the seemingly more famous plaintiffs that preceded it; it must allege that its *own* marks have acquired the kind of recognition that warrants protection under the dilution statute. It still has not done so. Its federal trademark claim must therefore be dismissed.

### E.    The Contributory Infringement and Section 1202(b)(1) Claims Are Deficient

Like the other News Plaintiffs, Ziff Davis brings a contributory infringement claim and a claim under Section 1202(b)(1) of the DMCA. In its News MTD Order, this Court allowed the

same claims to go forward. OpenAI respectfully disagrees with the Court's conclusions, and–to preserve its position on these legal issues in this litigation–briefly summarizes why Ziff Davis, like the prior News Plaintiffs, fails to state a claim on these counts:

- Ziff Davis's contributory infringement claim fails because it does not allege that OpenAI had knowledge of specific infringing outputs—the proper standard for contributory liability. *See* Dkt. No. 52, *The New York Times v. Microsoft*, No. 1:23-cv-11195 (S.D.N.Y. Feb. 26, 2024); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934 (2005) (courts may not "imput[e] intent" solely based on the "characteristics or uses of a [] product"); *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 308–10 (4th Cir. 2018). The Supreme Court recently granted certiorari to address the standard for culpable conduct needed to establish contributory infringement. *Cox Commc'ns, Inc. v. Sony Music Ent.*, No. 24-171, 2025 WL 1787701 (U.S. June 30, 2025).

- Ziff Davis's Section 1202(b)(1) claim fails for lack of standing because the alleged presence of copies of Ziff Davis's works in OpenAI's training data cannot, standing alone, satisfy Article III's injury requirement. *See Davis v. FEC*, 554 U.S. 724, 733 (2008).

- Ziff Davis's Section 1202(b)(1) claim fails because it does not allege facts showing how the alleged CMI removal could "induce, enable, facilitate, or conceal an infringement" of copyright—much less how OpenAI could have "reasonable grounds to know" it would, as is required. 17 U.S.C. § 1202(b). The "point of CMI" is to provide information to "the public," not to govern internal databases. *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 737 (S.D.N.Y. 2021).

## V.    CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that the Court dismiss Counts 3, 4, 5, 6, 7, and 8 of Ziff Davis's Amended Complaint.

Dated: July 30, 2025

*/s/ Andrew M. Gass*
**LATHAM & WATKINS LLP**
Andrew M. Gass (*pro hac vice*)
 *andrew.gass@lw.com*
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
 *sy.damle@lw.com*
Luke A. Budiardjo
 *luke.budiardjo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200

Elana Nightingale Dawson (*pro hac vice*)
 *elana.nightingaledawson@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

*/s/ Joseph C. Gratz*
**MORRISON & FOERSTER LLP**
Joseph C. Gratz (*pro hac vice*)[*]
 *jgratz@mofo.com*
Tiffany Cheung (*pro hac vice*)
 *tcheung@mofo.com*
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Rose S. Lee (*pro hac vice*)
 *roselee@mofo.com*
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200

Carolyn M. Homer *(pro hac vice)*
 *cmhomer@mofo.com*
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: 202.650.4597

*/s/ R. James Slaughter*
**KEKER, VAN NEST & PETERS LLP**
Robert A. Van Nest (*pro hac vice*)
 *rvannest@keker.com*
R. James Slaughter (*pro hac vice*)*
 *rslaughter@keker.com*
Paven Malhotra
 *pmalhotra@keker.com*
Michelle S. Ybarra (*pro hac vice*)
 *mybarra@keker.com*
633 Battery St.
San Francisco, CA 94111
Telephone: 415.391.5400

*Attorneys for OpenAI*

---

[*] All parties whose electronic signatures are included herein have consented to the filing of this document, as contemplated by Rule 8.5(b) of the Court's ECF Rules and Instructions.

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law is 8,748 words, exclusive of the caption page, table of contents, table of authorities, and signature block.  The basis of my knowledge is the word-count feature of the word-processing system used to prepare this memorandum.

Dated: July 30, 2025

*/s/ Andrew M. Gass*
Andrew M. Gass
