# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZIFF DAVIS, INC., ZIFF DAVIS, LLC, IGN ENTERTAINMENT, INC., EVERYDAY HEALTH MEDIA, LLC, MASHABLE, INC., and CNET MEDIA, INC.,<br><br>                Plaintiffs,<br>        v.<br>OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO, LLC, OPENAI GLOBAL LLC, OAI CORPORATION, and OPENAI HOLDINGS, LLC,<br><br>                Defendants. | No. 25-cv-04315-SHS-OTW<br><br>**ZIFF DAVIS'S RULE 72(A) OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFFS' <u>MOTION TO COMPEL</u>** |

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ................................................................................................ 4

**I.     BACKGROUND** ........................................................................................ 8

   **A.   Ziff Davis's Claims and Factual Allegations** ................................. 8

   **B.   Document Discovery in the Ziff Davis Case** ................................... 9

   **C.   The Instant Motion to Compel** ....................................................... 11

**II.    LEGAL STANDARD** ............................................................................... 11

**III.   ARGUMENT** ........................................................................................... 13

   **A.   The Order is Clearly Erroneous and is Based on a Misapprehension of Fact** .......... 13

   **B.   The Order is Contrary to Applicable Law and OpenAI Has Not Demonstrated Undue Burden, Lack of Relevance or that the Requested Discovery is Disproportionate to the Needs of the Case** ................................... 15

**CONCLUSION** ............................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 348 (2d Cir. 2003) ...................................................................................................................................... 12

*Jiggets v. Loc. 32BJ SEIU*, No. 09 CIV. 7243, 2010 WL 1558561 (S.D.N.Y. Apr. 19, 2010)...... 12

*Jiggetts v. Loc. 32BJ SEIU*, 488 F. App'x 508 (2d Cir. 2012) ....................................................... 12

*LoCurto v. AT&T Mobility Servs. LLC*, No. 13 Civ 4303, 2017 WL 11826511, at *2 (S.D.N.Y. July 17, 2017)................................................................................................................... 12

*Roche Freedman LLP v. Cyrulnik*, No. 21 Civ. 1746, 2022 WL 17157670, at *1 (S.D.N.Y. Nov. 22, 2022) .......................................................................................................................... 13

*Safe Step Walk-In Tub Co. v. CKH Indus., Inc.*, No. 15 Civ. 7543, 2023 WL 1383678 (S.D.N.Y. Jan. 31, 2023) ........................................................................................................................ 12

*Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)................................ 12

*United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)........................................ 12

*Weiss v. La Suisse*, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001)..................................................... 12

*Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) ........................................... 13

**Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................................................................. 13

Fed. R. Civ. P. 72(b)(3) ................................................................................................................. 12

Rule 72(a) of the Federal Rules of Civil ........................................................................... 6, 12, 19

Plaintiffs Ziff Davis, Inc., Ziff Davis, LLC, IGN Entertainment, Inc., Everyday Health Media, LLC, Mashable, Inc., and CNET Media, Inc. (together, "Ziff Davis" or "Plaintiffs"), respectfully submit this Memorandum of Law in support of Ziff Davis's Rule 72(a) Objections to the Magistrate Judge's Order Denying Plaintiff's Motion to Compel.

## INTRODUCTION

Ziff Davis respectfully objects to Magistrate Judge Wang's Order denying its motion to compel (Dkt. 776) ("Motion to Compel") OpenAI to produce documents post-dating the arbitrary cut-off date that OpenAI unilaterally applied—without telling Ziff Davis—to its production of custodial documents. Dkt. 910 (the "Order"). The Order states:

> Ziff Davis's motion seeking to require OpenAI to update its production through August 8, 2025, (ECF Nos. 776, 778) is DENIED without prejudice until after Judge Stein rules on OpenAI's pending motion to stay certain claims, models, and products in the Ziff Davis complaint (ECF 134). The parties are directed to meet and confer on limited post-July 2024 categories for discovery.

