## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE:

OPENAI, INC.

COPYRIGHT INFRINGEMENT
LITIGATION

This Document Relates to:

ZIFF DAVIS, INC. et al. v. OPENAI, INC. et al.,
No. 1:25-cv-04315-SHS-OTW

25-md-3143 (SHS) (OTW)

**PLAINTIFF ZIFF DAVIS'S
MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT
OPENAI'S MOTION TO STAY
ZIFF DAVIS'S FIRST
<u>AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

      A.    Ziff Davis Is One of the Largest Publishers of Digital Content, Most of Which Is Based on Non-Subscription Revenue Streams. ....................................... 2

      B.    Ziff Davis Has Complied with the Court's Scheduling Order. ............................. 3

      C.    This Court Has Already Adjudicated a Motion to Stay from OpenAI Directed to Ziff Davis. ...................................................................................... 8

      D.    OpenAI Brought Its Second Motion to Stay Because OpenAI Wants More Time for Taking Ziff Davis Depositions and Other Ziff Davis Discovery. ................... 10

III.  LEGAL STANDARD ........................................................................................ 11

IV.   ARGUMENT ..................................................................................................... 11

      A.    OpenAI's Motion Is Premised on Fiction, and There Is No Basis for Staying the Ziff Davis Case. ................................................................................ 11

      B.    Ziff Davis Has a Substantial Interest in Proceeding With Its Case, and a Stay Would Profoundly and Unfairly Prejudice Ziff Davis. ........................................ 15

      C.    Denying OpenAI's Motion Does Not Unfairly Burden or Prejudice OpenAI. .... 17

      D.    The Public Interest and Interests of Non-Parties Also Disfavor a Stay. ............... 19

V.    CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*Cengage Learning, Inc. v. Google LLC*,
   No. 1:24-CV-04274 (JLR), 2025 WL 2431591 (S.D.N.Y. Aug. 22, 2025) ........................... 16

*Finn v. Barney*,
   No. 08-cv-2975 (LTS) (KNF), 2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008) ........................ 18

*Frilando v. Dutchess Sch. of Driving, Inc.*,
   No. 15 Civ. 3972 (VB), 2016 WL 9503817 (S.D.N.Y. Apr. 18, 2016).................................. 11

*In re Ford Motor Co. Bronco II Prods. Liab. Litig.*,
   No. CIV. A. 95-1966, 1996 WL 148294 (E.D. La. Apr. 1, 1996).......................................... 15

*Kappel v. Comfort*,
   914 F. Supp. 1056 (S.D.N.Y. 1996) ...................................................................................... 11

*Landis v. N. Am. Co.,* 299 U.S. 248 (1936) .......................................................................... 11, 18

*LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421 (S.D.N.Y. 2005) ............................... 11, 17

*Rankine v. Levi Strauss & Co.*, 674 F.Supp.3d 57 (S.D.N.Y. 2023) .......................................... 11

*Readick v. Avis Budget Grp., Inc*,
   No. 12-cv-3988 (PGG), 2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014) ................................ 18

*Sanofi-Synthelabo v. Apotex Inc.*,
   No. 02 CIV. 2255 (SHS), 2010 WL 1541435 (S.D.N.Y. Apr. 15, 2010).............................. 16

## I.    INTRODUCTION

OpenAI's motion is based on the false assertions that Ziff Davis cannot meet the current case schedule and that it has somehow impeded discovery. But Ziff Davis has diligently met its discovery obligations in this case, and Magistrate Judge Wang has never had to direct an order to Ziff Davis. Even now, there are *zero* discovery motions directed to Ziff Davis, belying OpenAI's suggestion of any wrongdoing on Ziff Davis's part. It was OpenAI that initiated discussions about an extension of the discovery schedule in *Ziff Davis* after apparently finding itself overwhelmed by the twenty-two fact depositions (and dozens of 30(b)(6) topics) that it noticed in late November. When Ziff Davis then conferred with OpenAI in response, OpenAI reversed course and sought to stay the case, culminating in this motion.

Ziff Davis has fully complied the current case schedule and is entitled to continue litigating in the MDL. Working on a lightning-fast schedule that no other party in the MDL has had to meet, Ziff Davis has substantially completed its document production, producing approximately 100,000 documents. It is making available and scheduling the witnesses OpenAI seeks for deposition, all before the February 27 close of fact discovery. It has participated in all discovery conferences, the technology tutorial, MDL leadership calls and conferences, and dozens of defense depositions. OpenAI has not brought a single successful discovery motion against Ziff Davis and cannot support any argument that Ziff Davis has delayed discovery. Any delay falls squarely at the feet of OpenAI.

Ziff Davis did previously write to the Court and suggest that a separate discovery schedule might be appropriate for this case, but that was when OpenAI's previous partial stay motion was still pending, the question of completing fact discovery on OpenAI's later large language models was still open, and OpenAI was attempting to tie its completion of document discovery in this case more generally to that proposed stay. The Court has now ruled on that prior stay motion and there

is more clarity around what remains to be done in discovery, and thus mooting Ziff Davis's prior letter. There is no basis for staying the *Ziff Davis* case.

OpenAI's motion is thus founded on a misrepresentation, and it cannot demonstrate that any of the *Kappel* factors (as previously applied by this Court to the *Ziff Davis* case) favor a stay. First, in light of Ziff Davis's investment in this case and the late stage of fact discovery, it would be profoundly prejudiced by a last-minute stay. Indeed, when this Court denied OpenAI's motion to stay Ziff Davis's DMCA distribution claim unique in the MDL, it held that "Ziff Davis's and the public's interest in expeditious resolution of the issues in this MDL counsel against the stay" (Dkt. 968 at 14-15). This finding applies with equal force to OpenAI's motion to stay all of Ziff Davis's extant claims.

