KEKER
VAN NEST
& PETERS

LATHAM & WATKINS LLP

MORRISON
FOERSTER

February 4, 2026

**VIA ECF**

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: **Opposition to Plaintiffs' Motion to Compel Additional Discovery into OpenAI's Project Giraffe and Additional Deposition Time of Vinnie Monaco (MDL Dkt. 1218),** *In re OpenAI, Inc. Copyright Infringement Litigation*, **No. 1:25-md-03143. This Document Relates To: 23-cv-8292; 23-cv-1021; 23-cv-11195; 24-cv-03285; 25-cv-04315**

Dear Judge Wang:

Plaintiffs grossly mischaracterize OpenAI's productions and Vinnie Monaco's deposition testimony.[1] First, Plaintiffs' demand for additional discovery into Project Giraffe should be denied because Plaintiffs seek documents that have already been produced or documents that do not exist. Plaintiffs claim they need more discovery because OpenAI "concealed" its ability to search all its outputs for any training data. **OpenAI does *not* have this ability**, and OpenAI's recent productions and Mr. Monaco's deposition testimony do not suggest otherwise. Second, Plaintiffs' demand to re-open Mr. Monaco's deposition should be denied. Mr. Monaco was deposed for over 13 hours over two days as both a 30(b)(1) and 30(b)(6) witness and he provided extensive testimony regarding regurgitation and user data. Plaintiffs should not be permitted additional time—Mr. Monaco was extensively prepared for and testified fully on the designated topics. Plaintiffs' failure to question him efficiently and decision to waste their time on duplicative and out-of-scope questioning do not justify additional time.

I.    **Plaintiffs' overbroad motion for additional discovery into Project Giraffe should be denied as moot**

Plaintiffs demand an order for production of Project Giraffe "training data" and de-identified output log datasets, source code, metrics, and analyses related to OpenAI's "efforts to detect and block its models from outputting copyrighted content contained in its pretraining

---

[1]    OpenAI respectfully seeks leave to file this opposition in excess of the 1,500-word limit in order to respond to Plaintiffs' motion, which is approximately 2,290 words.

datasets." Dkt. 1218 at 3-4.  To support this broad demand, Plaintiffs point to a spreadsheet reflecting output data from a test involving ███████████████████████████████████████████████████████████████████████████████████████████████.  Yet nothing in this spreadsheet—or the source code for the underlying test, which has also been produced—suggests that OpenAI developed a "system" that can be used to "search for…Plaintiffs' content" in any training dataset across all ChatGPT conversation data. *Id.* at 2 n.2.  Such a "system" does not exist.

Moreover, Plaintiffs' contention that OpenAI "[c]oncealed" the existence of this test is at odds with the facts, as OpenAI has already produced discovery, including source code and communications, on this and similar tests.  News Plaintiffs reviewed the source code for this underlying test nearly a year ago, and introduced it at Mr. Monaco's 30(b)(1) deposition.  Dkt. 1218-5, Rough 30(b)(1) Monaco Dep. 85:12-99:12.  OpenAI produced numerous documents reflecting the results of similar tests, including a document Plaintiffs introduced in Mr. Monaco's deposition.  *See id.* 185:10-196:17 (questioning on Slack communication regarding similar tests). Nothing in OpenAI's productions or Mr. Monaco's testimony conflicts with Mr. Monaco's prior declaration, which accurately states that it takes significant time and effort to retrieve, decompress, process, de-identify, and store a specified set of ChatGPT conversation records that includes all of the information OpenAI maintains.  *See* Dkt. 435-1.

OpenAI's prior representations regarding the difficulty of identifying content in output logs remain accurate, and Plaintiffs' misunderstanding does not mean OpenAI's production is deficient. In fact, OpenAI has already produced the discovery Plaintiffs seek (to the extent it exists):

- There is no "Project Giraffe training data" as Plaintiffs demand because Project Giraffe is not a model, is not "trained," and therefore has no "training data."  We imagine Plaintiffs are referring to the data used by Project Giraffe filters to filter outputs, and OpenAI has already produced that.

- OpenAI has already produced all source code relating to Project Giraffe (including all source code related to evaluations associated with Project Giraffe).

- OpenAI has already produced "deidentified output log datasets" as part of the Court's order requiring OpenAI to make available a de-identified sample of 20 million consumer ChatGPT logs (with each log comprising thousands of individual fields). Dkt. 1021.

