# Exhibit 4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Daily News, LP; The Chicago Tribune Company, LLC; Orlando Sentinel Communications Company, LLC; Sun-Sentinel Company, LLC; San Jose Mercury-News, LLC; DP Media Network, LLC; ORB Publishing, LLC; and Northwest Publications, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO, LLC, OPENAI GLOBAL, LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC, <br><br> Defendants. | Civil Action No. 1:24-cv-03285-SHS |

**PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION TO OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, AND OPENAI HOLDINGS, LLC**

Pursuant to the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York, (the "Local Civil Rules"), Plaintiffs Daily News, LP (the "New York Daily News"); The Chicago Tribune Company, LLC, (the "Chicago Tribune"); Orlando Sentinel Communications Company, LLC (the "Orlando Sentinel"); Sun-Sentinel Company, LLC (the "Sun-Sentinel"); San Jose Mercury-News, LLC (the "Mercury News"); DP Media Network, LLC (the "Denver Post"); ORB Publishing, LLC (the "Orange County Register"); and Northwest Publications, LLC (the "Pioneer Press") (collectively the "Publishers") request that OpenAI, Inc., OpenAI LP, OpenAI GP, LLC, OpenAI, LLC, OpenAI OPCO LLC, OpenAI Global LLC, OAI Corporation, LLC, and OpenAI Holdings, LLC ("OpenAI Defendants") produce the requested documents at the offices of Rothwell, Figg, Ernst and Manbeck, P.C., 901 New York Ave NW, Suite 900, Washington, DC, 20001, within thirty days after the date of service of this document, or at such other mutually agreeable time and place.

# I.    DEFINITIONS

The following definitions and instructions apply to the requests listed below:

1. All definitions and rules of construction set forth in Rule 26.3 of the Local Rules of the Southern District of New York are incorporated by reference herein.

2. "Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under any common control with, such Person.

3. "Agreement(s)" means any contract, agreement, arrangement, or understanding, formal or informal, oral or written, between or among two or more Persons.

4. "AI Model(s)" means a component of an information system and/or large language model that implements artificial intelligence ("AI") technology and uses computational, statistical, or machine-learning techniques to produce outputs from a given set of inputs.

5. "Generative AI Models(s)" means AI Models that emulate the structure and characteristics of input data in order to generate derived synthetic content, such as images, videos, audio, text, and other digital content.

6. "Text Generation AI Model(s)" means Defendants' Generative AI Models, including generative pre-trained transformers or large language models (LLMs), that provide text outputs in response to inputs or prompts, including but not limited to GPT base, GPT-1, GPT-2, GPT-3, GPT 3.5, GPT-4, GPT-4 Turbo, GPT-4o, MAI-1, and all other versions or other Generative AI Models included in Defendants' Generative AI Products and Services

7. "Complaint" means the operative complaint in the Action as of the date these Requests are served.

8. "Defendants" means Microsoft and OpenAI.

9. "Electronically Stored Information" or "ESI" refers to information and Documents within the full scope of Federal Rule of Civil Procedure 34 with all Metadata intact—created, manipulated, communicated, stored, and best utilized in digital form, and stored on electronic media.

10. "Generative AI Product(s) and Service(s)" means any publicly available or commercial product or service offering that includes a Generative AI Model, including but not limited to ChatGPT branded products and services, Copilot branded products and services, ChatGPT, Browse with Bing, Bing Chat, SearchGPT, APIs, and platforms otherwise providing access to a Generative AI Model.

11. "Including" means including but not limited to.

12. "Journalism," for the purposes of these requests, means the activity of writing or creating content for newspapers, magazines, news websites, mobile applications, television, podcasts, or any other publication and/or news outlet, and includes the work of each of The Publishers as alleged in the Complaint.

13. "Metadata" refers to structured information about an electronic file that is embedded in the file, describing the characteristics, origins, usage, and validity of the electronic file.

14. "OpenAI" or "You" or "Your" means Defendants OpenAI Inc., OpenAI GP, LLC, OpenAI Opco, LLC, OpenAI Global, LLC, OpenAI Holdings LLC, OpenAI, LLC, or OAI Corporation, LLC, their subsidiaries, affiliates, divisions, predecessors in interest, successors, or assignees, and their respective officers, directors, employees, consultants, representatives, and agents.