The Order is clearly erroneous under Rule 72(a), as it mistakenly conflates two issues that are not directly related: (1) the fact discovery that OpenAI would have to produce if its pending motion for a stay is denied (Dkt. 134) ("Motion to Stay"); and (2) the entirely distinct discovery Ziff Davis seeks on the instant motion to compel (Dkts. 776, 778) ("Motion to Compel"). As Ziff Davis made clear at oral argument in connection with its Motion to Compel, it does not seek to compel OpenAI to produce documents after July 2024 as to models that are the subject of the stay motion. Declaration of Lacy H. Koonce, dated Dec. 12, 2025 ("Koonce Decl."), Ex. A, Excerpts of Dec. 4, 2025 Hearing Transcript, Tr. 199:25-200:10 ("this motion was never intended to be directed towards the new models. That is not what we were seeking here"). Rather, it seeks to compel OpenAI to produce responsive custodial documents that are critical to Ziff Davis's case concerning matters that are at issue in this litigation even if OpenAI's Motion to Stay were to be

granted in full. In effect, OpenAI is attempting to use its Motion to Stay to refuse to produce clearly relevant discovery on claims and models that are indisputably part of the case, simply because there may be some overlap with discovery on claims and models being addressed in the Motion to Stay.

The Magistrate Judge's apparent confusion on this point is understandable in light of the inconsistent and contradictory positions taken by OpenAI. OpenAI expressly argued that the discovery Ziff Davis seeks on this motion relates to newer AI large language models that are subject to the Motion to Stay, but as noted this is just not true. In the present motion, Ziff Davis is only seeking more recent documents on the models that are already at issue in this case. Moreover, OpenAI's argument makes no sense as newer-model discovery would primarily be training data, source code, and output logs, rather than custodial documents. Rather, in this motion Ziff Davis primarily seeks communications and documents generated by OpenAI relating to Ziff Davis, its websites and its content during the relevant time period. To further confuse matters, OpenAI argued to this Court in support of its Motion to Stay that the custodians for the newer models would be entirely different from those for other aspects of fact discovery (Dkt. 285 at ¶ 14 (OpenAI stating that discovery into the new models "would implicate additional custodians, collections, and search terms as many of them were developed by separate teams")), but argued to Magistrate Judge Wang in opposition to the Motion to Compel that the custodians overlap and that it should not be compelled to produce discovery in the later date range from existing custodians given the pendency of the Motion to Stay. Koonce Decl., Ex. A (Tr.:198:8-22) ("Our principle argument before Judge Stein was, you shouldn't do this in large part because we're going to have to produce a year of docs as to all of our custodians and all of these search terms that otherwise isn't relevant to the case

cause all of the models that are at issue in the case came out earlier. So this is exactly the issue before Judge Stein.").

The Order is contrary to law under Rule 72(a) because it further misapprehends the fundamental and severe prejudice to Ziff Davis's ability to present its case on the merits that will be caused by OpenAI's failure to produce virtually any documents dated after July 10, 2024, given that Ziff Davis asserts critical fact allegations during that timeframe, and that OpenAI's arguments as to burden, relevance and proportionality are entirely unsupported and baseless (arguments that the Order does not cite). The unfairness of the Order is exacerbated by the fact that, at the same time OpenAI has refused to search for or produce any documents dated after July 10, 2024, OpenAI has, egregiously, demanded production of multiple categories of documents from Ziff Davis covering the post-July 2024 timeframe, and Ziff Davis accordingly has conducted a full custodial collection and production of documents through August 8, 2025. Allowing OpenAI to benefit from discovery during the entirety of the relevant period while denying Ziff Davis access to documents during that same period is highly prejudicial to Ziff Davis's ability to effectively prosecute its case, and if not remedied may well result in Ziff Davis having to serve a Rule 56(d) affidavit if OpenAI moves against Ziff Davis's claims at summary judgment. Indeed, OpenAI is already benefiting from the Ziff Davis discovery covering July 2024 through August 2025; it has expressly leveraged documents from that period to argue for additional Ziff Davis custodians in its own motion to compel. Dkt. 248.

At the hearing on the motion to compel leading to this Order, the Magistrate Judge expressed concern with adherence to the overall MDL case schedule. While this concern is understandable, it cannot override a plaintiff's ability to make the case it is entitled to present, nor sanction a defendant's wholesale disregard of its discovery obligations. As Ziff Davis explained at

oral argument, it has offered to work with OpenAI to narrow the post-July-2024 discovery by limiting the number of applicable custodians and search terms. And if OpenAI truly cannot meet the current discovery deadlines as a result of its improper, unilateral decision to avoid its discovery obligations for six months, there are available mechanisms for a court to manage discovery, including putting certain aspects on separate tracks as needed. Applying such a mechanism or applying such limitations would be a more appropriate result than entirely depriving Ziff Davis of the fact discovery to which it is entitled. Moreover, as Ziff Davis has explained separately, *see* letter of Dec. 12, 2025 (docket number pending), OpenAI is now seeking ***22 depositions of Ziff Davis witnesses*** over the next few months, putting further pressure on an already difficult schedule.