Second, OpenAI conceded that a denial of this stay motion would not prejudice it when in support of its motion for a partial stay it argued that Ziff Davis's other claims "can proceed along with the MDL cases." Dkt. 136 at 1. Finally, a stay would not serve the public interest because Ziff Davis, as an ad-supported publisher of unique categories of digital content, brings a particular perspective and contribution to the MDL, and because Ziff Davis plays a role in leadership for the News Plaintiffs and is scheduled to take the lead on multiple upcoming depositions.

The Court should not stay the *Ziff Davis* case.

## II.    FACTUAL BACKGROUND

### A.    Ziff Davis Is One of the Largest Publishers of Digital Content, Most of Which Is Based on Non-Subscription Revenue Streams.

As explained in its operative complaint, Ziff Davis is a digital media and technology company with over 45 portfolio media brands, including *IGN*, *Mashable*, *CNET*, *ZDNET*, *PCMag*, *Lifehacker*, *BabyCenter*, and *Everyday Health*, which are circulated to millions of consumers on a daily basis. Dkt. 300 ¶ 33. Ziff Davis's top digital media properties together averaged ***over 291***

*million* unique user visits per month in the last twelve available months of third-party traffic data, as of filing. *Id.* ¶ 36. Ziff Davis has registrations covering more than 1.3 million works with the Copyright Office. *Id.* ¶ 53.

Ziff Davis has a workforce of over 3,800 employees and over 40 offices worldwide, and its personnel expend and invest considerable time, energy and resources—and take financial and journalistic risks—to create the Ziff Davis Works. *Id.* ¶¶ 41-42. Thus, the protection of Ziff Davis's intellectual property in the Ziff Davis Works is essential to its ability to continue to provide the high-quality content that its readers expert, maintain its competitive market position, and grow its revenue. *Id.* ¶ 45.

Unlike some of the other News Plaintiffs, Ziff Davis relies on non-subscription revenue streams as it does not typically place its media content behind "paywalls." *Id.* ¶ 52. Ziff Davis is directly harmed by the diversion of consumer attention to competing sources of unauthorized copies of its content because reductions in audience engagement with Ziff Davis websites directly diminish its revenue—and in turn its ability to produce more high-quality content. *Id.* OpenAI's ongoing infringement poses a grave threat to Ziff Davis's potential revenues. *Id.* ¶ 199. That infringement also threatens the entirety of the ad-supported content market in which Ziff Davis plays a central role.

**B.  Ziff Davis Has Complied with the Court's Scheduling Order.**

Ziff Davis filed suit against OpenAI on April 24, 2025, three weeks after the instant MDL was formed. Dkt. 1. Ziff Davis amended its pleading as of right on July 2, 2025. Dkt. 300.

On May 15, 2025—before the *Ziff Davis* case was formally transferred into the MDL—Ziff Davis invited OpenAI to commence discovery, including to "make their prior productions and written discovery responses in the MDL member cases available to Ziff Davis," and to provide Ziff Davis with "access to inspect Training Data." Ruttenberg Decl. Ex. A. OpenAI declined.

This Court held an initial Case Management Conference ("CMC") on May 22, 2025, during which it formally opened discovery in the *Ziff Davis* matter. 5/22/2025 Hr'g Tr. at 65:14–65:22; *see also* CMC Order, Dkt. 60 at 2 ("Discovery is deemed to be open in the *Ziff Davis* action."). The Court also appointed a "Leadership Committee for the News Plaintiffs," which included Ziff Davis's counsel "Klaris Law, with Lance Koonce as lead." Dkt. 60 at 1.

At the CMC, Ziff Davis again requested that OpenAI cross-produce all discovery that it had previously provided to the other plaintiffs, but OpenAI insisted that it required more time to consider the request. 5/22/2025 Hr'g Tr. at 65:24-66:14. Ultimately, Magistrate Judge Wang ordered OpenAI to do so. 5/27/2025 Hr'g Tr. (morning session) at 6:10-17, 8:14-15.

On June 20, 2025, the Court entered a scheduling order setting, among other things, a fact discovery cutoff date of February 27, 2026. Dkt. 238. Ziff Davis has fully complied with and does not seek to extend that deadline.

<u>Document Production and Written Discovery</u>. Ziff Davis has been diligent in meeting its obligations to produce discovery. To that end, Ziff Davis promptly identified its ESI custodians, disclosed and applied search terms and produced documents to OpenAI. Whereas OpenAI and other parties expended months (if not longer) negotiating search terms and custodians, Ziff Davis completed that process in a matter of weeks. Ziff Davis also substantially completed its ESI production by the end of October 2025.