- OpenAI has already produced the metrics it maintains relating to regurgitation.  Dkt. 1170.  And OpenAI has produced analyses and communications relating to Project Giraffe identified through application of agreed-upon search terms.

Accordingly, the Court should deny Plaintiffs' demand for Project Giraffe discovery as moot.

## II.    Mr. Monaco's deposition should not be reopened because he was adequately prepared, Plaintiffs were not prejudiced by OpenAI's productions, and Plaintiffs failed to efficiently question him during the time allotted

**First**, Mr. Monaco was adequately prepared to testify on three 30(b)(6) topics relating to regurgitation and user data. Mr. Monaco relied heavily on his own experience, including his time working on Project Giraffe. Dkt. 1218-6, Rough 30(b)(6) Monaco Dep. 104:14-105:10. Mr. Monaco's experience cannot be overlooked; he has more knowledge on these topics than any other current OpenAI engineer. Mr. Monaco also spent hours preparing by reviewing Project Giraffe source code, Project Giraffe documentation, including meeting notes, metrics relating to filter hits, and prior deposition testimony from this case. *Id.* 9:14-22. As this Court previously ruled, a corporation's efforts to adequately prepare a 30(b)(6) witness "need only be reasonable and performed in good faith." *In re OpenAI, Inc. Copyright Infringement Litigation*, 25-md-3143 (SHS) (OTW), 2025 WL 3268785, at *2 (S.D.N.Y. Nov. 24, 2025). This Court also noted that a 30(b)(6) witness "is not expected to know and testify about every detail on a topic." *Id.* (citation omitted).

Mr. Monaco provided over ***six hours*** of 30(b)(6) testimony on his designated topics, including how Project Giraffe worked to detect certain sequences contained in a sample of outputs, types of filters OpenAI deployed as part of Project Giraffe, steps OpenAI took to comply with this Court's preservation order, OpenAI's general retention practices and technical processes, such as the migration of conversation data from one database to another, user-initiated deletion of conversation data, and retention periods for API and ChatGPT enterprise data. *See* Dkt. 1218-6, Rough 30(b)(6) Monaco Dep. 37:11-38:24, 42:22-43:10, 52:15-63:4, 66:22-68:5, 109:15-111:1.

Plaintiffs claim Mr. Monaco was not prepared to testify regarding OpenAI's preservation efforts with respect to conversation data prior to April or May 2025. Dkt. 1218-6, Rough 30(b)(6) Monaco Dep. 64:5-10. This is outside the scope of Mr. Monaco's designated topics. Plaintiffs already had two opportunities to question OpenAI's separate corporate representative Michael Trinh on general collection and preservation efforts, and Mr. Trinh did testify regarding preservation efforts with respect to conversation data. Jan. 29, 2025 M. Trinh Dep. 189:22-190:6 (discussing retention policy for output logs and potential recovery of deleted logs); *see also* July 25, 2025 M. Trinh Dep. This Court ordered Plaintiffs to limit 30(b)(6) questioning to "new facts and information obtained since prior depositions." Dkt. 848 at 8. Mr. Monaco was designated to speak regarding "OpenAI's policies governing the retention of user output data and technical mechanisms for implementing those policies, including **efforts to preserve such data for purposes of the court's preservation order in this case.**" Mr. Monaco did exactly that. As noted above, Mr. Monaco testified about general policies regarding retention and deletion of conversation data, and Mr. Monaco provided significant testimony on new facts and information, which were OpenAI's preservation efforts following the Court's May 13, 2025 order, *see* Dkt. 1218-6, Rough 30(b)(6) Monaco Dep. 52:15-63:4.

Plaintiffs complain that Mr. Monaco was unable to describe from memory "what content the original 2022 filter was blocking." Dkt. 1218-6, Rough 30(b)(6) Monaco Dep. 33:3-12. This is outside the scope of Mr. Monaco's designated topics. Mr. Monaco was designated to speak on "OpenAI's **general techniques** for limiting or preventing the regurgitation of text training data by the Relevant LLMs, including historical practices regarding the same (with respect to outputs)."

What specific content a filter was blocking is an implementation detail, not a "general technique." This is not to say that Plaintiffs could not have examined Mr. Monaco on the specific content blocked by the 2022 filter, because OpenAI provided the source code showing what content was blocked by the 2022 filter in February 2025, almost a year before Mr. Monaco's deposition. Instead of showing that to the witness and asking him about it, Plaintiffs chose to give Mr. Monaco a memory test. Nor did Mr. Monaco refuse to testify at a high level about what was blocked by the 2022 filter; he explained that "the examples in the filter were selected based on what was known in the literature, examples that folks have seen in papers, just generally speaking." *Id.* 29:15-19. Plaintiffs have had an opportunity to get all the discovery they are entitled to regarding the 2022 filter.