15. "Relating to" means discussing, describing, referring to, pertaining to, containing,

analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

16. "Microsoft" means Defendant Microsoft Corporation, its subsidiaries, affiliates, divisions, predecessors in interest, successors, or assignees, and their respective officers, directors, employees, consultants, representatives, and agents.

17. "Publisher" or "Publishers" means any one or more of Plaintiffs The New York Daily News, The Chicago Tribune, the Orlando Sentinel, the Sun-Sentinel, the Mercury News, the Denver Post, the Orange County Register, the Pioneer Press, and their subsidiaries, affiliates, divisions, predecessors in interest, successors, or assignees, and respective officers, directors, employees, consultants, representatives, and agents.

18. "Publisher's Content" or "Publishers' Content" means material published by any one or more of the Publishers, including in print, online, audio, or in any other format, whether on Publisher-owned platforms or available through third-party sources.

19. "Training Dataset(s)" means the data and content used to pre-train, train, fine-tune, or otherwise affect the performance of the Generative AI Models, including any data and content used for reinforcement learning from human feedback or reinforcement learning from AI feedback.

20. "Publisher Datasets" means any dataset containing Publisher's Content You assembled, created, purchased, or otherwise obtained or analyzed.

21. "Synthetic Data" means artificial, algorithmically-manufactured data, including data generated using a Generative AI Model.

22. "Synthetic Dataset" means a dataset comprising Synthetic Data.

## II. INSTRUCTIONS

1. Produce all responsive documents prepared, sent, or received, in whole or in part, during the time period applicable to the request. You should identify in some reasonable manner the person from whose files each document you produce was found.

2. You are to produce all documents, as defined above, that are in the possession, custody or control of you, or in the possession, custody or control of any attorney or agent for you. Without limiting the terms, "possession, custody, or control" of an item means that you either have physical possession of the item or have a right to possession of the item that is equal or superior to the person who has physical possession of the item.

3. You are under a duty to supplement your responses to these discovery requests pursuant to FRCP 26. If after you produce any of the discovery requested below you discover or receive additional documents or information responsive to the requests, you should promptly produce such additional documents or information to the full extent required by the rules.

4. Pursuant to FRCP 26, you are to provide a privilege log for any documents you have withheld on the basis of privilege(s). Request for such a log is hereby made, effective as of the response date of these requests. If you assert a claim of privilege with respect to any document request, or portion thereof, you should produce a log, accounting for each document withheld individually, and providing the nature of the privilege being claimed; the type of document, date, author, addressees or recipients, and general subject matter of the document, and such other information as is sufficient to identify the document. If a claim of privilege applies to only a portion of a document, the document should be produced, and the portion claimed to be privileged obscured and stamped "redacted."

5. The documents requested below should be produced in the manner that they are

kept in the usual course of business. Documents should be produced with the label or labels from any file folder, binder, file drawer, file box, notebook, computer disk, or other container in which the document was found. Documents on computers or computer disks, including but not limited to electronic mail and corresponding attachments, should be produced in both native format and single-page TIFF format with optical character recognition (OCR). Even if only part of a document is responsive to a request, you should still produce the entire document including all attachments.

6. All duplicates or copies of documents are to be provided to the extent they have handwriting, additions, or deletions of any kind different from the original document being produced.

7. All documents which cannot be legibly copied should be produced in their original form.

8. If any documents requested herein have been lost, discarded or destroyed, they shall be identified as completely as possible, including, without limitation, the following information: (a) the date of disposal; (b) the manner of disposal; (c) the reason for disposal; (d) the person authorizing disposal; and (e) the person disposing of the document.

9. If no Documents responsive to a particular request exist, state that no responsive Documents exist.

## III.  DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 77:**

Documents concerning Defendants' demand, need, and/or desire for high-quality content and the potential lack of supply of such content for purposes of developing Defendants' Generative AI Products and Services.