This Court should sustain Ziff Davis's objections because the Order is clearly erroneous and contrary to law. The simple fact is that Ziff Davis is entitled to, and must be able to obtain, fact discovery commensurate with the scope of its claims. The Order incorrectly tied the denial of all discovery after July 2024 to the pending stay motion, which only relates to certain aspects of the case. To the extent the Magistrate Judge based the Order on arguments by OpenAI as to burden, relevance and proportionality, this is unstated and in any event those arguments are do not withstand scrutiny. Although its Motion to Compel was denied without prejudice, Ziff Davis urgently seeks Your Honor's intervention because by the time Ziff Davis could renew its motion (after the stay decision and in connection with the January discovery conference), there will be only a handful of weeks left in the fact discovery.

## I.      BACKGROUND

### A.      <u>Ziff Davis's Claims and Factual Allegations</u>

Ziff Davis filed its Complaint on April 24, 2025, three weeks after the instant MDL was formed, and the Ziff Davis action was consolidated into the MDL prior to the initial case conference. Dkt. 1. Ziff Davis amended its pleading as of right on July 2, 2025. (Dkt. 300.)

Ziff Davis asserts copyright infringement claims against OpenAI that are similar to those brought by the other news plaintiffs, but the factual underpinnings for Ziff Davis's copyright claims and defenses (including fair use) differ materially for multiple reasons, including: (1) many of Ziff Davis's copyright registrations were made in late 2024 and early 2025; (2) Ziff Davis's publications generally are supported through advertising whereas plaintiffs such as The New York Times rely more on subscriptions; (3) Ziff Davis alleges OpenAI deliberately scraped its websites for content during later time periods than claimed by other Plaintiffs, including well into 2025; and (4) Ziff Davis has materially different factual allegations as to contributory copyright infringement, which necessarily has occurred after July 2024.

Further, Ziff Davis's factual allegations differ as to other of its claims that are the same or similar to claims brought by the other news plaintiffs. For instance, it alleges misattribution of its trademark as a result of RAG output and cites examples post-dating July 2024. FAC ¶¶ 174–77.

In addition, many of Ziff Davis's specific factual allegations concern events that took place after July 2024. Ziff Davis pleads that it sought to discuss licensing with OpenAI in August 2024, but that OpenAI rebuffed those entreaties and subsequently willfully scraped Ziff Davis content to use for training. *Id.* ¶¶ 9–10; ¶ 191. The examples of infringing output set forth in Ziff Davis's pleading are dated after July 2024. *Id.* ¶¶ 148–49, 151, 168, 175. Ziff Davis also alleges that OpenAI continued to collect and copy Ziff Davis's content after July 2024 and that there was a

later peak in such activity in June 2025. *Id.* ¶¶ 122–26. These allegations are integral to Ziff Davis's willful infringement, DMCA anti-circumvention, and CMI removal claims, among others. *Id.* ¶¶ 211, 227–28, 244, 250, 256, 261, 265–67.

**B. Document Discovery in the Ziff Davis Case**

On May 27, 2025, Ziff Davis requested that OpenAI cross-produce documents produced in the news cases; after being ordered to do so by the Court, OpenAI finally completed that cross-production in mid-July 2025 (the "Cross-Production"). On May 29, 2025 Ziff Davis requested that OpenAI produce documents responsive to certain of the other news plaintiffs' document requests as if served by Ziff Davis (the "*Mutatis Mutandis* Request"). On June 27, 2025, Ziff Davis served an additional set of 22 new document requests designed to reach document categories not covered by the Cross-Production and *Mutatis Mutandis* Request. However, on July 3, 2025, OpenAI told Ziff Davis that it was refusing the *Mutatis Mutandis* Request and that Ziff Davis would need to serve new requests for those documents, which Ziff Davis then served on July 3, 2025. Ziff Davis served additional sets of document requests on August 6, 2025 and August 19, 2025.