In its motion, OpenAI complains that Ziff Davis was somehow dilatory in "exchang[ing] proposed ESI search terms and custodians in July 2025." Mot at 5. These arguments were *rejected* by Magistrate Judge Wang in denying OpenAI's motion to impose a September 30, 2025 deadline for Ziff Davis to substantially complete production in response to 451 document requests served by OpenAI between June 12 and July 11, 2025. (Dkt. 381, Dkt 451). At the same time, OpenAI

4

refused to identify its own custodians, hit counts or search terms in response to Ziff Davis's requests.[1] Thus, Ziff Davis proposed that the parties mutually exchange this information on August 15, 2025, and that the parties agree on a mutual deadline for "substantial completion." Dkt. 451 at 3. Magistrate Judge Wang *agreed with Ziff Davis's proposal* and ordered the parties to "Do this" and to meet and confer "on a date for substantial completion." Dkt. 451 at 3. The parties subsequently agreed to October 31, and Ziff Davis complied.[2]

To date, Ziff Davis has produced nearly 100,000 documents covering more than 550,000 pages. Ruttenberg Decl. ¶ 4. Ziff Davis's production also includes many native files and hard-drives produced under a single Bates number, even though each may contain many hundreds of thousands of pages. *Id*. On December 19, 2025, Ziff Davis produced its privilege log. *Id.* ¶ 5.

Notably, Ziff Davis' ESI collection and production is current through August 8, 2025, based on OpenAI's requests. *See generally* Dkt. 965 at 6. In contrast, OpenAI has refused to collect or produce custodial documents after July 10, 2024. *Id*. Further, apart from the documents that OpenAI cross-designated from its productions to other plaintiffs, OpenAI has produced very few documents in response to Ziff Davis's specific requests.

<u>Depositions</u>. The News Plaintiffs have pursued OpenAI depositions dating back to the CMC and in the case of some plaintiffs even earlier. *See* Dkt. 47 at 31 n.18. On July 21, 2025, the Court entered a Deposition Protocol Order to "govern[] the conduct of depositions of fact witnesses." Dkt. 355 at 1. The Protocol contemplates that document production can proceed in

---

[1] In addition to seeking cross-production, Ziff Davis has also served its own requests for documents and written discovery. *See generally* Dkt. 962 at 9.

[2] In October 2025, OpenAI brought another motion before Magistrate Judge Wang seeking to compel Ziff Davis to produce another category of documents. (Dkt. 636). The motion was denied. Dkt. 704.

parallel with depositions,[3] and the producing party should produce documents "relevant to a particular witness . . . at least 14 days before the scheduled deposition." Dkt. 355 at 5.

Depositions of OpenAI commenced on September 18, 2025, with the deposition of Miles Brundage. Ziff Davis has participated in these depositions of OpenAI witnesses and for some has taken the lead on behalf of the News Plaintiffs. Ziff Davis is slated to take the lead on behalf of the News Plaintiffs in additional depositions scheduled for January and February.

In contrast, OpenAI did not request to depose any Ziff Davis witness until November 25, 2025, two days before Thanksgiving, when OpenAI simultaneously requested depositions of twenty-two Ziff Davis witnesses, including three depositions it sought for December. Ruttenberg Decl. ¶ 7 & Ex. D. Despite the intervening holiday, Ziff Davis responded promptly and offered two witnesses for deposition in December. *Id.* ¶ 9. As to a third witness requested for December (Ms. Connie Guglielmo, a journalist and former employee), Ziff Davis raised substantive objections based on prior rulings from Magistrate Judge Wang. *Id.*

OpenAI declined to proceed with the depositions offered by Ziff Davis in December. As an excuse for its failure to proceed, OpenAI contends that Ziff Davis supposedly "refused to complete production of the core documents relevant to those two witnesses' depositions." Mot. at 6. However, Ziff Davis repeatedly confirmed that "the ESI custodial production of those witnesses is substantially complete." Ruttenberg Decl. ¶ 17 & Ex. G. And OpenAI fails to explain why it needed all "copies of Ziff Davis's Asserted Works" (the only category identified as outstanding by OpenAI, Mot. at 6) in order to depose a Ziff Davis engineer or other witnesses.

---

[3] The Court did not adopt OpenAI's earlier suggestion "to complete written discovery and substantially complete document productions prior to taking depositions." Dkt. 47 at 47.

As of the date of this filing, Ziff Davis has proposed dates (within the existing case management schedule) for depositions of sixteen of the twenty-two witnesses requested by OpenAI. Ruttenberg Decl. ¶ 19. Most of those dates have been confirmed by OpenAI, including a deposition that was completed before the filing of this Opposition. Likewise, Ziff Davis is working to confirm dates for the remaining five witnesses (Doree, Kritz, Schneider, Davison and Lang— the latter of whom are former employees) requested by OpenAI, and Ziff Davis expects those witnesses to be made available before the existing February 27 discovery cutoff.

Rule 30(b)(6) Topics. The Deposition Protocol also requires the parties to provide "draft 30(b)(6) notices, . . . with the specific timing set forth [in the Order] or to be agreed." Dkt. 335 at 4. For example, OpenAI agreed to serve draft Rule 30(b)(6) notices on the NYT and Daily News by July 21, 2025. *Id.* at 5. And the News Plaintiffs, including Ziff Davis, have negotiated Rule 30(b)(6) topics for OpenAI's witnesses and the OpenAI Rule 30(b)(6) depositions are proceeding apace and are scheduled to be completed on the current case schedule.

But OpenAI never proposed any "timing" for serving a draft 30(b)(6) notice on Ziff Davis. Instead, on November 21, 2025, OpenAI finally served a draft Notice on Ziff Davis setting forth 73+ topics (including multiple subtopics). Ruttenberg Decl. ¶ 6 & Ex. C. Still, Ziff Davis diligently worked with OpenAI to resolve any disputes surrounding the Rule 30(b)(6) Notice so that these depositions can move forward expeditiously. At this point, Ziff Davis has identified Rule 30(b)(6) designees for *all* of the topics maintained by OpenAI. Ruttenberg Decl. ¶ 18. Ziff Davis has also offered concrete dates for all but one of those designees and Ziff Davis fully expects to confirm a date for the last designee (Schneider) within the existing fact discovery period. *Id.*

Discovery Motions. Counsel for Ziff Davis has also attended and participated in each of the monthly discovery conference before Magistrate Judge Wang since the May 22, 2025 CMC.