**Second**, Plaintiffs seek additional time to question Mr. Monaco regarding "Signal" messages. But Plaintiffs already asked Mr. Monaco, "Did you ever use Signal to discuss this litigation or issues that have arisen in this litigation?," and Mr. Monaco responded, "No." Dkt. 1218-5, Rough 30(b)(1) Monaco Dep. 128:18-21. Chasing after irrelevant documents is not a worthwhile use of the parties' time, especially at this late stage of discovery.

**Finally**, Plaintiffs complain OpenAI produced "late-breaking" documents that prejudiced their ability to question Mr. Monaco. Plaintiffs point to "Giraffe related" data and a "data management policy" that were produced before Mr. Monaco's deposition. However, the "Giraffe related" data was produced pursuant to a January 3 compromise between the parties and ***expressly*** premised on the understanding that OpenAI might not be able to produce the results sufficiently in advance of depositions. Plaintiffs did not seek to reschedule Mr. Monaco's deposition and instead made a last-minute request that OpenAI change the deposition location so Plaintiffs could access the training data machine during the deposition. OpenAI accommodated that request. The data management policy (which is only 11 pages) was introduced as an exhibit to Mr. Monaco's 30(b)(6) deposition, so Plaintiffs did not face any prejudice here.

Plaintiffs further complain their deposition was "cut short." As Plaintiffs note, the deposition protocol instructs parties to meet and confer if a witness is designated as both a 30(b)(6) and 30(b)(1) witness. Plaintiffs did not attempt to meet and confer, so OpenAI relied on the parties' agreement that Plaintiffs had **two days** of time with Mr. Monaco. Plaintiffs chose to end the first day of deposition after only 6 hours and 8 minutes (even though Mr. Monaco was still available for additional questioning). Plaintiffs questioned Mr. Monaco another 7 hours and 4 minutes the second day, totaling **13 hours and 12 minutes**. Plaintiffs have not justified an additional 6 hours of Mr. Monaco's time, which would total over 19 hours for a single witness.

Plaintiffs are also not entitled to any additional time with Mr. Monaco because their questioning was extremely inefficient. Plaintiffs wasted 30(b)(6) time questioning Mr. Monaco on out-of-scope issues, including anti-regurgitation techniques unrelated to those on which he was designated, *see* Dkt. 1218-6, Rough 30(b)(6) Dep. 21:8-22:1, 24:17-25:15, identification of specific contents of specific filters, *see id.* 28:3-33:12, 35:9-36:9, 39:25-43:21, and costs and hypotheticals relating to OpenAI's ability to process deletions, *see id.* 71:3-75:6. Plaintiffs also spent excessive time on questions where Mr. Monaco gave definitive answers. *See* Dkt. 1218-5, Rough 30(b)(1) Dep. 140:15-142:18, 177:16-185:9 (Plaintiffs badgered Mr. Monaco for 15 minutes regarding the copyright-related "goals" of Project Giraffe, even after Mr. Monaco testified that any "nontechnical goals" of Project Giraffe would be "legal territory" that he did not know

about, though he could testify regarding the technical goals of the project).  In addition, News and Class Plaintiffs did not coordinate in advance, asking duplicative questions on the same topics and documents. *See* Dkt. 1218-6, Rough 30(b)(6) Dep. 28:3-33:12, 118:2-147:6 (questioning regarding the contents of a filter); Dkt. 1218-5, Rough 30(b)(1) Dep. 49:9-53:4, 159:3-174:6 (questioning on the same document introduced as both Exhibit 16 and Exhibit 28); *id.* 76:1-16, 150:8-155:9 (questioning regarding "b-ok" dataset).

The Court should therefore deny Plaintiffs' motion because Plaintiffs have not identified a legitimate reason for additional deposition time with Mr. Monaco, and did not effectively use the time they had.

## III.    Conclusion

For the foregoing reasons, Plaintiffs' motion should be denied.

Sincerely,

| | | |
|---|---|---|
| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
| */s/ Edward A. Bayley* | */s/ Allison S. Blanco* | */s/ Joseph C. Gratz* |
| Edward A. Bayley | Allison S. Blanco | Joseph C. Gratz |