**REQUEST FOR PRODUCTION NO. 78:**

Documents concerning the expected cost or financial impact to Defendants' Generative AI Products and Services if Defendants were required to purchase, license, or otherwise compensate copyright owners for copyrighted content.

**REQUEST FOR PRODUCTION NO. 79:**

Documents reflecting the actual or expected financial impact of Defendants' Generative AI Products and Services, and/or AI products and copyright owners, including News Plaintiffs and other content creators.

**REQUEST FOR PRODUCTION NO. 80:**

Documents concerning actual or expected competition between Defendants' Generative AI Products and Services and news publishers, including any competitive analyses.

**REQUEST FOR PRODUCTION NO. 81:**

Documents regarding the competitive market for AI products and services, including but not limited to any competitive analyses and market research reports.

**REQUEST FOR PRODUCTION NO. 82:**

Documents concerning the market for training data, including any discussion of the existence or non-existence of such a market and the actual or potential monetization of training data.

**REQUEST FOR PRODUCTION NO. 83:**

Documents reflecting the actual or expected financial impact of Defendants' Generative AI Products on Your enterprise and/or market value.

**REQUEST FOR PRODUCTION NO. 84:**

Documents related to Defendants' efforts to protect and enforce its copyrights, including through litigation, and the actual or expected value of Defendants' copyrighted materials related to those efforts.

**REQUEST FOR PRODUCTION NO. 85:**

Documents concerning actual or potential harm Defendants' Generative AI Products and Services and/or AI products and services generally have on the Publishers, the news industry, and/or society broadly.

**REQUEST FOR PRODUCTION NO. 86:**

Documents sufficient to show in detail the forecasted revenues and profits expected from Defendants' Generative AI Products and Services, including documents sufficient to show in detail, by product or service, the forecasted gross revenue generated, forecasted costs, forecasted gross profit margin, forecasted net profit margin, and forecasted value.

**REQUEST FOR PRODUCTION NO. 87:**

Documents reflecting any valuation of Defendants' Generative AI Products and Services, including internal analyses, third-party valuations, and investor related valuation documents.

**REQUEST FOR PRODUCTION NO. 88:**

Documents and communications related to Defendants' ability to identify and monitor user sessions where Defendants' Generative AI Products and Services output copyrighted content (or suspected copyrighted content) to the user.

**REQUEST FOR PRODUCTION NO. 89:**

Document and communications concerning any data or datasets compiled by You that comprise user sessions where Defendants' Generative AI Products and Service output copyrighted content (or suspected copyrighted content) to the user.

**REQUEST FOR PRODUCTION NO. 90:**

Documents and communications concerning Defendants' development of filters and/or classifiers related to anti-regurgitation or copyright efforts, including the Giraffe filter, and deployment of such filters and/or classifiers in Defendants' Generative AI Products and Services, including documents sufficient to show: (i) all versions of such filters and/or classifiers; (ii) any changes or updates made to such filters and/or classifiers and the reasons for such changes or updates, (ii) the results of any red-teaming or evaluations related to such filters and/or classifiers, (iii) the rules or policies for determining when and how such filters and/or classifiers are to be triggered, (iv) the rate at which such filters and/or classifiers are triggered in response to user queries, (v) Defendants' ability to track and monitor user conversations that trigger such filters and/or classifiers, and (vi) all conversations about such filters and/or classifiers, including conversations from the private OpenAI slack channel titled "#project-giraffe".

**REQUEST FOR PRODUCTION NO. 91:**

Documents and communications concerning Defendants' anti-regurgitation efforts, including Harmony fine-tuning and other evaluations, including documents sufficient to show: (i) any changes or updates made to such anti-regurgitation efforts, (ii) the results of any red-teaming and evaluations performed in connection with such anti-regurgitation efforts, (iii) any rules, policies, or guidance related to such anti-regurgitation efforts, (iv) the contents of any dataset related to copyrighted content used in such anti-regurgitation efforts.

**REQUEST FOR PRODUCTION NO. 92:**

All documents relating to any contract, license agreement, or terms that You intend to rely on or which You otherwise believe is relevant to the claims and defenses in this case.

**REQUEST FOR PRODUCTION NO. 93:**

All documents relating to the Publisher Datasets.