Each of the RFPs served by Ziff Davis specified a date range of "January 1, 2022 to the present." *See*, *e.g.*, Koonce Decl., Ex. B, Excerpts from Ziff Davis's First Set of RFPs dated June 27, 2025). In its Objections and Responses, OpenAI made vague general objections to the time period but never stated that it would only produce documents through July 10, 2024. *See*, *e.g.*, Koonce Decl., Ex. C, Excerpts from OpenAI's First Set of Responses and Objections dated July 28, 2025.

It was not until Ziff Davis filed a motion to compel in September 2025 (Dkt. 550) that Ziff Davis discovered that OpenAI had applied a July 10, 2024 cut-off for all of its custodial

productions to Ziff Davis.[1] Dkt. 573 at 2 (noting for the first time that "the bulk of its custodial collections occurred in mid-July 2024). Ziff Davis immediately raised this issue and demanded production through the present, or at least through July 1, 2025 (the date Ziff Davis amended its complaint). Dkt. 550 at 3. OpenAI refused. Ziff Davis raised the issue with the Court, and Magistrate Judge Wang instructed the parties to meet and confer. Koonce Decl., Ex. D, Excerpts of Sept. 25, 2025 Hearing Transcript, Tr. at 57:9-14 (The Court instructing as follows: "They've done a number of searches and produced hit reports with search terms and to a certain date range. I don't know whether or how expanding the date range to the date of Ziff Davis's complaint impacts on the hit report, on the searches or how those searches ought to be done, but that's a conversation you should be having not in here").

Ziff Davis attempted to do so, but although OpenAI has agreed to one additional custodian and a few additional search terms, it has continued to refuse to collect any custodial documents post-dating July 2024, despite multiple offers from Ziff Davis to narrow any collection during the later time period to certain custodian or specific search terms. Motion to Compel, at 2.

At the same time that it was refusing to search for or produce documents after July 10, 2024 (without disclosing that it was refusing to do so), OpenAI served a vast array of document requests on Ziff Davis that expressly demanded the production of documents post-dating that arbitrary cutoff. Among other things, OpenAI served dozens of Requests particularly calling for the production of various categories of documents "from January 1, 2015 (or January 1, 2018) to the present." *See*, *e.g.*, Koonce Decl., Ex. E, Excerpts from OpenAI's First Set of RFPs dated June 12, 2025, RFP 103 ("Documents and Communications referring or Relating to any factors that

---

[1] To date, OpenAI has made no document productions that it has identified as being directly responsive to Ziff Davis's document requests. Instead, OpenAI has repeatedly contended that the existing search terms and custodians that OpenAI previously proposed are sufficient to cover the scope of OpenAI's responses.

allegedly negatively impacted revenue from January 1, 2018 through the present . . ."); RFP 118 ("Your organizational charts, from 2015 to present"); RFP 141 ("Documents sufficient to show the number of cancellations of subscriptions to Your products from January 1, 2018 to the present . . ."). OpenAI also requested numerous specific documents post-dating July 10, 2024. *See*, *e.g.*, *id.*, RFP 193 ("Documents and Communications Related to the paper by George Wukoson and Joey Fortuna published on November 7, 2024…"); RFP 199 ("Documents and Communications Relating to the provenance and process of publishing Your May 6, 2025 PCMag review…"); *see also* Koonce Decl. Ex. F, Excerpts from OpenAI's Third Set of RFPs dated August 19, 2025, RFPs 232 and 239 (discovery related to, among other things, Ziff Davis's August 8, 2024; November 8, 2024; and February 25, 2025 earnings calls.) In response, Ziff Davis has searched for and produced documents through August 8, 2025. Motion to Compel, at 1.

### C. __The Instant Motion to Compel__

In light of OpenAI's recalcitrance as to the production of any documents after July 10, 2024, Ziff Davis brought its Motion to Compel on November 18, 2025. Dkts. 776, 778. In its Motion, Ziff Davis made clear that it was not directed to discovery related to claims subject to OpenAI's pending motion to stay, but rather sought discovery through August 2025 as to factual allegations supporting claims not subject to that motion. *Id.* at 1. In the Motion to Compel, Ziff Davis sought an order compelling OpenAI to search and produce documents using narrowly tailored search terms up through August 8, 2025, commensurate with the time period used by Ziff Davis for its own production. *Id.*