Magistrate Judge Wang has repeatedly ordered relief sought by the News Plaintiffs against OpenAI. *See, e.g.*, Dkt nos. 459, 463, 734.

For the January 15, 2026 discovery conference, the parties have briefed *dozens* of discovery disputes against one another. For example, in one of the many pending discovery motions directed to OpenAI, Ziff Davis explains that OpenAI has delayed and obstructed the vital matter of Ziff Davis's review of source code and training data. *See* Dkt. 1052.

To date, OpenAI has not successfully brought any discovery motions against Ziff Davis. *Id.* Similarly, Magistrate Judge Wang has not made any finding or entered any order suggesting that Ziff Davis failed to comply or was otherwise delinquent. *Id.* For the upcoming January 15 discovery conference, *none* of discovery motions are directed to Ziff Davis. *Id.*

### C.  This Court Has Already Adjudicated a Motion to Stay from OpenAI Directed to Ziff Davis.

In both the Joint Initial CMC Statement, Dkt. 47 at 71, and again at the May 22 CMC itself, OpenAI argued that the Ziff Davis action should be stayed in its entirety or only "proceed[] on the common issues that are currently pled in these coordinated proceedings, the claims and the products currently in the case." 5/22/2025 Hr'g Tr. 67:4-14.

On June 10, 2025, OpenAI moved for a "partial" stay of the *Ziff Davis* case. Dkt. 134. Specifically, OpenAI "request[ed] that this Court stay the proceedings as to any models referenced in the Ziff Davis Complaint that are not already within the MDL's substantive scope" and "that the Court stay the claims in the *Ziff Davis* Complaint that are not currently being litigated by the prior MDL parties—*i.e.*, Counts 4, 5, and 7 of the Complaint—to the extent that the Court does not dismiss those claims with prejudice."[4] Dkt. 136 at 1.

---

[4] In parallel, OpenAI also moved to dismiss certain counts from Ziff Davis' complaint, and made a further motion directed to Ziff Davis' amended complaint. Dkts. 138, 405.

In explaining why "Ziff Davis [w]ill [n]ot be [p]rejudiced," OpenAI emphasized that it was seeking a "*partial* stay regarding only the claims and models not already asserted in the coordinated proceedings," which OpenAI argued "is consistent with this Court's objectives to streamline the MDL proceedings." *Id.* at 5-7 (emphasis in original). Thus, OpenAI insisted that the balance of Ziff Davis's claims "relate to common issues and claims and can proceed along with the MDL cases," and therefore the partial stay "will not prejudice Ziff Davis." *Id.* at 7. On reply, OpenAI again emphasized that its "motion seeks narrow relief: that the scope of claims and models in the tag-along Ziff Davis action be no broader than the claims and models in the other News actions," and that there is no prejudice to Ziff Davis "from this narrow relief." Dkt. 284 at 1-2.

The Court initially heard argument on OpenAI's motion for partial stay (and motion to dismiss) on October 8, 2025, and then scheduled a separate hearing for November 13, 2025, to hear further argument. Dkt. 716.

On December 15, 2025, the Court granted-in-part and denied-in-part OpenAI's motions. Dkt. 968. As an initial matter, the Court held that the relevant "*Kappel* factors do not support staying this action with respect to Ziff Davis's claim 7, which is based on DMCA section 1202(b)(3) for distribution of works with CMI removed." *Id.* at 14. The Court explained that "Ziff Davis's and the public's interest in expeditious resolution of the issues in this MDL counsel against the stay." *Id.* Thus, OpenAI's motion to stay "was denied as to claim 7." *Id.* at 15. However, the Court granted the motion and stayed the Ziff Davis claims as to OpenAI models that "are not otherwise at issue in this MDL." *Id.* at 14.

**D. OpenAI Brought Its Second Motion to Stay Because OpenAI Wants More Time for Taking Ziff Davis Depositions and Other Ziff Davis Discovery.**

After serving belated deposition notices, OpenAI conceded during the parties' meet-and-confer discussions on December 9 and 12 that it is having trouble taking so many depositions within the limited fact discovery period. Ruttenberg Decl. ¶ 12. OpenAI asked to "take [Ziff Davis'] temperature" with respect to an extension to the case schedule that would apply only to Ziff Davis. *Id.* At the time, OpenAI's first motion to stay was still pending. Thus, on the December 12 call, Ziff Davis alerted OpenAI that Ziff Davis would be filing a letter explaining to the Court that—in light of OpenAI's last-minute request for depositions—a separate schedule would likely be necessary in any event. Dkt. 963.

On Saturday, December 13, 2025—just after Ziff Davis filed its letter—OpenAI asked "to meet and confer" and invited a "proposal as to the case schedule." Ruttenberg Decl. ¶ 14 & Ex. F.

Meanwhile, on December 15, 2025, this Court issued its ruling on OpenAI's first motion.