9

**REQUEST FOR PRODUCTION NO. 94:**

All documents relating to Defendants' purchase, acquisition, or obtainment of the Publisher Datasets.

**REQUEST FOR PRODUCTION NO. 95:**

All documents relating to any contract, license agreement, or terms applicable to the Publisher Datasets.

**REQUEST FOR PRODUCTION NO. 96:**

All documents relating to Defendants' ingestion or processing of the Publisher Datasets, including all documents relating to any tier determination, extraction, removal, clean-up, parsing, deduplication, indexing, storing, sampling, tokenizing, weighting, or vectorizing Defendants performed on the Publisher Datasets.

**REQUEST FOR PRODUCTION NO. 97:**

All computer code or scripts used to ingest or process the Publisher Datasets.

**REQUEST FOR PRODUCTION NO. 98:**

All documents relating to the use or contemplated use of the Publisher Datasets, including all documents relating to the use of the Publisher Datasets for training or fine-tuning the Text Generation AI Models.

**REQUEST FOR PRODUCTION NO. 99:**

All documents relating to any testing or evaluation Defendants performed on the Publisher Datasets, including any experimentation, validation, statistical analysis, content categorization, or style determination Defendants performed on the Publisher Datasets.

**REQUEST FOR PRODUCTION NO. 100:**

All documents concerning any and all scrapes or downloads Defendants performed of Publisher's Content.

**REQUEST FOR PRODUCTION NO. 101:**

All communications with third parties concerning Defendants' fair use defense to copyright

10

infringement, including how any licensing deals would impact that defense.

**REQUEST FOR PRODUCTION NO. 102:**

All documents concerning Your website terms and policies relating to Your Generative AI Products and Services, including any changes to those terms and policies and communications relating to such changes.

**REQUEST FOR PRODUCTION NO. 103:**

All documents concerning Your knowledge of DNyuz (www.dnuyz.com), including its copying of Publisher's Content and Your use of DNyuz content for any purpose, such as training, fine tuning, retrieval augmented generation, and any other refinement or development processes.

**REQUEST FOR PRODUCTION NO. 104:**

All documents concerning Your knowledge of websites besides DNyuz that regularly copy Publisher's Content without permission, and Your use of such websites for any purpose.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents concerning use of Generative AI Models to create Synthetic Datasets.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents concerning Defendants' use or contemplated use of Synthetic Datasets, including to train Generative AI Models.

**REQUEST FOR PRODUCTION NO. 107:**

Documents sufficient to show, for each item of Publisher's Content included in Your Training Datasets: (i) the storage location(s) in Your Training Datasets, (ii) the metadata, (iii) origin information, including URL or other source identifier, and (iv) the contents.

**REQUEST FOR PRODUCTION NO. 108:**

Documents and communications concerning Defendants' "Data Working Group" referenced in OPCO_NEWS_0000668 and OPCO_NEWS_0000669.

**REQUEST FOR PRODUCTION NO. 109:**

Documents and communications concerning research conducted by A. Feder Cooper relating to "reliable measurement and evaluation of machine learning systems," as discussed in https://afedercooper.info/.

**REQUEST FOR PRODUCTION NO. 110:**

Documents sufficient to show any analysis performed by You concerning any indirect revenue attributable to publisher content in search, including as such analysis relates to publisher content in synthetic outputs in generative search and chat features.

**REQUEST FOR PRODUCTION NO. 111:**

Documents and communications concerning the removal of any content, including information regarding authorship, date of publication, publishing entity, title, copyright notices, and terms and conditions for use, from works in connection with retrieval-augmented generation.

**REQUEST FOR PRODUCTION NO. 112:**

Documents and communications concerning any internal or external presentations regarding the growth, size, earning potential, valuation, and profitability of 1) OpenAI, 2) Microsoft's investment in OpenAI, and 3) Defendants' roles in the overall the overall Generative AI market.

**REQUEST FOR PRODUCTION NO. 113:**

Documents and communications concerning any internal or external presentations showing profits and losses related to Defendants' Generative AI Products and Services.