## II.    LEGAL STANDARD

When a Court receives "timely objections from plaintiff and responses to those objections from defendant, the Court reviews the magistrate judge's ruling *de novo* pursuant

to Fed. R. Civ. P. 72(b)(3)." *See Jiggets v. Loc. 32BJ SEIU*, No. 09 CIV. 7243, 2010 WL 1558561 (S.D.N.Y. Apr. 19, 2010), *aff'd sub nom. Jiggetts v. Loc. 32BJ SEIU*, 488 F. App'x 508 (2d Cir. 2012). A "judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Thus, Rule 72(a) of the Federal Rules of Civil Procedure provides a party with fourteen days to object to non-dispositive orders by magistrate judges, and pursuant to the rule the district judge must consider the objections and "modify or set aside any part of the order that is clearly erroneous or contrary to law." *Id.*

Orders on pretrial discovery motions are considered non-dispositive. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Erroneous orders are those where a reviewing court "is left with the definite and firm conviction that a mistake has been committed," and orders contrary to law are those where the magistrate has "fail[ed] to apply or misappl[ied] relevant statutes, case law or rules of procedure." *LoCurto v. AT&T Mobility Servs. LLC*, No. 13 Civ 4303, 2017 WL 11826511, at *2 (S.D.N.Y. July 17, 2017) (*citing Weiss v. La Suisse*, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001) (internal quotations and citations omitted); *see also Bronx Household of Faith v. Bd. of Educ. of City of New York*, 331 F.3d 342, 348 (2d Cir. 2003) (*citing United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Although reviewing courts give Magistrate Judges broad discretion to resolve non-dispositive matters, a District Judge may sustain objections where the Magistrate abuses his or her discretion. *Safe Step Walk-In Tub Co. v. CKH Indus., Inc.*, No. 15 Civ. 7543, 2023 WL 1383678 (S.D.N.Y. Jan. 31, 2023) (sustaining objections to magistrate order on motion to compel). This may occur where a Magistrate Judge's decision "rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding," or where the decision "though

not necessarily the product of a legal error or a clearly erroneous factual finding . . .cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001). Thus, "[a]lthough the party seeking to overturn a magistrate judge's decision bears a 'heavy burden . . .' the burden is not insurmountable." *Roche Freedman LLP v. Cyrulnik*, No. 21 Civ. 1746, 2022 WL 17157670, at *1 (S.D.N.Y. Nov. 22, 2022).

## III.    ARGUMENT

As a threshold matter, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The Order is contrary to applicable law because it subverts this clear mandate under the federal rules, and OpenAI has made no valid arguments as to relevance, burden, or proportionality, nor does the Order rely on any such showing. Further, the manifest unfairness and prejudice to Ziff Davis if it is unable to obtain clearly relevant discovery on claims that are not even subject to the pending Motion to Stay renders the Order clearly erroneous on its face.

### A.  <u>The Order is Clearly Erroneous and is Based on a Misapprehension of Fact</u>

The Magistrate's Order was not expressly based on any finding of burden, relevance, or proportionality. Rather, it was apparently based on the erroneous conclusion—based on an apparent misapprehension of a key fact—that the fact discovery sought pursuant to Ziff Davis's Motion to Compel is the same discovery at issue in OpenAI's pending Motion to Stay. The Magistrate was persuaded to reach this conclusion by OpenAI, which, in addition to arguing (inconsistently with its arguments in the Stay motion) that there is overlap between existing custodians and the custodians relevant to the new models, argued that "Ziff Davis is seeking to make an end-run around OpenAI's pending Motion to Stay, which goes directly to whether conduct during the time period Ziff Davis targets here should be at issue." Dkt. 821 at 3.

That is inaccurate: OpenAI's Motion to Stay is directed at certain new models and claims, not at events after a particular date. Ziff Davis is willing to wait on the disposition of any discovery related to the new models until after this Court has decided the Motion to Stay.[2] In the very first paragraph of its letter motion, Ziff Davis states: "Even setting aside OpenAI's pending motion to stay discovery, Ziff Davis's claims are based on factual allegations that occurred up through 2025." Dkt. 778, at 1. Ziff Davis further expressly noted at oral argument on this Motion that is it not seeking to compel production as to models that are subject of the stay motion. Koonce Ex. A, Tr. 199:25-200:10. Rather, there are numerous topics post-dating July 2024 that will remain at issue regardless of whether the Motion to Stay is granted, as discussed below.