On December 16, the parties conducted the meet-and-confer that OpenAI had requested to discuss the case schedule and OpenAI's inability to meet it. On that call, Ziff Davis explained that *if OpenAI seeks more time for fact discovery as to Ziff Davis only*, Ziff Davis might consider accommodating OpenAI's request by agreeing to extend the fact discovery deadline by a couple of months, and then (if necessary) extend certain supplemental expert reports that relate to Ziff Davis only. Ruttenberg Decl. ¶ 16. After soliciting a proposed extension that was intended to facilitate OpenAI's own tardiness, OpenAI rejected it out of hand and asserted that it would instead seek a stay of the Ziff Davis litigation, which Ziff Davis immediately rejected. *Id.* Ziff Davis's counsel then followed up in writing and reiterated that Ziff Davis was not interested in a stay. *Id.* Hours later, OpenAI informed Ziff Davis that OpenAI would not proceed with the depositions offered for December. *Id.* ¶ 17.

10

OpenAI filed its (second) motion to stay on December 19, 2025, at 11:57 pm. Dkt. 998. Contradicting its prior motion, OpenAI now seeks a stay of the entire *Ziff Davis* action.

## III.    LEGAL STANDARD

Federal courts possess an inherent power to stay proceedings on their dockets. *Landis v. N. Am. Co.,* 299 U.S. 248 (1936). The "movant bears the burden of establishing its need for such a stay." *LaSala v. Needham & Co., Inc*., 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005). To do so, it "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Frilando v. Dutchess Sch. of Driving, Inc*., No. 15 Civ. 3972 (VB), 2016 WL 9503817, at *1 (S.D.N.Y. Apr. 18, 2016) (internal quotation marks omitted).

Courts in this Circuit typically consider the following factors: 1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; 2) the private interest of and burden on the defendants; 3) the interests of the courts; 4) the interests of persons not parties to the civil litigation; and 5) the public interest. *Rankine v. Levi Strauss & Co*., 674 F.Supp.3d 57, 68 (S.D.N.Y. 2023) (citing *Kappel v. Comfort,* 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).

## IV.    ARGUMENT

### A.  OpenAI's Motion Is Premised on Fiction, and There Is No Basis for Staying the Ziff Davis Case.

OpenAI's motion is premised on demonstrably false allegations—so much so that this Court should consider appropriate sanctions. Contrary to OpenAI's representations, Ziff Davis has been exceedingly diligent in both pursuing and providing discovery, and is not seeking an extension of fact discovery for Ziff Davis.

11

Indeed, the record easily belies OpenAI's sundry and unsupported allegations that Ziff Davis has "fallen behind," "missed deadlines," "violated Court orders" or "impeded" discovery. Mot. at 1. Instead, working at lightning speed, Ziff Davis produced nearly 100,000 documents in the few months since OpenAI served its documents requests on Ziff Davis, and its production is substantially complete.[5] Ziff Davis has gone above and beyond—it even produced custodial documents *up through August 2025*, even though OpenAI refuses to collect ESI beyond July 2024. Nor has Ziff Davis sought any modification of the case schedule. Unfortunately, OpenAI's eleventh-hour motion to stay is a thinly disguised attempt *by OpenAI* to buy more time in discovery. There is no a basis for staying the *Ziff Davis* action.

While OpenAI accuses Ziff Davis of all kinds of discovery violations, glaringly absent from its motion is a discussion of any discovery motions (much less discovery *orders*) directed to Ziff Davis. In this MDL, Magistrate Judge Wang holds monthly discovery conferences where the parties have filed dozens of motions seeking relief against one another. Yet, OpenAI does not point to any discovery motions (much less successful ones) against Ziff Davis—in no small part because Ziff Davis has aggressively complied with OpenAI's daunting requests. There has been no finding that Ziff Davis failed to comply with any discovery request, much less that it "impeded discovery" or violated the Court's orders or deadlines.

Equally frivolous is OpenAI's contention that Ziff Davis has somehow been delinquent in producing its witnesses for deposition.[6] Despite the fact that OpenAI waited until the last minute

---

[5] For comparison, OpenAI is still contending with discovery dating back to 2024. *See, e.g.*, Dkt. 1066 (News Plaintiffs, including Ziff Davis, moving to compel OpenAI based on document requests served February 23, 2024); *see also* Dkt. 900 at 18 (directing OpenAI to re-run search terms against certain custodial documents of two OpenAI custodians).

[6] While OpenAI spent *months* evading the Plaintiffs' requests for deposition dates, OpenAI complains that Ziff Davis took "two weeks" to respond to OpenAI's request (which was made on the Tuesday before Thanksgiving) for twenty-two depositions.

to request any fact depositions from Ziff Davis and to serve a Rule 30(b)(6) notice seeking corporate testimony as to dozens of topics, Ziff Davis *still* made every effort to accommodate OpenAI's tardiness. Indeed, Ziff Davis has offered dates for nearly all the fact witnesses requested by OpenAI, and identified corporate designees for all of the pending 30(b)(6) topics—all of which was resolved without any motion practice before Judge Wang. The is in stark contrast to 30(b)(6) notices directed at OpenAI, which have been involved extensive motion practice before Judge Wang. *See, e.g.*, Dkt. 848 (granting Plaintiffs' motion to compel and denying OpenAI's motion for protective order with respect to 30(b)(6) topics); *see also* Dkts. 552, 762, 774.