**REQUEST FOR PRODUCTION NO. 114:**

Documents and communications concerning any valuation of, or attempt to value, OpenAI or Microsoft conducted, commissioned, of Publisher's Content.

**REQUEST FOR PRODUCTION NO. 115:**

Documents sufficient to show, from 2015 to present, Defendants' capital expenditures for their Generative AI Products and Services, including the dollar amount of capital purchases to train or develop Defendants' Generative AI Models and the number of GPUs used.

**REQUEST FOR PRODUCTION NO. 116:**

Documents sufficient to show OpenAI's number of employees from 2015 to present, broken down by employee function, including technical staff, administrative staff, and management or leadership staff.

**REQUEST FOR PRODUCTION NO. 117:**

Documents concerning any other lawsuits or governmental investigations or proceedings relating to the issues in this case.

**REQUEST FOR PRODUCTION NO. 118:**

Documents sufficient to show each individual employed by OpenAI, Inc., OpenAI GP, LLC, OpenAI, LLC, OpenAI Global LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, the job function of each employee, the supervisory relationship of each employee, and any change in each employee's job function, supervisory relationships, or employment status over time.

**REQUEST FOR PRODUCTION NO. 119:**

Documents sufficient to show the identity of each board member of OpenAI, Inc., OpenAI GP, LLC, OpenAI, LLC, OpenAI OPCO LLC, OpenAI Global LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, including any change in that individual's status as a board member over time.

**REQUEST FOR PRODUCTION NO. 120:**

All minutes of meetings of the board of directors of OpenAI, Inc., OpenAI GP, LLC, OpenAI, LLC, OpenAI OPCO LLC, OpenAI Global LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, and all Documents provided to those boards of directors that concern or relate to 1) Your Training Datasets 2) Your intention to commercialize or monetize Defendants' Generative AI Models, Products, and Services, and 3) projections regarding revenues or profits for Your Generative AI Models, Products, or Services.

**REQUEST FOR PRODUCTION NO. 121:**

Documents sufficient to show, for OpenAI, Inc., OpenAI GP, LLC, OpenAI, LLC, OpenAI OPCO LLC, OpenAI Global LLC, OAI Corporation, LLC, OpenAI Holdings, LLC 1) Your reasons for forming each entity, 2) the primary functions of each entity, and 3) corporate formation documents for each entity.

**REQUEST FOR PRODUCTION NO. 122:**

Documents sufficient to show all OpenAI employees, contractors, former employees, and other affiliates who have entered into non-disclosure or confidentiality agreements with OpenAI.

**REQUEST FOR PRODUCTION NO. 123:**

Documents regarding the purpose for which You used natural-language textual data to train Generative AI Models, including, without limitation, whether the purpose of such use included exploitation of the expressive characteristics of such data, or was merely limited to the discovery of functional characteristics or underlying facts.

**REQUEST FOR PRODUCTION NO. 124:**

Documents regarding whether and to what extent the expressive characteristics of natural-language textual data You used to train Generative AI Models affect the expressive characteristics of output from Generative AI Products and Services.

**REQUEST FOR PRODUCTION NO. 125:**

Documents submitted to any government entity, in both the U.S. and elsewhere, that are related to any of the allegations in the Complaint or the defenses thereto, including (i) copyright and intellectual property laws or rules; (ii) Defendants' business plans and monetization strategies related to generative AI; (iii) risks associated with the development of generative AI; (iv) OpenAI's non-profit status; and (v) the relationship between the Defendants.

**REQUEST FOR PRODUCTION NO. 126:**

Documents concerning OpenAI's stated mission "to ensure that artificial general intelligence benefits all of humanity,"[1] including documents that relate to whether OpenAI is fulfilling this mission.

**REQUEST FOR PRODUCTION NO. 127:**

Documents concerning whether Microsoft's potential or actual investments in OpenAI, including in the years 2016, 2019, and 2024, would affect OpenAI's non-profit status, mission, or ability to engage in non-commercial activities.

**REQUEST FOR PRODUCTION NO. 128:**

Documents sufficient to show any indirect or direct financial stake that each custodian has in Your business.