The Order also overlooks the severe prejudice that Ziff Davis will face if it is unable to obtain post-July 2024 documents, not to mention the fundamental unfairness of allowing OpenAI to seek and obtain documents from Ziff Davis covering the post-July 2024 time period while simultaneously refusing to produce its own. To take just one example, many of Ziff Davis's copyright registrations were obtained after July 2024, and Ziff Davis would need to prove infringement after registration if it elects to pursue statutory damages—and moreover, it needs to prove willfulness in order to obtain the highest statutory damage award. How can it do so if it is prevented from exploring what OpenAI did, and why it did it, after July 2024, with respect to the models that are clearly in the case? We recite further examples below.

The conclusion that the documents at issue here are the subject of the pending Motion to Stay was clearly erroneous and warrants reversal.

---

[2] OpenAI has never argued that fact discovery around the additional DMCA claims and unjust enrichment claim should await the Court decision on the Motion to Stay. *See* Dkt. 136 (arguing that it has not refused to produce documents on such claims during the pendency of the Motion to Stay).

**B.** **The Order is Contrary to Applicable Law and OpenAI Has Not Demonstrated Undue Burden, Lack of Relevance or that the Requested Discovery is Disproportionate to the Needs of the Case**

As noted, the Order does not recite any reasons for denial of the motion to compel other than the pendency of the Motion to Stay. However, to the extent the Magistrate Judge relied even tacitly on OpenAI's arguments that the document discovery Ziff Davis seeks post-dating August 10, 2024 is either unduly burdensome, of limited relevance, or is not proportional to the needs of the case (Dkt. 821 at 2-3), that too was erroneous because OpenAI has made no such showing.

OpenAI's relevance argument is that it has produced "sufficient" documents already "to address Ziff Davis's claims . . . because the vast majority fall under this time period." *Id.* at 1. Of course, there is no such "sufficiency" or "vast majority" standard for fact discovery, and a producing party certainly does not get to make unilateral decisions as to what is "sufficient" for the other party's needs. Indeed, if OpenAI's pre-July 2024 documents were sufficient for Ziff Davis (and they are not, as discussed below), why then, when the shoe is on the other foot, is OpenAI insisting on extensive production during that time period from Ziff Davis? Indeed, it is worse than that: OpenAI expressly relies on documents it sought from Ziff Davis that post-date July 2024, while at the same time refusing to produce documents during that time frame upon which Ziff Davis might rely. Motion to Compel, at 2-3 (describing OpenAI's efforts to seek discovery through 2025 while only producing its own discovery through July 2024).

To support its sufficiency argument, OpenAI asserts that some of the conduct Ziff Davis complains of was "continuing" conduct that stretches from before July 2024 until the present, and that since OpenAI has produced documents about its earlier conduct it need not do so for its later conduct. *Id.* at 1. This is nonsensical; by this logic, any defendant in any litigation could unilaterally deem some period of time "representative" of the entire period of time the conduct

was occurring and produce nothing outside that time frame. In any event, Ziff Davis proposed to significantly cut the number of custodians prior to the filing of its motion, and the parties have now agreed to the addition of a single additional OpenAI custodian.

Ziff Davis provided notice to OpenAI of its potential claims in January 2024, and then provided more detail around those claims in May 2024, reached out for a business discussion in September 2024, filed many of its copyright registrations between the fall of 2024 and spring of 2025, and filed its complaint in April 2025. To the extent that there have been internal discussions at OpenAI regarding Ziff Davis, including but not limited to discussions about (1) the scope of Ziff Davis's original content; (2) the possibility of a business deal with Ziff Davis; (3) the extent to and manner in which OpenAI has accessed Ziff Davis websites and content; (4) the institution of blocklists for Ziff Davis sites; (5) the regurgitation of Ziff Davis content by OpenAI models; (6) the misattribution of Ziff Davis content in output; (7) the development of guardrails relating to Ziff Davis content; or (8) the extent of conversations between users of OpenAI models and those models themselves about Ziff Davis, these most likely would have occurred throughout 2024 and through the summer of 2025. By artificially truncating its production in early July 2024, OpenAI likely has cut off the production of a significant amount of relevant material that could be used to support Ziff Davis's claims. Again, the foregoing list is representative and not exhaustive; Ziff Davis cannot know the extent of responsive materials until OpenAI is ordered at least provide hit counts from relevant custodians.[3]