Next week (on January 15), Magistrate Judge Wang is scheduled to hold the penultimate discovery conference before the close of fact discovery, and the parties recently filed dozens of discovery motions that are scheduled to be heard that day. *See, e.g.*, Dkts. 1034, 1041, 1043, 1045, 1055, 1070. Multiple motions are pending against OpenAI, among others. And once again, there are *zero* pending discovery motions directed at Ziff Davis. When it comes to any supposed issues with Ziff Davis's discovery, OpenAI does not have a leg to stand on.[7]

Yet, in a troubling misrepresentation, OpenAI also asserts that Ziff Davis "concedes it cannot adhere to the current case schedule" and that Ziff Davis is supposedly seeking a "three month" extension. *Id.* at 6-7. The premise of OpenAI's motion is that Ziff Davis supposedly seeks an extension of the fact and expert discovery schedule and, specifically, that Ziff Davis seeks the extensions shown in the chart on page 9 of its motion. OpenAI even includes a chart that OpenAI characterizes as "Ziff Davis's Proposal." (Mot. at 9). *None of this is true.*

---

[7] Grasping at straws, OpenAI also complains that Ziff Davis's privilege log was a couple of weeks late. This is hardly a basis for staying litigation, and the alleged delay (which was resolved without motion practice) is well within the extensions afforded by the parties to one another in this case.

As explained, OpenAI expressed that it could not complete all of the depositions that it had requested at the eleventh hour. OpenAI wanted to "take [Ziff Davis's] temperature" and invited Ziff Davis to make a "proposal as to the case schedule." Ruttenberg Decl. ¶ 12, 14 & Ex. F. At OpenAI's request, Ziff Davis joined a meet-and-confer on December 16 and floated ideas to accommodate OpenAI's stated concern. *Id.* ¶ 16. Apparently, OpenAI had a "better" idea to get more time for discovery: it decided to seek an eleventh-hour stay of the entire *Ziff Davis* action.

OpenAI's motion also points back to Ziff Davis's December 12, 2025 letter (Dkt. 963), which was filed while OpenAI's previous motion to stay was pending. The letter asked that "the Court deny OpenAI's [then] pending stay motion [as to the later OpenAI models] and direct Ziff Davis and OpenAI to confer regarding a proposed adjustment to the case schedule as it relates only to the Ziff Davis claims." *Id.* at 2. The letter explained that OpenAI was tying its own discovery intransigence across all claims and models to the pending stay, and that "[i]n [Ziff Davis's] view, these issues are largely created by OpenAI itself." *Id.* at 3. At the time, Ziff Davis had reluctantly concluded an extension might be needed due to OpenAI's actions. But the Court soon thereafter adjudicated OpenAI's motion to stay (and granted it as to the additional models), mooting Ziff Davis's letter. *See* Dkt. 968 at 15. That letter and the Court's subsequent ruling do not create a basis for OpenAI to file yet another "motion to stay" against Ziff Davis.

The arguments presented by OpenAI are nothing like the situations in the primary case cited by OpenAI. For example, OpenAI cites *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. CIV. A. 95-1966, 1996 WL 148294, at *1 (E.D. La. Apr. 1, 1996), where a tag-along plaintiff moved for class certification "well after the deadline . . . for the filing of such motions and after the core plaintiffs had filed their class certification motion and defendant had responded thereto." Here, OpenAI does not suggest that Ziff Davis has filed any untimely motions.

In short, Ziff Davis has fully complied with the Court's schedule and will continue to do so. OpenAI's motion should be roundly rejected.[8]

**B.  Ziff Davis Has a Substantial Interest in Proceeding With Its Case, and a Stay Would Profoundly and Unfairly Prejudice Ziff Davis.**

Just a few weeks ago, this Court found that the "*Kappel* factors do not support staying this action with respect to Ziff Davis's claim 7," and that "Ziff Davis's and the public's interest in expeditious resolution of the issues in this MDL counsel against the stay." Dkt. 968 at 14-15. That rationale applies even more forcefully with respect to a complete stay of Ziff Davis's other claims that are part of this MDL and that OpenAI never sought to stay previously. OpenAI's motion fails to acknowledge the Court's prior ruling or findings.

In aggregate, Ziff Davis is a leading digital media publisher with over 45 portfolio media brands, which are circulated to millions of consumers on a daily basis. Dkt. 300 ¶ 33. It is the only News Plaintiff that relies predominantly on advertising to generate revenue, and thus Ziff Davis's case is being closely watched by publishers with ad-supported models. OpenAI poses a serious threat to those revenues. As Judge Chhabria observed in *Kadrey v. Meta*, "[i]f an AI company is downloading and copying news articles, copyrighted news articles, without permission *en masse*, that seems very likely to lead to the creation of a product that will have the capability of and likely will produce an infinite amount of content that will diminish demand for the copyrighted works that were used to feed the model." *Kadrey v. Meta Platforms, Inc*., Hearing Tr. at 10:2–8, No. 23-cv-03417 (N.D. Cal.). Accordingly, it is "not inconceivable that the market for the copyrighted

---

[8] OpenAI also points to the possibility that (based on OpenAI's discovery failures) Ziff Davis could file a Rule 56(d) declaration in response to a potential summary judgment motion, Mot. at 7. But OpenAI fails to explain how that issue relates to any purported deficiencies in *Ziff Davis's* discovery.

works that were fed into the market could be eliminated entirely." *Id.* at 10:9–11. That threat is real and imminent here.