**REQUEST FOR PRODUCTION NO. 129:**

Documents sufficient to show (i) Your policy and practice for requiring Your employees to sign non-disclosure agreements; and (ii) any non-disclosure agreements between You and Your custodians.

**REQUEST FOR PRODUCTION NO. 130:**

All employment agreements between You and Your custodians.

**REQUEST FOR PRODUCTION NO. 131:**

All documents concerning work performed by employees of Microsoft on the premises of or using computer systems or other facilities owned or controlled by OpenAI.

**REQUEST FOR PRODUCTION NO. 132:**

All documents concerning the ability or inability of Defendants' Generative AI Models to engage in abstract reasoning or to derive principles, rules, or underlying facts from training data.

---

[1] https://openai.com/about/.

Dated: November 20, 2024              /s/ Steven Lieberman

Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Robert Parker *(admitted pro hac vice)*
Jenny L. Colgate *(admitted pro hac vice)*
Mark Rawls *(admitted pro hac vice)*
Michael H. Jones *(admitted pro hac vice)*
Kristen J. Logan *(admitted pro hac vice)*
Bryan B. Thompson (6004147)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
rparker@rothwellfigg.com
jcolgate@rothwellfigg.com
mrawls@rothwellfigg.com
mjones@rothwellfigg.com
klogan@rothwellfigg.com
bthompson@rothwellfigg.com

Jeffrey A. Lindenbaum (JL1971)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
3 Manhattanville Road, Suite 105
Purchase, New York 10577
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
jlindenbaum@rothwellfigg.com

*Attorneys for Plaintiffs*

16

## CERTIFICATE OF SERVICE

It is hereby certified that, on November 20, 2024, the foregoing **PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION TO OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, AND OPENAI HOLDINGS, LLC** was served by email upon the following counsel of record:

| | |
|---|---|
| **Latham & Watkins LLP**<br>1271 Avenue of the Americas<br>New York, NY 10020<br>212-906-1200<br>**Allison Levine Stillman**<br>**Rachel Renee Blitzer**<br>**Herman Heng Yue**<br>**Michael A David**<br><br>**Latham & Watkins LLP**<br>555 Eleventh Street, N.W., Suite 1000<br>Washington, DC 20004<br>202-637-2200<br>**Sarang Damle**<br>**Elana Nightingale Dawson**<br><br>**Latham & Watkins, LLP**<br>505 Montgomery Street, Ste. 2000<br>San Francisco, CA 94111<br>(415)-391-0600<br>**Andrew Gass**<br>**Joseph Richard Wetzel, Jr.**<br><br>openaicopyrightlitigation.lwteam@lw.com<br><br>**KEKER, VAN NEST & PETERS LLP**<br>633 Battery Street<br>San Francisco, CA 94111<br>415-391-5400<br>**Robert A. Van Nest Jr**<br>**Paven Malhotra**<br>**R. James Slaughter**<br>**Nicholas S. Goldberg**<br>**Michelle Ybarra**<br>**Katie Lynn Joyce**<br>**Thomas E. Gorman**<br>**Christopher S. Sun** | **Andrew S. Bruns**<br>**Edward A. Bayley**<br><br>KVPOAI@keker.com<br><br>**Morrison & Foerster LLP**<br>425 Market Street<br>San Francisco, CA 94105<br>415-268-7000<br>**Joseph C. Gratz**<br>**Vera Ranieri**<br>**Andrew L. Perito**<br><br>**Morrison & Foerster LLP**<br>250 West 55th Street<br>New York, NY 10019-9601<br>212-468-8000<br>**Eric K. Nikolaides**<br>**Emily Claire Wood**<br>**Jocelyn Edith Greer**<br><br>**Morrison Foerster LLP**<br>2100 L Street, N.W., Suite 900<br>Washington, DC 20037<br>202-650-4597<br>**Carolyn M. Homer**<br><br>**Morrison & Foerster LLP**<br>707 Wilshire Boulevard<br>Los Angeles, CA 90017<br>213-892-5355<br>**Rose Lee**<br><br>OpenAICopyright@mofo.com<br><br>*Attorneys for OpenAI Defendants* |

*/s/ Erik van Leeuwen*
Erik van Leeuwen

17