---

[3] OpenAI also disputes that for its part it has only produced a minimal volume of documents in response to Ziff Davis's RFPs, claiming that it has produced 119,522 documents that hit on either (a) Ziff Davis-specific search terms (which it says hit on 13,638 documents) or (b) search terms propounded by other news plaintiffs. First, 99% of the 119,522 documents fall into the second category, and were produced long before Ziff Davis joined the MDL and later cross-produced to Ziff Davis. Second, the number of "hits" on Ziff Davis-specific terms is irrelevant, because these hits include documents previously produced, not just new documents. Ziff Davis stands by its assessment that OpenAI has produced fewer than 100 documents directly in response to Ziff Davis-specific terms. And of course <u>all</u> of the custodial documents OpenAI has produced terminate in July 2024, so the volume of documents it produced (to other parties)

OpenAI also argues that collection and production of documents covering an additional year would be unduly burdensome and disproportionate to the needs of the case, but has fallen far short of any such showing. As to burden, it merely states that it would need to collect "13 additional months of data from at least 35 custodians" and that Ziff Davis has sought 10 additional custodians and 209 additional search terms. *Id.* at 2. In any event, Ziff Davis proposed to cut the number of custodians in half prior to the filing of its motion, and the parties have now agreed to the addition of a single additional OpenAI custodian. Ziff Davis has also agreed to significantly narrow search terms for the updated date range by limiting them to only the ones that relate to Ziff Davis (as opposed to all terms run across the MDL). Notably, OpenAI too has been seeking additional search terms from Ziff Davis, without limiting the date range for production in response to those terms to the pre-July 2024 date range it has itself applied. Nowhere does OpenAI provide even a ballpark estimate of the actual burden to produce documents from approximately 18 custodians, because it has made no effort to analyze that burden. It asks the Court and Ziff Davis to accept that <u>any</u> additional burden is too much.

OpenAI further complains that any additional production would be burdensome because it would need to be conducted well before February 27, 2026, the current close of fact discovery. This is a problem entirely of OpenAI's own making, as it received document requests starting in May, hid the fact that it was not producing during the later time frame until August, and has refused all reasonable entreaties by Ziff Davis to expand its production ever since. Even so, as Ziff Davis has explained in connection with its opposition to OpenAI's stay motion, there are mechanisms the Court can use to allow Ziff Davis and OpenAI to finish face discovery on a different schedule, while still maintaining the overall case schedule. Koonce Decl., Ex. G, Excerpts of Nov. 13, 2025

---

before that self-imposed cut-off is largely irrelevant, especially without any means of comparing that volume with the potential volume of post-July 2024 documents.

Hearing Transcript, Tr. 38:11-20 (noting that "separate tracks for actions involving different claims" are "not uncommon").

Finally, OpenAI argued in its letter response, without any support, that additional fact discovery after July 2024 would be "wildly disproportionate to the needs of this MDL," because it would constitute a "fishing expedition" and "capture documents with limited relevance to the models at issue across the cases." *Id.* at 2. OpenAI's focus on models was an (apparently successful) effort to convince the Magistrate Judge of the relationship between the Motion to Stay and the requested discovery, but it is simply a red herring. First, as noted, Ziff Davis has expressly stated that its motion to compel does not reach discovery around the new models; Ziff Davis's claims plainly encompass earlier models that are within the scope of all of the cases. Indeed, nowhere does Ziff Davis seek custodial production from the "*separate* teams" involved in the new models. Dkt. 285 at ¶ 14 (emphasis added). Second, the types of documents likely to be produced in response to custodial searches—emails, chat threads, and documents created or shared by specific employees—are separate from training data, source code and output logs, which will be closely tied to particular models and discovery into which can await decision on the Motion to Stay. Above, we list multiple categories of internal communications and documents likely to be responsive to Ziff Davis's requests, that would not be duplicative of previously produced materials, and that would be critical to Ziff Davis's claims.

And make no mistake: If Ziff Davis is precluded from obtaining full discovery into its claims that are moving forward notwithstanding the results of the Motion to Stay, Ziff Davis will be severely prejudiced. In that circumstance, all other plaintiffs in the MDL will have been able to obtain custodial discovery through an agreed date, and OpenAI will have been able to obtain Ziff Davis's custodial productions through August 8, 2025 (well after OpenAI's arbitrary cutoff date

for OpenAI's own productions), but Ziff Davis alone will have been denied discovery through the relevant time frame for its claims. Again, if the Court deems that allowing Ziff Davis to obtain such discovery will wreak havoc on the case schedule, the answer is not to preclude Ziff Davis from ever obtaining relevant discovery, but to apply appropriate measures such as a separate discovery track to allow Ziff Davis to properly present its case.