Further, OpenAI's second stay motion is particularly prejudicial, given the late stage of discovery. Namely, Ziff Davis has already expended enormous resources, *inter alia*, producing (and seeking) extensive document discovery; participating in six discovery conferences, numerous output log settlement conferences and a technology tutorial; participating in MDL leadership calls and conferences as well as daily communications; taking and attending dozens of defense depositions; and working extensively with experts. Among other things, Ziff Davis already identified its relevant ESI custodians, collected their documents (up through August 2025), applied agreed search terms, reviewed those documents and substantially completed its production. Having received the benefit of that massive discovery, OpenAI cannot come along at the last minute and seek a stay of the entire action. *See Sanofi-Synthelabo v. Apotex Inc.*, No. 02 CIV. 2255 (SHS), 2010 WL 1541435, at *2 (S.D.N.Y. Apr. 15, 2010) (Stein, J.) ("the extremely late stage of this protracted litigation weighs against a stay"); *see also Cengage Learning, Inc. v. Google LLC*, No. 1:24-CV-04274 (JLR), 2025 WL 2431591, at *3 (S.D.N.Y. Aug. 22, 2025) (denying stay pending Supreme Court decision where staying would "prejudice Plaintiffs, who have already engaged in 10-plus months of discovery; whose works-in-issue continue to be advertised by pirate sellers on the Google Platform"). OpenAI's motion is nothing more than an attempt to put Ziff Davis' claims on hold so that OpenAI can seek even more discovery against Ziff Davis over a longer period of time at some point in the future.

Shamelessly, OpenAI argues that "a stay would *minimize* prejudice to Ziff Davis" because it "would allow the parties to litigate all of Ziff Davis's claims . . . in one fell swoop." Dkt.997-1 at 14-15. OpenAI points out that Ziff Davis has previously asserted (in response to OpenAI's first

stay motion) "that bifurcation is prejudicial." *Id.* To be sure, OpenAI persuaded this Court to grant a "*partial* stay" only with respect to "claims and models not already asserted in the coordinated proceedings" based on OpenAI's assurances that such "narrow relief" would not prejudice Ziff Davis. Dkt. 136 at 5-7, Dkt. 284 at 1-2. Now, just four days after having received the partial stay it requested, OpenAI reverses course and seeks broad relief—a stay of the entire *Ziff Davis* action. Such a stay would run totally afoul of the MDL's stated goal to streamline litigation by necessitating relitigating proceedings in separate courts, and prolonging resolution for all parties involved.

OpenAI oddly cites *LaSala*, 399 F. Supp. 2d at 4 28, where the Court found that a stay would not be prejudicial to the plaintiff because in that case "the plaintiff [was] requesting the stay." Where (as here) the plaintiff opposes a stay, *LaSala* emphasizes that "Courts are generally reluctant to stay proceedings because they are concerned with vindicating the *plaintiff's* right to proceed with its case.*" Id.*

The motion should be denied.[9]

### C.  Denying OpenAI's Motion Does Not Unfairly Burden or Prejudice OpenAI.

OpenAI cannot seriously assert prejudice from continuing to litigate the *Ziff Davis* case. OpenAI explicitly asked this Court to grant only a "*partial* stay," while insisting that the balance of Ziff Davis's claims "can proceed along with the MDL cases." Dkt. 136 at 1. Having received what it asked for, OpenAI cannot cry foul four days later.

Further, as explained above, no one has asked OpenAI "to continue spending significant resources on discovery in the *Ziff Davis* case well past the MDL discovery cutoff." Mot. at 12. The

---

[9] OpenAI's contention that Ziff Davis somehow "delayed" in filing this action is baseless. No law, rule, or principle compels an injured party to initiate an action simultaneously with actions brought by unrelated plaintiffs in other jurisdictions, especially in a matter of this gravity and complexity, where key facts were still developing.

suggestion to extend depositions beyond the fact discovery cutoff originated with OpenAI, and any lateness of the depositions is exclusively of OpenAI's own making. (In any event, dozens of depositions of OpenAI, Microsoft and other Plaintiffs are also scheduled in January and February.) Even so, Ziff Davis has provided dates and 30(b)(6) designees. The fact that there are *zero* pending discovery motions directed to Ziff Davis (and *none* that were previously granted against Ziff Davis) confirms that OpenAI is trying to mislead the Court.

Equally unavailing is OpenAI's suggestion that Ziff Davis—after having litigated this case at great cost—should suddenly stand down so that its own claims could somehow "be resolved by the Court's summary judgment rulings in the remaining cases." Mot. at 12. As the Supreme Court has explained, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. OpenAI makes no such showing.

OpenAI's half-hearted references to "duplicative discovery" also ring hollow, and the case law cited by OpenAI is wildly inapposite. OpenAI invokes *Readick*[10] and *Finn*,[11] where the plaintiff brought a putative class action (in *Readick*) or a case member lawsuit (in *Finn*) that was subsumed by an earlier-filed class action suit. *Readick*, 2014 WL 1683799, at *1; *Finn*, 2008 WL 5215699, at *1. These cases (which did not involve an MDL) stand for the proposition that courts may stay a "later-filed, duplicative lawsuit." *Readick*, 2014 WL 1683799, at *3; *see Finn*, 2008 WL 5215699, at *3 ("[d]enial of the stay application would essentially require the Court to maintain duplicative proceedings"). Of course, Ziff Davis's claims are not subsumed or duplicative

---

[10] *Readick v. Avis Budget Grp., Inc*, No. 12-cv-3988 (PGG), 2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014).

[11] *Finn v. Barney*, No. 08-cv-2975 (LTS) (KNF), 2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008).

of other Plaintiffs' claims. And unlike in those cases, the *Ziff Davis* case is already part of an MDL, a special proceeding purpose-built to ***avoid*** duplicative discovery. OpenAI's arguments lack merit.

### D.  The Public Interest and Interests of Non-Parties Also Disfavor a Stay.

OpenAI's second stay motion does not serve the public interest. First, unlike most of the other News Plaintiffs, Ziff Davis focuses on non-subscription revenue streams. Dkt. 300 ¶ 52. Thus, the Court and the public would be well-served in having Ziff Davis's perspective in connection with decisions stemming from this MDL. Added delay on a ruling for Ziff Davis will act as a disservice by limiting guidance this Court might otherwise provide, delaying resolution for non-parties and the public alike.