## <u>CONCLUSION</u>

For all of the reasons set forth above, the Court should sustain Ziff Davis's objection pursuant to Rule 72(a) of the Federal Rules of Civil Procedure.

DATED: December 12, 2025                    Respectfully submitted,

                                                            /s/ Lacy H. Koonce, III
                                                  Lacy H. ("Lance") Koonce, III
                                                  Matthew A. Leish
  Gili Karev
  Mariella Salazar
  Clara Cassan
  **KLARIS LAW PLLC**
  161 Water Street
  New York, NY 10038
  Telephone: (646) 779-4882
  lance.koonce@klarislaw.com
  matthew.leish@klarislaw.com
  gili.karev@klarislaw.com
  mariella.salazar@klarislaw.com
  clara.cassan@klarislaw.com

  Guy Ruttenberg
  Ruttenberg IP Law, A Professional Corporation
  1801 Century Park East
  Suite 1920
  Los Angeles, CA 90067
  Telephone: (310) 627-2270
  ZD-AICopyright@ruttenbergiplaw.com

  *Attorneys for Plaintiffs Ziff Davis, Inc., Ziff Davis, LLC, IGN*

*Entertainment, Inc., Everyday Health
Media, LLC, Mashable, Inc., and
CNET Media, Inc.*

To:

**LATHAM & WATKINS LLP**
Andrew M. Gass (pro hac vice)
andrew.gass@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
sy.damle@lw.com
Elana Nightingale Dawson (pro hac vice)
elana.nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Rachel R. Blitzer
rachel.blitzer@lw.com
Herman H. Yue
herman.yue@lw.com
Luke A. Budiardjo
luke.budiardjo@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200

Allison S. Blanco (pro hac vice)
allison.blanco@lw.com
650 Town Center Drive 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235
Attorneys for OpenAI

**MORRISON & FOERSTER LLP**
Joseph C. Gratz (pro hac vice)*
jgratz@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Rose S. Lee (pro hac vice)
roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200

Carolyn M. Homer (pro hac vice)
cmhomer@mofo.com
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: 202.650.4597

Jocelyn E. Greer
jgreer@mofo.com
Emily C. Wood
ewood@mofo.com
Eric K. Nikolaides
enikolaides@mofo.com
250 West 55th Street
New York, NY 10019
Telephone: 212.468.8000

**KEKER, VAN NEST & PETERS LLP**
Robert A. Van Nest (pro hac vice)
rvannest@keker.com
Paven Malhotra
pmalhotra@keker.com
Michelle S. Ybarra (pro hac vice)
mybarra@keker.com
Nicholas S. Goldberg (pro hac vice)
ngoldberg@keker.com
Thomas E. Gorman (pro hac vice)
tgorman@keker.com
Katie Lynn Joyce (pro hac vice)
kjoyce@keker.com
Sarah Salomon (pro hac vice)
ssalomon@keker.com
R. James Slaughter (pro hac vice)*
rslaughter@keker.com
Christopher S. Sun (pro hac vice)
csun@keker.com
Andrew F. Dawson (pro hac vice)
adawson@keker.com
Andrew S. Bruns (pro hac vice)
abruns@keker.com
Edward A. Bayley (pro hac vice)
ebayley@keker.com
Ryan K. Wong (pro hac vice)
rwong@keker.com
Spencer McManus (pro hac vice pending)
smcmanus@keker.com
Olivia C. Malone (pro hac vice pending)

omalone@keker.com
Bilal A. Malik (pro hac vice pending)
bmalik@keker.com
633 Battery St.
San Francisco, CA 94111
Telephone: 415.391.5400

*Attorneys for Defendants OpenAI, Inc.,*
*OpenAI LP, OpenAI GP, LLC, OpenAI, LLC,*
*OpenAI Opco LLC, OpenAI Global LLC,*
*OpenAI Corporation, LLC, and OpenAI Holdings, LLC*

## CERTIFICATE OF COMPLIANCE

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law is 5,541 words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word-count feature of the word-processing system used to prepare this document.

DATED: December 12, 2025

Respectfully submitted,

_/s/_ Lacy H. Koonce, III