Second, staying the *Ziff Davis* case would negatively impact the News Plaintiffs as a whole. Counsel for Ziff Davis is part of the leadership committee for the News Plaintiffs. Dkt. 60 at 1. Moreover, Ziff Davis's counsel is slated to take the lead on behalf of the News Plaintiffs for multiple depositions scheduled in January and February. Thus, staying the *Ziff Davis* action would cause needless interruptions and delays for the greater case.

Third, the requested stay would negatively impact other third parties, including Microsoft. News Plaintiffs including Ziff Davis are in the process of deposing and attending depositions of Microsoft witnesses. If the Ziff Davis case is entirely stayed, Ziff Davis may need to seek to re-open some of those depositions in future proceedings.

Finally, in rejecting OpenAI's first stay motion as to claim 7, this Court already concluded that "the public's interest in expeditious resolution of the issues in this MDL counsel against the stay." Dkt. 968 at 14-15. OpenAI's assertions that litigation of the Ziff Davis claims will "slow everything down" is a gross mischaracterization. The claims in this MDL are those that have been in this case since the first CMC. If the case was entirely stayed, not only would discovery need to

resume for the new models and unique claims, but also for discovery currently underway for models and issues common to all News Plaintiffs.

## V.    CONCLUSION

For the foregoing reasons the Court should deny OpenAI's Motion to Stay Ziff Davis's First Amended Complaint.


Dated:  January 8, 2026                          Respectfully submitted,

                                                 /s/ *Guy Ruttenberg*
                                                 Lacy H. ("Lance") Koonce, III
                                                 Matthew A. Leish
                                                 Gili Karev
                                                 KLARIS LAW PLLC
                                                 161 Water Street
                                                 New York, NY 10038
                                                 Telephone: (646) 779-4882
                                                 lance.koonce@klaris.com
                                                 matthew.leish@klarislaw.com
                                                 gili.karev@klarislaw.com

                                                 Guy Ruttenberg (*pro hac vice*)
                                                 Ruttenberg IP Law, A Professional
                                                 Corporation
                                                 1801 Century Park East
                                                 Suite 1920
                                                 Los Angeles, CA 90067
                                                 Telephone: (310) 627-2270
                                                 ZD-AICopyright@ruttenbergiplaw.com

                                                 *Attorneys for Plaintiffs Ziff Davis, Inc., Ziff Davis, LLC, IGN Entertainment, Inc., Everyday Health Media, LLC, Mashable, Inc., and CNET Media, Inc.*

To:

LATHAM & WATKINS LLP
Andrew M. Gass (*pro hac vice*)
*andrew.gass@lw.com*

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
*sy.damle@lw.com*
Elana Nightingale Dawson (*pro hac vice*)
*elana.nightingaledawson@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Rachel R. Blitzer
*rachel.blitzer@lw.com*
Herman H. Yue
*herman.yue@lw.com*
Luke A. Budiardjo
*luke.budiardjo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200

Allison S. Blanco (*pro hac vice*)
*allison.blanco@lw.com*
650 Town Center Drive 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235
*Attorneys for OpenAI*

MORRISON & FOERSTER LLP
Joseph C. Gratz (pro hac vice)*
jgratz@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Rose S. Lee (pro hac vice)
roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200

Carolyn M. Homer (pro hac vice)
cmhomer@mofo.com
2100 L Street, NW, Suite 900
Washington, DC 20037

Telephone: 202.650.4597

Jocelyn E. Greer
jgreer@mofo.com
Emily C. Wood
ewood@mofo.com
Eric K. Nikolaides
enikolaides@mofo.com
250 West 55th Street
New York, NY 10019
Telephone: 212.468.8000

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (*pro hac vice*)
*rvannest@keker.com*
Paven Malhotra
*pmalhotra@keker.com*
Michelle S. Ybarra (*pro hac vice*)
*mybarra@keker.com*
Nicholas S. Goldberg (*pro hac vice*)
*ngoldberg@keker.com*
Thomas E. Gorman (*pro hac vice*)
*tgorman@keker.com*
Katie Lynn Joyce (*pro hac vice*)
*kjoyce@keker.com*
Sarah Salomon (*pro hac vice*)
*ssalomon@keker.com*
R. James Slaughter (*pro hac vice*)*
*rslaughter@keker.com*
Christopher S. Sun (*pro hac vice*)
*csun@keker.com*
Andrew F. Dawson (*pro hac vice*)
*adawson@keker.com*
Andrew S. Bruns (*pro hac vice*)
*abruns@keker.com*
Edward A. Bayley (*pro hac vice*)
*ebayley@keker.com*
Ryan K. Wong (*pro hac vice*)
*rwong@keker.com*
Spencer McManus (*pro hac vice* pending)
*smcmanus@keker.com*
Olivia C. Malone (*pro hac vice* pending)
*omalone@keker.com*
Bilal A. Malik (*pro hac vice* pending)
*bmalik@keker.com*
633 Battery St.

San Francisco, CA 94111
Telephone: 415.391.5400

*Attorneys for Defendants OpenAI, Inc.,*
*OpenAI LP, Openai GP, LLC, OpenAI, LLC,*
*OpenAI Opco LLC, OpenAI Global LLC,*
*OAI Corporation, LLC, and OpenAI Holdings, LLC*